KATHRYN COLLARD, #0697
THE LAW FIRM OF KATHRYN COLLARD, L.C.
Nine Exchange Place, Suite 1111
Salt Lake City, UT 84111
Tel: (801) 537-5625

MACON COWLES, #6790 (Colorado)
MACON COWLES & ASSOCIATES, P.C.
1680 Wilson Court
Boulder, Colorado 80304
Tel: (303) 447-3062
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ABBY TISCARENO and GUILLERMO TISCARENO, <br><br> Plaintiffs, <br><br> v. <br><br> LORI FRASIER, in her individual capacity; MARION WALKER, in his individual capacity; WILLIAM BEERMAN, in his individual capacity; RICHARD ANDERSON, in his individual and official capacity; DAVID BRICKEY, in his individual capacity; INTERMOUNTAIN HEALTH CARE, in its individual capacity; JOHN and JANE DOES 1-20, in their individual capacities, <br><br> Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ANDERSON'S MOTION TO DISMISS** <br><br> Civil No. 2:07-cv-336 <br><br> Judge Ted Stewart |

i

**TABLE OF CONTENTS**

I.   INTRODUCTION ......................................................................................................... 1

II.  STANDARD OF REVIEW ........................................................................................ 2

      A.   Rule 12(b)(1) ............................................................................................... 2

      B.   Rule 12(b)(6) ............................................................................................... 2

III. SUMMARY OF THE ARGUMENT ......................................................................... 3

IV.  PLAINTIFFS' STATEMENT OF FACTS ................................................................ 4

V.   COUNT 1: CLAIM FOR DAMAGES FOR VIOLATION OF RIGHT TO DUE
      PROCESS UNDER THE U.S. CONSTITUTION AND PURSUANT TO 42 USC
      §1983 ........................................................................................................................ 6

      A.   THE COMPLAINT INFERENTIALLY alleges THAT DEFENDANT HAD
            POSSESSION OF THE EXCULPATORY RECORDS. ........................... 6

      B.   ANDERSON IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE
            THERE IS A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT OF
            DUE PROCESS WHICH IMPOSES A DUTY ON HIM TO TURN OVER
            EXCULPATORY EVIDENCE. ................................................................. 7

      C.   IN ADDITION TO PERSONAL LIABILITY FOR HIS OWN ACTS OR
            OMISSIONS, DEFENDANT ANDERSON IS LIABLE FOR HIS ACTS AND
            OMISSIONS AS A SUPERVISOR ......................................................... 11

      D.   THE UNSUPPORTED FACTS IN DEFENDANT ANDERSON'S MOTION
            TO DISMISS SHOULD BE DISREGARDED ....................................... 13

      E.   DEFENDANT ANDERSON IS NOT ENTITLED TO QUALIFIED
            IMMUNITY BASED ON DISPUTED ISSUES OF MATERIAL FACTS
            THAT MUST BE DEVELOPED IN DISCOVERY AND DETERMINED AT
            TRIAL ..................................................................................................... 14

VI.  COUNT 3: DAMAGES CLAIM FOR VIOLATION OF RIGHT TO DUE PROCESS
      UNDER ARTICLE I SECTION 7 OF THE UTAH STATE CONSTITUTION ............. 17

      A.   THE COURT HAS SUBJECT MATTER JURISDICTION BECAUSE THE
            UTAH GOVERNMENTAL IMMUNITY ACT DOES NOT APPLY TO
            CONSTITUTIONAL CLAIMS BASED ON SELF-EXECUTING
            PROVISIONS OF THE UTAH STATE CONSTITUTION ................................ 17

      B.   PLAINTIFFS' CLAIM UNDER ARTICLE I, SECTION 7 OF THE UTAH
            CONSTITUTION MEETS THE TEST OF *SPACKMAN V. BOARD OF
            EDUCATION* .................................................................................................. 19

      1.   Flagrant Violation .................................................................................... 19

      2.   Existing Remedies Do Not Adequately Redress Plaintiff's Injuries ......................... 20

VII. COUNT 6: CLAIM FOR INJUNCTIVE RELIEF, ENJOINING DCFS TO FULFILL
      ITS DUTY OF PERFORMING INDEPENDENT INVESTIGATIONS OF CHILD
      ABUSE CASES ........................................................................................................... 21

ii

Plaintiffs Abby and Guillermo Tiscareno, by and through counsel, hereby submit *Plaintiffs' Memorandum In Opposition To Defendant Anderson's Motion To Dismiss.*

## I.    INTRODUCTION

Plaintiff Abby Tiscareno and her family were severely damaged by a criminal investigation that went awry and, because of Defendants' failure—including that of Defendant Anderson—to produce absolutely critical exculpatory evidence, she was charged with child abuse, convicted and was shortly to begin serving a term in prison when the exculpatory material was wrested from Defendant IHC and Primary Children's Medical Center. The exculpatory evidence—a PCMC Pathology Report with attached letter of concurrence—was the basis for her being granted a new trial, at the conclusion of which all charges against her were dismissed. Together, the Report and the letter were proof that three medical doctors—Drs. Pysher, Townsend and Yang—made pathology findings that flatly contradicted the opinion testimony of Dr. Lori Frasier, who would become the State's complaining witness in the case against Plaintiff Abby Tiscareno.

In this case, Plaintiffs Abby and Guillermo Tiscareno seek damages and injunctive relief in six claims for relief brought against various individuals and entities involved in the investigation of the criminal case.

1

## II.    STANDARD OF REVIEW

### A.    RULE 12(B)(1)

"In considering a motion to dismiss under Rule 12(b)(1), motions generally take one of two forms. First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based. In reviewing a factual attack, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to result disputed jurisdictional facts. A court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Brokaw v. Salt Lake County*, Slip Copy, 2007 WL 2221065 (D. Utah) (internal citations and quotations omitted).

### B.    RULE 12(B)(6)

In deciding a motion to dismiss "for failure to state a claim upon which relief may be granted" under F.R.Civ.P.12 (b)(6), all well-pleaded allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the Plaintiffs as the nonmoving party. Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face….The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *Brokaw v. Salt Lake County*, Slip Copy, 2007 WL 2221065 (D. Utah) at *1.

2

### III.    SUMMARY OF THE ARGUMENT

Counts 1-4 of the Complaint state various causes of action for damages against Defendants, while Counts 4 and 5 assert claims for injunctive relief. Defendant Anderson is charged with liability for damages (a) for violating Plaintiffs' Due Process rights under the United States Constitution and 42 USC §1983 (Count 1); and; (b) for violating Plaintffs' Due Process Rights under Article I, Section 7 of the Utah State Constitution (Count 3). Further, Plaintiffs claim a right to injunctive relief against Anderson in Count 6 based on a violation of Plaintiffs' Due Process rights under both federal and state constitutional law.

Defendant Anderson's Motion to Dismiss Count 1, the §1983 claim, for failure to state a claim must be denied because Plaintiffs have a clearly established constitutional right, *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Anderson is not entitled to the protection of qualified immunity, and the other issues raised by Anderson in his Memorandum on this Count are factual issues that must be determined at trial.

Defendant Anderson's argues that Count 3 (alleging a violation of Plaintiffs' right to Due Process under Article I, Section 7 of the Utah State Constitution) must be dismissed for want of subject matter jurisdiction under Fed.R.Civ.P 12(b)(1) because of Plaintiffs' failure to file a Notice of Claim under the Utah Governmental Immunity Act. However, a UGIA notice of claim is not required to state a claim for a violation of Article I, Section 7. *Heughs Land, L.L.C. v. Holladay City*, 113 P.3d 1024, 2005 UT App 202. Furthermore, the allegations of the Complaint meet the tests

of *Spackman v. Board of Educ. of Box Elder County School Dist.,* 16 P.3d 533, 2000 UT 87, for stating a claim against Anderson. The violation is flagrant and there is no other way of fully vindicating Plaintiffs' rights.

Defendant Anderson argues that Count 6 for injunctive relief must be dismissed because Plaintiffs cannot show a sufficient likelihood of being personally harmed by the alleged violation of Due Process in the future. This is an attack on the subject matter jurisdiction with respect to Count 6. Plaintiffs concede that Defendant Anderson is correct, and that Count 6 must be dismissed for want of subject matter jurisdiction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660 (1983).

## IV.    PLAINTIFFS' STATEMENT OF FACTS

As particularly alleged in the Plaintiffs' Complaint, the exculpatory pathology evidence in this case was generated at Primary Children's Medical Center ("PCMC"), the hospital administered by Defendant IHC where N.M., a small child, was admitted after losing consciousness while in Abby Tiscareno's care earlier in the morning. (Compl. ¶¶52-67) Because the child was suffering from a subdural hematoma, the injury was diagnosed as a possible abusive head trauma. (Compl. ¶102) In such cases, the hematoma (clot) is surgically removed and a pathology examination of the tissue is routinely ordered by PCMC personnel to help date the clot and thereby identify the perpetrator. (Compl. ¶¶69).

The pathology slides of the victim's brain and the pathology report were on file in the hospital records. (Compl. ¶73) and Defendant Walker knew that a

4

pathology examination had been made. (Compl. ¶¶68-70) Ignoring the Pysher-Townsend-Yang finding of bleeding prior to the date of admission in the clot removed from the child's brain, Defendant Lori Frasier concluded—and so informed Summit County Detectives—that the injury to the child could only have occurred while he was in Abby Tiscareno's care earlier that day. (Compl. ¶¶104, 138). Dr. Frasier made this conclusion despite the fact that she had seen a CAT scan of the victim's brain that also indicated the possibility of a prior bleed. (Compl. ¶¶64, 65, 83-87)

Although purporting to seek dismissal of Plaintiffs' claims against him "based on the facts as plead in the *Complaint and Jury Demand*," (Def. Mem. ii), Defendant Anderson ("Anderson") recites only a few allegations from Plaintiffs' Complaint, ignores most of the integrated material allegations comprising Plaintiffs' claims against him, *Compare*, Def. Mem. ii, ¶¶ 1-8, and Complaint, *passim*, including ¶¶ 32-40, 46-47, 102, 194-196, 204, 294-298, 300-311, and disputes the facts alleged in Plaintiffs' Complaint. (Def. Mem. 3-7). However, "neither the facts nor the reasonable inferences to be drawn from them are at issue at this stage of the litigation." *Ramirez v. Dep't. of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

## ARGUMENT

**V.   COUNT 1: CLAIM FOR DAMAGES FOR VIOLATION OF RIGHT TO DUE PROCESS UNDER THE U.S. CONSTITUTION AND PURSUANT TO 42 USC §1983**

**A.   THE COMPLAINT INFERENTIALLY ALLEGES THAT DEFENDANT HAD POSSESSION OF THE EXCULPATORY RECORDS.**

In ¶9 of his "Statement of Facts," Anderson asserts that, "Plaintiffs do not allege that DCFS was in possession of those medical records." (Def. Mem. iii) Even so, an inference that DCFS <u>was</u> in possession of the critical records may be drawn from Plaintiffs' other allegations that the exculpatory records were available at PCMC, ¶107, that complaining witness Frasier was employed by PCMC and by the University of Utah at PCMC, ¶¶6-9, that Frasier was acting pursuant to DCFS policies, ¶13(c), that PCMC medical records custodians, presented with the request for medical records, responded to the request pursuant to DCFS policies, ¶28(c), that DCFS maintained an office at PCMC, ¶35, that the records were went to the Center for Safe and Healthy Families at PCMC, ¶118, and that Anderson did not produce the medical records at issue pursuant to the prosecutor's subpoena or official request in the underlying criminal case. (Compl. ¶¶194-196).

Anderson filed no affidavit denying that subject medical records were in the possession of DCFS at the time of the request. Under <u>Fed.R.Civ.P</u>. 8(a), Plaintiffs are required to provide only a "short and plain statement of their claim." Thus, Plaintiffs' failure to plead the specific fact "that DCFS was in possession of those medical

6

records" (Def. Mem. iii) is not fatal to their claims against Anderson on a motion to dismiss. *See*, *Lane v. Simon*, 495 F. 3d 1182, 1186 (10th Cir. 2007) ("…in order to survive a motion to dismiss for failure to state a claim, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.") A plaintiff's "pleadings need not identify every element of a claim, particularly where contested elements relate to an affirmative defense," (internal citations omitted) *Rodriguez v. City of Houston*, Slip Copy 2007 WL 1189639 ,*4 (S.D. Tex. 2007).

If the Court nonetheless determines that an allegation is needed that literally and explicitly states that Defendant Anderson had the exculpatory records, Plaintiffs move the Court to grant Plaintiffs leave to amend the Complaint to add that single allegation.

**B.**      **ANDERSON IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE IS A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT OF DUE PROCESS WHICH IMPOSES A DUTY ON HIM TO TURN OVER EXCULPATORY EVIDENCE.**

Anderson asserts that Plaintiffs' federal constitutional right to Due Process and their correlative right to damages under 42 USC §1983 is barred by the affirmative defense of qualified immunity (Def. Mem. 3-6) which is established if Defendant's actions did not violate a clearly established constitutional right at they time they occurred.

7

Plaintiffs' First Cause of Action (Compl. ¶¶294-311) is based on a *Brady* violation of Abby Tiscareno's Fourteenth Amendment right not to be deprived of due process in the form of a fair trial as a result of a government officer acting in an investigative capacity withholding exculpatory evidence from the prosecutor. This federal constitutional right was well established prior to the date of the acts and omissions alleged in the Complaint. (Compl. ¶¶1, 32-40).

In order to overcome a qualified immunity defense, there must be a Supreme Court or Circuit decision on point, or the clearly established weight of authority from other courts, and the right allegedly violated must be a right under the United States Constitution or under federal law. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In the instant case, the cases establishing a fundamental Fourteenth Amendment right not to be deprived of a fair trial by the Government's failure to disclose exculpatory evidence were decided in 1963 and 1976. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

It is not the prosecutor alone who has a duty to turn over exculpatory evidence. Following *Brady* and *Agurs*, a number of courts have held investigators or other state officers liable for failing to disclose material exculpatory evidence to the prosecutor. *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988) upheld a jury verdict against officers in a §1983 for their having concealed from the prosecutor facts material to decision about whether to prosecute plaintiff. *Robinson v. Marfutti,*

8

895 F.2d 649, 655-56 (10th Cir. 1990) held that state officers who conceal or misrepresent evidence to the district attorney may be liable under §1983 claim for malicious prosecution even though the prosecutor, grand jury, trial court and appellate court all act independently to facilitate erroneous convictions. *See* also *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992) (police officer's deliberate failure to disclose exculpatory evidence to the prosecutor exposed him to liability under §1983); *McMillian v. Johnson*, 88 F.3d 1554, 1567 (11th Cir. 1996) (Although investigators have no *Brady* obligation to turn over exculpatory evidence to the defense, they do have a duty, under *Brady*, to turn over such evidence to the prosecutor); *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001) (denying qualified immunity to state officers who withheld evidence from prosecutor, concluding that law was clearly established in 1979 and 1980 that investigators could not withhold exculpatory evidence from prosecutor under *Brady*); *Charles v. City of Boston*, 365 F. Supp.2d 82, 89 (D. Mass. 2005) (forensic criminalist's duty to disclose exculpatory evidence to prosecutor under *Brady* was well-established as of 1980).

In *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), the Tenth Circuit Court of Appeals observed that, "[O]fficials can still be on notice that their conduct violates established law in novel factual circumstances, and while earlier cases involving "fundamentally similar" facts can provide especially strong support for the conclusion that the law is clearly established, they are not necessary to such a finding….The salient question …is whether the state of the law at the time of the

9

conduct gave respondents fair warning that their alleged treatment of plaintiff was unconstitutional" *Id*. at 1298. (Internal citations and quotations omitted). "Qualified immunity will not be granted if government defendants fail to make 'reasonable applications of the prevailing law to their own circumstances.'" *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (quoting *Murrell v. Sch. Dist. No.1*, 186 F.3d 1238, 1251 (10th Cir. 1999).

It is clear that the duty to identify and disclose exculpatory evidence is not limited to the prosecutor. While it is (s)he who has the duty to turn over the exculpatory evidence to the defendant in a criminal case, the *Brady* duty extends not only to the prosecutor's entire office, but to "law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture." *Smith v. Secretary of New Mexico Dept. of Corrections*, 50 F.3d 801, 824 (10th Cir. 1995). The rationale for this is that the Due Process violation—"the taint on the trial"—is as great if the evidence is withheld by the division director of DCFS as it is if the exculpatory evidence is withheld by the prosecutor. *Id.*

Thus,, the District Court stated in *Rodriguez v. City of Houston*, Slip Copy, 2007 WL 1189639 (S.D. Tex. 2007), citing *Mowbray v. Cameron County Tex.*, 274 F.3d 269, 278 n.5 (5th Cir. 2001) that although neither police officers or lab technicians have a *Brady* duty to disclose exculpatory evidence [directly] to criminal defendants, alleging that such state actors "elicited false evidence and deliberately concealed exculpatory evidence from all parties, including the prosecution" will support §1983 liability.

Based upon the foregoing clearly established law, a reasonable director of DCFS, a state agency statutorily charged with conducting an independent investigation of child abuse reported to the agency, would have known in 2003 that it was a violation of the rights of the citizen criminally charged with the alleged child abuse for the agency not to provide all exculpatory evidence in the agency's possession in response to a subpoena or official request from the prosecuting attorney in the criminal case.

**C.    IN ADDITION TO PERSONAL LIABILITY FOR HIS OWN ACTS OR OMISSIONS, DEFENDANT ANDERSON IS LIABLE FOR HIS ACTS AND OMISSIONS AS A SUPERVISOR**

Anderson argues that he is entitled to qualified immunity "because there is no supervisory liability under §1983" (Def. Mem. 6). This statement is overly broad and incorrect. As Anderson subsequently acknowledges, supervisory liability under §1983 exists where there is an "affirmative link" between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise or train (Def. Mem. 6, citing *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)) *See also, Brokaw*, 2007 WL 2221065, at 3 ("In order to satisfy this standard [for §1983 supervisory liability], plaintiff must show that "the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance.")

In the instant case, Plaintiffs allege an "affirmative link" between Anderson's conduct, Complaint ¶46, and the deprivation of Plaintiff Abby Tiscareno's right to a

11

fair trial. (Compl. ¶¶ 294-311). Thus, Plaintiffs are not seeking damages against Anderson merely because "he was in charge of other state actors who actually committed the violation." *Brokaw*, 2007 WL 2221065, at 3. Instead, Plaintiffs seek damages against Anderson because he had a duty to disclose exculpatory evidence, (Compl. ¶298), he failed to disclose it, (Compl. ¶ 300), and as a result Plaintiff Abby Tiscareno failed to receive a fair trial. (Compl. ¶¶304-305)

Anderson also correctly notes that liability for failure to train may not be predicated on "mere negligence". (Def. Mem. 6, citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). However, Plaintiffs have alleged that his conduct was "reckless, malicious, knowing or intentional," Compl. ¶46, and so Anderson is not entitled to qualified immunity on that basis.

A reasonable official would have known that his failure to promulgate, adopt and implement reasonable policies and procedures, and his failure to properly supervise employees under his supervision to assure that such evidence was disclosed to the prosecutor would foreseeably deprive a citizen charged with child abuse of his or her right to liberty and due process of law in the form of a fair trial under the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the Utah Constitution.

12

**D.    THE UNSUPPORTED FACTS IN DEFENDANT ANDERSON'S MOTION TO DISMISS SHOULD BE DISREGARDED**

Throughout the Memorandum supporting his Motion to Dismiss Plaintiffs' §1983 claims, (Def. Mem. 4-8), Anderson's counsel makes unsworn and unsupported hearsay statements that are outside the pleadings. These include the following:

> "DCFS does not investigate criminal activity." (Def. Mem. 4)

> "DCFS is not an agent of any law enforcement authority or prosecutor's office." (Def. Mem. 4)

> "And it is not like the State Crime Lab or the Medical Examiner's Office, which regularly investigates aspects of crime and reports to law enforcement agencies."(Def. Mem. 4)

> "DCFS was fully aware that N.M. was seen by PCMC doctors and that law enforcement officers had interviewed PCMC doctors about the child." (Def. Mem. 5)

These unsupported and unsworn factual allegations of counsel are not evidence and should be stricken and disregarded for purposes of the determination of Anderson's Motion to Dismiss.

> "[T]estimonial evidence submitted on motions must be in the form of affidavits or declarations. Unsworn statements by counsel simply will not do."

*Markowitz Jewelry Co., Inc. v. Chapal/Zenrav, Inc.*, 988 F. Supp. 404, 405 (S.D.N.Y. 1997) (internal citations omitted).

The facts before the Court on Motion to Dismiss are those set forth in the Complaint. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007),

13

citing *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) ("We must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.") Accordingly, to the extent defendant Anderson seeks dismissal of Plaintiffs' claims based on unsupported facts outside the pleadings, his motion should be denied.

**E.     DEFENDANT ANDERSON IS NOT ENTITLED TO QUALIFIED IMMUNITY BASED ON DISPUTED ISSUES OF MATERIAL FACTS THAT MUST BE DEVELOPED IN DISCOVERY AND DETERMINED AT TRIAL**

Defendant Anderson makes a number of factual arguments about why he is entitled to qualified immunity from liability for Plaintiffs' §1983 claims. First, he claims that he is entitled to qualified immunity because "if they have reason to believe that the prosecutor already has the exculpatory evidence, investigators have no duty to disclose the evidence." (Def. Mem. 5). This argument is without merit. Anderson filed no affidavit or other proof to support an allegation that he "had reason to believe that the prosecutor already had the evidence." Moreover, the reasonable inference to be drawn from Plaintiffs' allegation that the prosecutor requested the evidence from DCFS is that he <u>did</u> have the evidence requested. (Compl. ¶¶194-196). Essentially, this is an argument about a material issue of fact—whether Anderson's behavior was reasonable for someone under a duty to disclose exculpatory material— and that fact must be resolved at trial.

Similarly, in an attempt to blunt the impact of the allegation in the Complaint that DCFS "has a statutory duty pursuant to U.C.A. §62A-4A-403 and 62A-4a-409

14

(1)(a), et seq., to perform an independent investigation of child abuse allegations reported to DCFS," Complaint ¶36, Defendant Anderson cites certain Utah statutes that describe some of DCFS' fundamental responsibilities. (Def. Mem. iii). He also cites a statute to the effect that "DCFS is not required to duplicate an aspect of the investigation that has been, in the division's determination, satisfactorily completed by law enforcement." (Memo at 4, citing UCA 62A-4a-409(11)(a) and (b).) However, these statutes do not refute,—nor does Anderson deny the fact that DCFS has a statutory duty to conduct an independent investigation of all child abuse allegations concerning the victim in an underlying criminal case pursuant to Utah Code Ann. §62A-4A-403 and 62A-4a-409 (1)(a), et seq., as alleged in the Plaintiffs' Complaint. (Compl. ¶36). The interplay of these statutes and Anderson's duties respecting them will have be developed in discovery and their effect on the outcome finally determined at trial. But those statutes do not cloak Defendant with qualified immunity.

Similarly, Anderson's argument that "it is unreasonable to presume that Anderson, as DCFS director at the time of the alleged request for records, personally handled every records request served upon DCFS" (Def. Mem.6), improperly seeks to insert an unresolved factual issue which is outside the pleadings. Anderson does not provide any evidence demonstrating that he did or did not "personally handle" the request from the prosecutor in this case, and offers no explanation regarding the relevance of this fact to Plaintiffs' §1983 due process claim against Anderson. Moreover, Plaintiffs' Complaint does not allege that Anderson "personally handled"

15

the prosecutor's request for medical records of the child abuse victim in this case as a basis for Anderson's liability on Plaintiffs' First Cause of Action. (Compl. ¶¶294-311).[1]This is another factual issue that needs to be developed during discovery and then resolved by the fact finder at trial.

Finally, Anderson argues that he is entitled to qualified immunity on the purported ground that "the law was not clearly established in 2005 that the *Brady* obligation applied to DCFS personnel."(Def. Mem. 8). This argument is incorrect. As the Tenth Circuit observed in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), "Section 1983, by its terms, applies not only to a person who "subjects", but also to any person who "*causes to be subjected*…any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Id*. at 1292. Thus, Congress was concerned with imposing liability on all individuals who "caused" the deprivations of a constitutional right, regardless of their respective roles in the deprivation. In *Pierce*, the Tenth Circuit took it as established law that "officers who conceal and misrepresent material facts to the district attorney are not insulated from a §1983 claim simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions."….. Accordingly, Ms. Gilchrist cannot 'hide behind' the fact that she

---

[1] Moreover, Anderson does not deny that he personally investigated child abuse cases as Director of DCFS during the relevant period, nor could he, given that Judge Paul Cassell of this Court recently denied Anderson's motion to dismiss a §1983 due process claim against him in a case where Anderson was personally involved in the investigation of parents who refused to accede to demands from DCFS personnel that they permit their son undergo medical treatment under the threat that the parents would face prosecution and/or lose custody of their son and the parents were subsequently indicted on criminal charges. See, P.J. v. Utah, Not Reported in F. Supp. 2d, 2006 WL 1702585 (D. Utah 2006) at *3-4. Plaintiffs request that the court take judicial notice of this decision.

neither initiated nor filed the charges against Mr. Pierce.'" *Id*. at 1293. Similarly, in this case, Anderson cannot 'hide behind' the fact that he neither initiated nor filed the charges against Plaintiff Abby Tiscareno.

Based upon *Brady* and it progeny, a reasonable official under the circumstances presented to Anderson would also have known that his failure to promulgate, adopt and implement reasonable policies and procedures, and his failure to properly train employees under his supervision, to assure that exculpatory evidence was disclosed to the prosecutor, would foreseeably deprive a citizen charged with child abuse of his or her right to liberty and due process of law in the form of a fair trial. Thus, Anderson has no qualified immunity from the due process claims asserted in Plaintiffs' First Cause of Action and Anderson's motion to dismiss Plaintiffs' First Cause of Action on this ground, should be denied.

**VI. COUNT 3: DAMAGES CLAIM FOR VIOLATION OF RIGHT TO DUE PROCESS UNDER ARTICLE I SECTION 7 OF THE UTAH STATE CONSTITUTION**

**A. THE COURT HAS SUBJECT MATTER JURISDICTION BECAUSE THE UTAH GOVERNMENTAL IMMUNITY ACT DOES NOT APPLY TO CONSTITUTIONAL CLAIMS BASED ON SELF-EXECUTING PROVISIONS OF THE UTAH STATE CONSTITUTION**

Anderson argues that the Court is without jurisdiction to proceed against him on Count 3 alleging a violation of Plaintiffs' Due Process rights under Article I, Section 7 of the Utah Constitution because of Plaintiffs' failure to file notice of the claim under the Utah Governmental Immunity Act ("UGIA"). (Def. Mem. 8-9). As

17

authority for this, he cites *Jensen ex rel. C.J. v. Reeves*, 45 F.Supp. 2d 1265, 1278 (D. Utah March 29, 1999) and the unpublished Tenth Circuit opinion affirming the decision. This argument is incorrect. *Jensen* was decided prior to the Utah Supreme Court's recent decisions making it quite clear that the UGIA does not apply to claims under "self-executing" provisions of the Utah Constitution.

In *Spackman v. Board of Educ. of Box Elder County School Dist.,* 16 P.3d 533, 2000 UT 87, the Utah Supreme Court held that the due process clause contained in Article I, Section 7 of the Utah Constitution is "self-executing" and pronounced that a Utah court's ability to award monetary damages under such provisions "rests on the common law," disavowing any statement to the contrary in its prior decision in *Bott v. DeLand*, 922 P.2d 732 (Utah 1966). *Spackman,* at 537-538. In *Spackman,* the Court stated that even though the Utah Legislature had waived immunity for compensation claims based on the Takings Clause, article 1, section 22, of the Utah Constitution, "there would be *no governmental immunity* even in the absence of a legislative waiver." *Id*. at 537-538, ¶20 (Emphasis supplied)

In *Heughs Land, L.L.C. v. Holladay City*, 113 P.3d 1024, 2005 UT App 202, the Utah Court of Appeals reversed the district court dismissal of an action on the ground that the developer failed to comply with the notice of claims requirement of the UGIA, holding that the claim could *not* be precluded because the claim was brought under a "self-executing" provision of the Utah Constitution. In this regard, the Court stated, "Heughs Land's inverse condemnation action involves claims under a self-executing provision of the Utah Constitution and does not arise out of, and is

18

not dependent on, a waiver of immunity contained in the UGIA…Therefore, the notice provisions of the UGIA do not apply to Heughs Land's claim.." *Id*. at ¶11.

Based upon the foregoing authorities, Anderson's argument that this court lacks subject matter over Count 3 because of Plaintiffs' failure to give notice under the UGIA, is unfounded and must be denied.

**B.      PLAINTIFFS' CLAIM UNDER ARTICLE I, SECTION 7 OF THE UTAH CONSTITUTION MEETS THE TEST OF *SPACKMAN V. BOARD OF EDUCATION***

Defendant Anderson argues that Plaintiffs cannot establish the first two elements of the test for damages for the violation of a self-executing constitutional provision under *Spackman*, 2000 UT 87, ¶¶22-23, namely that (1) the plaintiff suffered a "flagrant" violation of his or her constitutional rights, and that (2) existing remedies do not redress their injuries. (Def. Mem. 9-10). In the instant case, both elements are met.

### 1.      *Flagrant Violation*

The "flagrant violation" requirement "in essence means that a defendant must have violated the clearly established rights of which a reasonable person would have known, thus tracking traditional qualified immunity analysis. *Spackman*, at 538, ¶23. As demonstrated in Plaintiffs' qualified immunity analysis, *infra* at 10-14, Plaintiff Abby Tiscareno's right not to be deprived of due process in the form of a fair trial by the government officers' failure to disclose exculpatory evidence to the prosecutor, was well established at the time of its alleged violation by defendant Anderson.

19

As the Utah Supreme Court stated in *Spackman*, "Although the right to due process [in Article I, Section 7 of the Utah Constitution] is expressed in relatively general terms ("no person shall be deprived of life, liberty or property without due process of law"), this due process provision "is both judicially definable and enforceable" and the Supreme Court has enforced the clause on numerous occasions in specific situations, such as invalidating statutory provisions on due process grounds, applying due process principles to an evidentiary issue, and applying due process principles to contempt proceedings. Thus, the general right to due process under Article I, Section 7 of the Utah Constitution has been "clearly established" since at least 1982, and even going back prior to the time before Article I, section 7 of the Utah Constitution came into existence. *See, Spackman*, 2000 UT 87, ¶12-13.

### 2.    *Existing Remedies Do Not Adequately Redress Plaintiff's Injuries*

Under the second prong of *Spackman*, Plaintiff must demonstrate that existing remedies do not redress plaintiff's injuries. *Id*. at 537-39 (Utah 2000).  Although Anderson argues that Plaintiffs "must articulate the difference between the applicable state and constitutional claims before they can proceed with the state constitutional claims" (Def. Mem. 10), this is incorrect. As Judge Cassell of this Court observed in *P.J. ex. Rel. Jensen v. State of Utah*, Not Reported in F. Supp.2d, 2006 WL 1702585, this rule only applies in cases "where a party relies nominally on state constitutional provisions while actually relying on the parallel federal constitutional provisions and analysis based on them." *Id*. at ¶20, quoting *State v. Harris*, 104 P.3d 1250, 1258

20

(Utah 2004). However, in this case, as in *P.J. ex. Rel. Jensen*, the Plaintiffs relied equally on the United States and Utah Constitutions, alleging two causes of action were based on each. Thus, there has been no "nominal" reliance on the Utah Constitution by the Plaintiffs here, and the rule does not apply.

Anderson further argues that, "Plaintiffs allege a violation of the Utah Constitution that does not materially differ from the federal counterpart"[and] "therefore cannot show that they do not have existing remedies." (Def. Mem. 10). This is incorrect. Here, as in *Brokaw*, 2007 WL 1065, "At this early state of the litigation, it is difficult to tell whether damages would be appropriate. The issue of whether existing federal law remedies provide sufficient redress for a state constitutional claim, is still an open question." *Id*. at *5. Accordingly, the Court should decline to grant Anderson's motion to dismiss on this ground.

**VII.   COUNT 6: CLAIM FOR INJUNCTIVE RELIEF, ENJOINING DCFS TO FULFILL ITS DUTY OF PERFORMING INDEPENDENT INVESTIGATIONS OF CHILD ABUSE CASES**

Defendant Anderson challenges the subject matter jurisdiction of the court to proceed with a claim for injunctive relief, asserting that Plaintiffs have not—and cannot—show a "real and immediate threat that [s]he again 'would be harmed, which is a necessary precondition to having standing to seek an injunction.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660 (1983). In *City of Los Angeles v. Lyons*, the Supreme Court held that in order to satisfy the "case or controversy" requirement of Art. III, a plaintiff must show that she has sustained or is immediately

21

in danger of sustaining some direct injury as the result of the challenged official conduct, and the injury or threat of injury must be "real and immediate," not "conjectural" or "hypothetical." *Ibid.,* 461 U.S. at 101, 103 S.Ct. at 1665. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

Defendant Anderson's point is well made, and therefore Plaintiffs concede that it is appropriate to dismiss Count 6 of the Complaint.

## CONCLUSION

Based upon the foregoing points and authorities, Plaintiffs respectfully request that Defendant Anderson's motion to dismiss be denied as to Counts 1 and 3 and granted as to Count 6.

DATED and respectfully submitted this 14th day of November, 2007.

COUNSEL FOR PLAINTIFFS:

Kathryn Collard, Esq.
Utah Bar No. 0697
Law Firm of Kathryn Collard, LC
Nine Exchange Place, Suite 1111
Salt Lake City, UT 84111
Tel: (801) 537-5625

Macon Cowles, Esq.
Colorado Bar No. 6790
Macon Cowles & Associates, P.C.
1680 Wilson Court
Boulder, CO 80304
(303) 447-3062

22