KATHRYN COLLARD, #0697
THE LAW FIRM OF KATHRYN COLLARD, L.C.
Nine Exchange Place, Suite 1111
Salt Lake City, UT 84111
Tel: (801) 537-5625

MACON COWLES, #6790 (Colorado)
MACON COWLES & ASSOCIATES, P.C.
1680 Wilson Court
Boulder, Colorado 80304
Tel: (303) 447-3062

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ABBY TISCARENO and GUILLERMO TISCARENO,<br><br>Plaintiffs,<br><br>v.<br><br>LORI FRASIER, in her individual capacity; MARION WALKER, in his individual capacity; WILLIAM BEERMAN, in his individual capacity; RICHARD ANDERSON, in his individual and official capacity; DAVID BRICKEY, in his individual capacity; INTERMOUNTAIN HEALTH CARE, in its individual capacity; JOHN and JANE DOES 1-20, in their individual capacities,<br><br>Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT WALKER'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Civil No. 2:07-cv-336<br><br>Judge Ted Stewart |

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................iii

SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS ..................................ix

ARGUMENT ................................................................................................................1

POINT I WALKER HAS NO ABSOLUTE WITNESS IMMUNITY FROM PLAINTIFFS' §1983 CLAIMS FOR DEPRIVATION OF DUE PROCESS AND MALICIOUS PROSECUTION...................................1

 A. STANDARD OF REVIEW ........................................................1

 B. PLAINTIFFS' CLAIMS AGAINST DEFENDANT WALKER...........1

 C. THE FACT THAT PLAINTIFFS ALLEGE THAT WALKER GAVE FALSE AND MISLEADING TESTIMONY IN THE UNDERLYING CRIMINAL TRIAL WHICH IS PROTECTED BY ABSOLUTE WITNESS IMMUNITY, DOES NOT BAR PLAINTIFFS' *BRADY* CLAIM BASED ON OTHER MISCONDUCT AND ABSOLUTE WITNESS IMMUNITY DOES NOT APPLY TO PLAINTIFFS' MALICIOUS PROSECUTION CLAIM....................................................2

 1. Walker Has No Absolute Witness Immunity For Non-Testimonial §1983 Brady Violations ..........................................4

 a. Walker's Expert Witness Report ................................................7

 b. Walker's Failure To Disclose Exculpatory Evidence In Response To Prosecutor's Requests Or Subpoenas For N.M.'s Medical Records........................................................................8

 D. WALKER'S ARGUMENT THAT HE HAD NO DUTY OF DISCLOSURE UNDER *BRADY*, BASED ON UNSWORN STATEMENTS OF HIS ATTORNEYS THAT ARE CONTRARY TO THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT, IS WITHOUT MERIT AND MUST BE DENIED ..........................................................................................9

 E. WALKER IS NOT IMMUNE FROM PLAINTIFFS' §1983 CLAIM FOR MALICIOUS PROSECUTION BASED ON "ABSOLUTE WITNESS IMMUNITY" UNDER *BRISCOE*..............13

# TABLE OF CONTENTS, cont'd.

POINT II    WALKER FAILS TO SHOW THAT HIS ALLEGED CONDUCT WAS NOT A "SUBSTANTIAL FACTOR" IN BRINGING ABOUT THE FEDERAL CONSTITUTIONAL DEPRIVATIONS ALLEGED BY PLAINTIFFS. THUS, HIS MOTION TO DISMISS PLAINTIFFS' §1983 CLAIMS MUST BE DENIED.........16

POINT III    WALKER IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS ...............17

A.    THE UTAH GOVERNMENTAL IMMUNITY ACT DOES NOT APPLY TO PLAINTIFFS' CLAIMS UNDER SELF-EXECUTING PROVISIONS OF THE UTAH CONSTITUTION ...............17

B.    WALKER'S ARGUMENT THAT PLAINTIFFS' CLAIMS UNDER THE UTAH CONSTITUTION FAIL TO MEET THE *SPACKMAN* TEST IS WITHOUT MERIT IN THAT IT IS BASED ON WALKER'S MISCHARACTERIZATION OF PLAINTIFFS' CLAIMS AND FACTS THAT ARE CONTRARY TO PLAINTIFFS' ALLEGATIONS ...............19

1.    Plaintiff Abby Tiscareno's State Constitutional Right To Due Process ...............20

2.    Plaintiff Abby Tiscareno's State Constitutional Right Against Unreasonable Seizure ...............21

3.    Existing Remedies Do Not Adequately Redress Plaintiffs' Injuries ...............23

4.    Equitable Relief Was And Is Wholly Inadequate To Protect The Plaintiffs' Rights Or Redress The Plaintiffs' Injuries ...............25

CONCLUSION ...............26

EXHIBIT 1 - State v. Francis, Case No. 001902836, Second Judicial Dist., Utah (2000)

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anthony v. Baker*, 955 F.2d 1395 (10th Cir. 1992) ..................................................... 13,14

*Atl. Richfield Company v. Farm Credit Bank*, 226 F.3d 1138 (10th Cir. 2000) ............... 1

*Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007)................................................................ 23

*Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007).......................................................xvi,1

*Boice v. Unysis Corporation*, 50 F.3d 1145 (2nd Cir. 1995) ....................................... 4,8,9

*Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963) ................... 3

*Briscoe v. Lahue,* 460 U.S. 325 (1983) ..................................................vii,2,3,4,7,8,13,16

*Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963)...... 3, *passim*

*Brokaw v. Salt Lake County*, not reported in F.Supp.2d,
2007 WL 2221065 (D. Utah 2007)................................................................................. 18

*DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990), *cert. denied sub
nom. Welsh v. DeLoach*, 112 S.Ct. 65 (1991) ................................................................. 14

*Fisher v. Lynch*, Slip Op., 2008 WL 2152053 (D. Kan. 2008) ......................................... 1

*Franklin v. Terr.*, 201 F.3d 1098 (9th Cir. 2000) .............................................................. 4

*Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988) ...................................................... 10

*Gersten v. Senkowski*, 299 F. Supp.2d 84 (E.D.N.Y. 2004)............................................... 6

*Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State
Police*, 411 F.3d 427, 442-443 (3rd Cir. 2005) ................................................................ 10

*Giglio v. U.S.*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ............................. 9,12

*Ienco v. City of Chicago*, 286 F.3d 994 (7th Cir. 2002) ..................................................... 4

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988)................................................... 10

*Kyles v. Whitle*y, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ............... 3

*Manning v. Miller*, 355 F.3d 1028 (7th Cir. 2004)........................................................... 4

## TABLE OF AUTHORITIES cont'd.

*Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*, 988 F. Supp.
404 (S.D.N.Y. 1997).............................................................................xv,xvi,7,8,11,13,22

*Mayes v. City of Hammond, IN*, 442 F.Supp.2d 587 (N.D. Ind., 2006) ............................. 4

*McMillian v. Johnson*, 88 F.3d 1554, 1567 (11th Cir. 1996) ........................................... 10

*Miller v. Glance*, 948 F.2d 1562 (10th Cir. 1991).............................................................. 4

*Mitchell v. Gibson*, 262 F.3d 1036 (10th Cir. 2001) ....................................................... 10

*Mock v. T.G. & Y.*, 971 F.2d 522 (10th Cir. 1992)............................................................. 1

*Moore v. Guthrie*, 438 F.3d 1036 (10th Cir. 2006) ...................................................... 1,22

*Northington v. Marin*, 102 F.3d 1564, 1568-1570 (10th Cir. 1996) ........................viii,16

*P.J. ex rel. Jensen v. Utah*, Not Reported in
F.Supp.2d, 2006 WL 1702585 (D. Utah) ................................ 13,14,16,17,18,20,23,24,25

*Pavel v. Hollins*, 261 F.3d 210 (2nd Cir. 2001) ................................................................ 7

*Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).................... 9

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004) ............................................. 14,21,22

*Skyline Corp. v. NLRB*, 613 F.2d 1328 (5th Cir. 1980)............................xvi,7,8,11,13,22

*Smith v. Secretary of New Mexico Dept. of Corrections*, 50 F.3d 801
(10th Cir. 1995) ........................................................................................................... 5,9,10

*Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006 (7th Cir. 2006) .............................. 4,7

*Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007) ..................................................... 10

*U.S. v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392 (U.S.Dist.Col. 1975) ................................. 3,20

*U.S. v. Zuno-Arce*, 44 F.3d 1420 (9th Cir. 1995) .............................................................. 9

*United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ............... 3

*United States v. Blanco*, 392 F.3d 382 (9th Cir. 2004) ................................................. 9,12

# TABLE OF AUTHORITIES cont'd.

## STATE CASES

*Hall v. Utah Department of Corrections*, 2001 UT 34, 24 P.3d 958, 964
(Utah 2001)........................................................................................................... 18

*Ham v. State*, 760 S.W.2d 55 (Texas 1988) ....................................................... 6

*Heughs Land, L.L.C. v. Holladay City*, 2005 UT App 202, 113 P.3d 1024..................... 18

*Patterson v. American Fork City*, 2003 UT 7, 67 P.3d 466 ........................................ 23,24

*Spackman ex rel. Spackman v. Board of Education*,
2000 UT 87, 16 P.3d 533 (Utah 2000) .............................................ix,17,19,20,23,24,25,26

*State of New Mexico v. Schoonmaker*, 176 P.3d 1105 (New Mexico 2008)...................... 6

*State v. Backalov*, 1999 UT 45, 979 P.2d 799 .................................................... 21

*State v. DeBooy*, 2000 UT 32, 996 P.2d 546 .................................................... 21

*State v. Carter*, 707 P.2d 656 (Utah 1985) ....................................................... 20

*State v. Francis*, Case No. 001902836, Second Judicial Dist., Utah (2000)................... 11

*State v. Hales*, 2007 UT 14, 152 P.3d 321 (Utah 2007) ................................................. 6,11

*State v. Harris*, 2004, UT 103, 104 P.3d 1250 ................................................... 24

*State v. Jarrell*, 608 P.2d 218 (Utah 1980)........................................................ 20

*State v. Martin,* 1999 UT 72, 984 P.2d 975....................................................... 20

*State v. Michael James Fisk III*, 966 P.2d 860 (Utah App.1998).................................... 11

*Utahns for Better Dental Health-Davis, Inc. v. Davis*, 2007, UT 97, 175 P.3d
1036 ..................................................................................................... 24

# TABLE OF AUTHORITIES cont'd.

## FEDERAL RULES OF CIVIL PROCEDURE

F.R.Civ.P.12(b)(6) ................................................................................................... 1

F.R.Civ.P.12(c) ........................................................................................................ 1

## FEDERAL STATUTES

42 U.S.C. §1983 ............................................................................................ 1,passim

## UTAH CONSTITUTIONAL PROVISIONS

Article I, §7 ................................................................................................... 1,2,17

Article I, §14 ............................................................................................ 2,17,18,21

Plaintiffs, by and through their undersigned counsel, hereby submit their memorandum in opposition to (*Defendant Walker's*) *Rule 12(c) Motion To Dismiss* and supporting *Memorandum* ("Def. Mem.") previously filed herein. *See,* Docket 47-48.

## INTRODUCTION

Defendant Marion Walker's ("Walker") motion to dismiss Plaintiffs' §1983 *Brady* claim based on "absolute witness immunity" is without merit. Under applicable case law, the fact that Plaintiffs allege Walker gave false and misleading testimony in the underlying criminal trial for which Walker has absolute witness immunity under *Briscoe*, does not bar Plaintiffs' *Brady* claim based on other alleged misconduct, including Walker's failure, in concert with other members of the prosecution team, to disclose material exculpatory pathology evidence to the prosecutor while providing false and misleading information implicating Abby Tiscareno to the prosecutor, and failing to provide the medical records concerning the exculpatory evidence in response to requests or subpoenas from the prosecutor for use in discovery and trial. *See*, Argument, Point I, *infra*, at 1-16.

Walker's argument that he had no duty of disclosure under *Brady* is also without merit, because Plaintiffs' Complaint alleges facts from which a reasonable factfinder could conclude that Walker functioned as a "member of the prosecution team" and thus had a duty to disclose exculpatory evidence to the prosecutor under *Brady* and its progeny. *See*, Argument, Point I, *infra*, at 1-16.

Likewise, Walker's motion to dismiss Plaintiffs' §1983 malicious prosecution claim based on "absolute witness immunity" fails because Plaintiffs' Complaint alleges

facts from which a reasonable factfinder could determine that Walker functioned as a "complaining witness," who instigated, encouraged and maintained a malicious prosecution of Plaintiff Abby Tiscareno by, among other things, providing false and misleading testimony implicating Abby Tiscareno in the trial of the underlying criminal case. Under applicable case law, a "complaining witness" has no "absolute witness immunity" for trial testimony that is instrumental in maintaining a malicious prosecution. *See*, Argument, Point I, *infra*, at 1-16.

Additionally, Plaintiffs allege that the deprivation of their federal constitutional rights occurred through the concurrent actions of Walker and other defendants, such that their damages cannot be apportioned between the defendants. In cases of alleged concurrent liability, the rule of *Northington v. Marin*, 102 F.3d 1564 (10th Cir. 1996), shifts the burden on a motion to dismiss under FRCP 12(b)(6) to Walker, to demonstrate that his alleged misconduct was not a "substantial factor" in causing the deprivation of constitutional rights alleged by Plaintiffs under §1983.  Because Walker fails to even address the rule, his motion to dismiss Plaintiffs' §1983 claims is without merit and must be denied. *See*, Argument, Point II, *infra*, at 16.

Walker's motion to dismiss Plaintiffs' state constitutional claims against him for violating Plaintiff Abby Tiscareno's rights to due process and against unreasonable seizures under Article I, sections 7 and 14 of the Utah Constitution, on the ground that Plaintiffs failed to give notice of such claims under the Utah Governmental Immunity Act, is incorrect as a matter of law, because the Act does not apply to claims for the deprivation of rights guaranteed under the self-executing provisions of the Utah

Constitution that form the basis for Plaintiffs' claims. *See*, Argument, Point III, *infra*, at 17-25.

Finally, Walker's motion to dismiss Plaintiffs' state constitutional claims on the ground that they fail to meet the *Spackman* test is also without merit, because this argument is based on the unsworn assertions of Walker's attorneys that are non-evidentiary and contrary to the allegations of Plaintiffs' Complaint which demonstrate that the *Spackman* test is satisfied. *See*, Argument, Point III B, *infra*, at 19-25.

## PLAINTIFFS' RESPONSE TO DEFENDANTS "FACTS"

### A.    SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS

Summarizing the integrated factual allegations of Plaintiffs' Complaint against Walker (Complaint, ¶51), Plaintiffs allege that:

1.    In the course of their state employment for the University of Utah, a state agency, at Primary Childrens Medical Center, a medical facility operated by defendant IHC, the defendant doctors Walker and Frasier had duties to assess child abuse cases and to consult with, and testify for, the State as medical forensic experts in the criminal prosecution of child abuse perpetrators. (Complaint, ¶¶ 4-21, 46-47)

2.    In cases involving brain injuries to children where child abuse was suspected and surgery was performed, pathology slides of tissue from the child's brain were routinely sent to the pathology department for examination and reports, to assist Walker and Frasier in determining the time of the victim's injury as a means of identifying the perpetrator of the child's injuries. (Complaint, ¶¶ 112-115, 141)

ix

3.      In the instant case, a child known as "N.M.", whose father left him with Plaintiff Abby Tiscareno for daycare on November 14, 2003, was hospitalized at Primary Childrens Hospital ("PCMC") later that day, after he lost consciousness and Ms. Tiscareno called 911 for medical assistance. Summit County Detectives initially suspected that N.M.'s injury was caused by one of his relatives or other persons residing in N.M.'s home. (Complaint, ¶¶ 52-63)

4.      A CT scan of N.M.'s brain taken at PCMC shortly following his arrival, demonstrated "an acute subdural hemorrhage superimposed on a chronic subdural hemorrhage." (Complaint, ¶¶ 64-65)

5.      Walker sent tissue he removed from N.M.'s brain during surgery for pathologic examination. However, Walker did not note this fact in any of N.M.'s medical records or in Walker's operative report. The pathology examination was conducted on November 14, 2003. (Complaint, ¶¶ 66-72)

6.      Frasier arrived at PCMC at about 3:30 p.m. and reviewed the CT scan indicating prior bleeding in N.M.'s brain, which Frasier knew could mean that N.M. was injured prior to the time he was left with Abby Tiscareno earlier that day. The CT head and body scans of N.M. showed no evidence of fracture. (Complaint, ¶¶ 78-89)

7.      After examining N.M. and speaking with his father about N.M.'s injury, Frasier concluded that N.M.'s injury was suspicious for child abuse. (Complaint, ¶¶ 90-108)

8.      Later that evening, Frasier asked Walker about the presence of old versus new blood in N.M.'s brain. Walker told Frasier that the blood was all "fresh"

x

and that he did not see any old blood during the surgery. Both Walker and Frasier knew Walker could not necessarily detect prior bleeding in the brain during surgery and that a pathology examination of N.M.'s brain tissue would indicate whether or not prior bleeding had occurred and would also provide information regarding the identity of the perpetrator. At the time of their conversation, Frasier knew it was Walker's obligation and responsibility to obtain a pathology examination of N.M.'s brain tissue. (Complaint, ¶¶ 109-115)

9. Without waiting for the results of the pathology examination, Walker and Frasier agreed that the CT scan of N.M.'s brain taken prior to surgery that had been interpreted by a radiologist at PCMC as demonstrating prior bleeding, was incorrect and that the bleeding in N.M.'s brain was all "fresh." (Complaint, ¶¶ 110-111)

10. Frasier immediately informed Summit County Sheriff's Detectives of the conclusions she had reached with Walker, that N.M.'s injury was caused by severe shaking, that blunt force trauma had not been ruled out but there were no outward signs of blunt force trauma. Defendant Frasier also told Detective Leatham that N.M. would have experienced no period of normalcy after this severe shaking and would have become unconscious immediately thereafter and thus could only have been injured while in the care of Abby Tiscareno. (Complaint, ¶¶111, 124-126) Based on this information, Summit County focused their investigation on Abby Tiscareno and away from N.M.'s father. (Complaint, ¶¶127-134)

11.     Following a lengthy interrogation of Abby Tiscareno, Summit County Detective Dorman did not think there was probable cause to arrest her, and met with Frasier again on November 17, 2003, and confirmed Frasier's prior representations that N.M.'s injuries could have only occurred though violent shaking during the time N.M. was in Abby Tiscareno's care. (Complaint, ¶¶ 135-138)

12.     Frasier also provided Detective Dorman a three page report, reiterating the conclusions she had reached with Walker. Armed with this information, Summit County Detectives discontinued their investigation of prior suspects and arrested Abby Tiscareno on charges of Second Degree Felony Child Abuse on November 19, 2003. (Complaint, ¶¶ 137-152)

13.     In the interim, on November 17, 2003, Dr. Theodore J. Pysher, the Director of the Pathology Department at PCMC, issue a report of the pathology examination of N.M.'s brain tissue conducted on November 14, 2003. The report indicated prior bleeding in N.M.'s brain. The Pathology Report was accompanied by a letter from Dr. Jeannette Townsend, indicating that she and another physician, identified as Dr. Yang, concurred that that the pathology examination demonstrated prior bleeding in N.M.'s brain. (Complaint, ¶¶ 72-77)

14.     Drs. Walker and Frasier received a copy of the pathology report on or about November 17, 2003, when it was issued and became part of the hospital record. (Complaint, ¶¶ 117-120; 175)

15.     After receiving the Pathology Report, Frasier did not contact any of the three doctors who wrote the reports to discuss their findings and did not discuss the Pathology Report with Walker. (Complaint, ¶¶ 121-122).

16.     Walker and Frasier did not inform other members of the prosecution team, including the Summit County Detectives and Summit County prosecutor, David R. Brickey, of their error in concluding that all of the blood in N.M.'s brain was "fresh" and therefore that Abby Tiscareno was the only person who could have injured the alleged victim. Instead, Walker and Frasier concealed and failed to disclose the exculpatory pathology evidence to prosecutor Brickey, and did not produce this evidence in response to formal subpoenas or requests from Brickey for the medical records of N.M., nor did they mention this exculpatory evidence in their conversations and meetings with the prosecution team to prepare for the preliminary hearing and trial, or in their expert reports which they knew would be provided to the defense. (Complaint, ¶¶154-159; 170-181; 197-221; 225-226)

17.     Thus, prosecutor Brickey never received or provided the exculpatory pathology evidence to Plaintiff Abby Tiscareno's attorney prior to the Preliminary Hearing or trial of Abby Tiscareno, despite her attorney's prior written request for all relevant evidence. Instead, the prosecutor repeatedly assured Abby Tiscareno's attorney that all discovery documents would be provided. (Complaint, ¶¶ 160-169, 211-224)

18.     Between November 14, 2003 and May 26, 2005, Walker and Frasier received or reviewed one or more requests or subpoenas from prosecutor Brickey

xiii

seeking the medical records of N.M. for use as evidence in the criminal case against Abby Tiscareno, but neither Walker nor Frasier produced the exculpatory pathology slides and records in their responses, nor did the other defendants who received similar requests or subpoenas for N.M.'s medical records from prosecutor Brickey. (Complaint, ¶¶175-180 (Walker), ¶¶170-174 (Frasier), ¶¶181-183 (PCMC/IHC), ¶¶184-193 (Beerman & IHC, ¶¶194-196 (Anderson)

19.    Walker and Frasier also encouraged and maintained a malicious prosecution of Abby Tiscareno, by providing false and misleading expert witness reports, sworn false and misleading testimony at the preliminary hearing on February 24, 2004 (Frasier), and sworn false and misleading evidence in the trial of Abby Tiscareno on October 24, 2004 (Walker and Frasier), to the effect that the blood in N.M.'s brain at the time of surgery was all "fresh" and that there would have been no time following the injury when N.M. would have been conscious, such that he must have been injured while in the care of Abby Tiscareno. Walker and Frasier knew that this testimony was directly contrary to the exculpatory pathology evidence they had concealed and failed to disclose to prosecutor Brickey throughout the course of the prosecution, despite their numerous opportunities to do so. (Complaint, ¶¶ 197-205, 207-222; 227-241)

20.    In his closing and rebuttal arguments to the jury in the trial, prosecutor Brickey emphasized the testimony of the State's medical experts, Walker and Frasier, that N.M.'s injury was "fresh" and that only Abby Tiscareno could have inflicted the injury." (Complaint, ¶243)

xiv

21.     In his trial testimony, Walker also testified that N.M.'s injury demonstrated the "involvement of skull factures" and a "massive direct blow to the brain of some type." This testimony was false and misleading as shown by the facts that no evidence of any skull fracture appeared in the CT scan of N.M.'s brain, the fact that Walker did not mention any evidence of a skull fracture in his operative report and the fact that Frasier stated that there was no outward evidence of blunt force trauma. (Complaint, ¶¶215-221)

22.     Having never received the exculpatory pathology evidence from prosecutor Brickey, Abby Tiscareno's attorney was unable to effectively counter the false and misleading testimony of Walker and Frasier or to attack their credibility as the State's  expert medical witnesses and Abby Tiscareno was unlawfully bound over and convicted of Second Degree Child Abuse. (Complaint, ¶¶ 204-205; 242-244)

23.     Following her conviction in the criminal case, the parents of N.M. filed a civil case against Abby Tiscareno. In the course of discovery in that case, attorneys for Ms. Tiscareno for the first time obtained the pathology slides and reports on the brain tissue from N.M. In the second trial of the criminal case, where Abby Tiscareno's attorneys introduced the exculpatory pathology evidence and used it to cross-examine Walker and Frasier, Plaintiff Abby Tiscareno was acquitted. (Complaint, ¶¶ 246, 251-268)

24.     As the result of the unlawful conduct of Walker, acting in concert with the other defendants, Plaintiff Abby Tiscareno was deprived of her federal and state constitutional rights and suffered substantial economic, reputational and familial

damages, which cannot be apportioned among the defendants. (Complaint, ¶¶245-250; 269-293, 294-328)

## B.   WALKER'S STATEMENT OF "FACTS"

In support of his motion for judgment on the pleadings, Walker culls various facts from the integrated allegations of Plaintiffs' Complaint (Complaint, ¶51) but omits most of the salient factual allegations that form the basis for Plaintiffs' §1983 claims against him as summarized above. *See* "Facts", Def. Mem. 2-5.  Walker's attorneys also repeatedly make unsworn factual assertions to support Walker's motion. (Def. Mem. 2, 5-9)  These unsworn hearsay statements are non-evidentiary and must be disregarded in the determination of this motion. *Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 407 (S.D.N.Y. 1997) ("Testimonial evidence submitted on motions must be in the form of affidavits. Unsworn statements by counsel simply will not do."); *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.")  To the extent Walker asserts facts contrary to those Plaintiffs allege in their Complaint, the well-pleaded allegations of Plaintiffs' Complaint and the reasonable inferences to be drawn therefrom, are accepted as true for purposes of adjudicating a motion to dismiss. *Twombly,* at 1965.

## ARGUMENT

**POINT I    WALKER HAS NO ABSOLUTE WITNESS IMMUNITY FROM PLAINTIFFS' §1983 CLAIMS FOR DEPRIVATION OF DUE PROCESS AND MALICIOUS PROSECUTION**

### A.    STANDARD OF REVIEW

"A motion for judgment on the pleadings under F.R.Civ.P.12(c) is governed by the same standards as a motion to dismiss under F.R.Civ.P.12(b)(6)." *Fisher v. Lynch*, Slip Op., 2008 WL 2152053 (D. Kan. 2008) at *1, quoting *Atl. Richfield Company v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000); *Mock v. T.G. & Y.*, 971 F.2d 522, 528 (10th Cir. 1992).  Under Rule 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *Fisher*, at *1, quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).  Rule 12(b)(6) does not require detailed factual allegations and the plaintiff need not precisely state each element, but must plead minimal factual allegations on those material elements that must be proved. In other words, the plaintiff must allege sufficient facts to state a claim--which is plausible --rather than merely conceivable--on its face. *Fisher*, *1, quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Dismissal under Rule 12(b)(6) "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading, but also to promote the interests of justice." *Moore*, at 1039.

### B.    PLAINTIFFS' CLAIMS AGAINST DEFENDANT WALKER

Plaintiffs allege two causes of action against Defendant Walker under 42 U.S.C. §1983: First, a *Brady* claim that Walker, acting in concert with the other

1

members of the prosecution team, failed to disclose material exculpatory pathology evidence to prosecutor Brickey in the underlying criminal case against Plaintiff Abby Tiscareno (defendant in the criminal prosecution), thereby depriving Ms. Tiscareno of her right to due process of law in the form of a fair trial under the Fourteenth Amendment (Complaint, First Cause of Action, ¶¶294-311); and Second, a claim that Walker, acting in concert with defendant Frasier, engaged in a malicious criminal prosecution of Plaintiff Abby Tiscareno, thereby depriving her of her right to be free from unreasonable seizures and her right to due process of law under the Fourth and Fourteenth Amendments. (Complaint, Second Cause of Action, ¶¶312-318).

Plaintiffs also allege two claims against Walker under self-executing provisions of the Utah Constitution: First, a claim that Walker, in concert with the other defendants, failed to disclose material exculpatory evidence to the prosecutor in the underlying criminal case in violation of Plaintiff Abby Tiscareno's right to due process of law under Article I, section 7 (Complaint, Third Cause of Action, ¶¶ 319-324); and Second, that Walker, acting in concert with defendant Frasier, subjected Plaintiff Abby Tiscareno to a malicious prosecution, in violation of her rights under Article I, sections 7 (due process) and 14 (unreasonable seizure). (Complaint, Fourth Cause of Action, ¶¶325-328).

C.     **THE FACT THAT PLAINTIFFS ALLEGE THAT WALKER GAVE FALSE AND MISLEADING TESTIMONY IN THE UNDERLYING CRIMINAL TRIAL WHICH IS PROTECTED BY ABSOLUTE WITNESS IMMUNITY, DOES NOT BAR PLAINTIFFS' *BRADY* CLAIM BASED ON OTHER MISCONDUCT AND ABSOLUTE WITNESS IMMUNITY DOES NOT APPLY TO PLAINTIFFS' MALICIOUS PROSECUTION CLAIM.**

Walker asserts "absolute witness immunity" under *Briscoe v. Lahue,* 460 U.S.

2

325, 335 (1983) from Plaintiffs'§1983 *Brady* claim[1] and §1983 malicious prosecution claim, arguing that he is "integral to the judicial process because he was subpoenaed to testify at trial and did so." (Def. Mem 5-7) This argument is incorrect as a matter of law.

There is nothing "integral to the judicial process" in the conduct of a member of the prosecution team who fails to disclose material exculpatory evidence to the prosecutor, or in the conduct of a complaining witness who engages in a malicious prosecution of a citizen. Such conduct deprives citizens of rights to due process and against unreasonable seizures secured under the United States Constitution and imperils

---

[1] In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963), the United States Supreme Court held that "suppression by the prosecution of material evidence favorable to an accused upon request, violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." In *U.S. v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L. Ed.2d 342 (1976), the Court held that the government has a duty to disclose *Brady* material even if the defense fails to ask for it, where the evidence "is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." In *United States v. Bagley*, 473 U.S. 667, 676-677, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court clarified that disclosure duty under *Brady* encompasses impeachment evidence as well as exculpatory evidence, reasoning that impeachment evidence, when disclosed and used correctly, may make the difference between conviction and acquittal. *Id.* In *Kyles v. Whitle*y, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Court further explained that withholding of exculpatory evidence is "material" "if there is a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (quoting *Bagley*, at 667, 682) (Emphasis supplied) The Court expressly rejected a standard requiring a defendant "to demonstrate that the evidence if disclosed probably would have resulted in acquittal." *Kyles,* at 434, quoting *Bagley*, at 680. While the *Brady* duty to disclose exculpatory evidence *to the defense* is the duty of the prosecutor, other members of the prosecution team, including police and forensic investigators, have a duty to disclose exculpatory evidence *to the prosecutor*, and may be held liable under §1983 for failing to do so. *See*, Argument, Point I. D., *infra*, at 9-12 (citing cases).

3

respect for the criminal justice system.  Accordingly, under federal law, it is well-established that, "'[N]either the withholding of exculpatory information nor the initiation of constitutionally infirm proceedings is protected by absolute immunity.'" *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1028 (7th Cir. 2006), quoting *Ienco v. City of Chicago*, 286 F.3d 994, 1000 (7th Cir. 2002).

       **1.**      **Walker Has No Absolute Witness Immunity For Non-Testimonial §1983 Brady Violations**

The fact that a witness has absolute witness immunity for materially false, misleading or even perjured trial testimony under *Briscoe* does not immunize him for other actions or inactions he has taken in relation to the case. "No absolute testimonial immunity attaches to the actions of the officers outside of trial." *Ienco,* at 1000. *See also*, *Manning v. Miller*, 355 F.3d 1028, 1031-1034 (7th Cir. 2004) (*Brady* claim alleging FBI agents created false evidence but did not disclose falsity to prosecutor was viable even though claim also alleged perjury.); *Mayes v. City of Hammond*, *IN*, 442 F.Supp.2d 587, 624-25, 630 (N.D. Ind., 2006) (Although absolute immunity attaches to police investigators' perjured trial testimony, such immunity does not extend to their failure to disclose exculpatory evidence to the prosecutor in a criminal case.) [2]  Under the foregoing legal authorities, Walker has no absolute witness immunity from Plaintiffs'

---

[2]   The cases cited by Walker as support for his motion to dismiss Plaintiffs' §1983 *Brady* claim, including *Miller v. Glance*, 948 F.2d 1562 (10th Cir. 1991), *Franklin v. Terr.*, 201 F.3d 1098 (9th Cir. 2000) and *Boice v. Unisys Corporation*, 50 F.3d 1145 (2nd Cir. 1995) (Def. Mem. 5-7), do not do so. These cases did not involve a *Brady* claim, but only involved defamation claims based on the defendant's perjured testimony or alleged defamatory response to a subpoena.[2] *See, Miller*, at 1570, *Franklin*, at 1101-02, *Boice* at 1147.

*Brady* claim, because this claim is not based *solely* on his false and misleading testimony against Plaintiff Abby Tiscareno in the underlying criminal trial, and additionally alleges that Walker, in concert with other defendants, violated *Brady* by failing to disclose material exculpatory pathology evidence to the prosecutor. *See*, Summary of Plaintiffs' Factual Allegations, ¶¶1-24, at ix-xv; Complaint, ¶¶ 294-311).

To state a §1983 claim under *Brady*, a plaintiff must establish: (1)"that the prosecution suppressed evidence; (2) that the evidence was favorable to the accused; and (3) that the evidence was material." *Smith v. Secretary of New Mexico Dept. of Corrections*, 50 F.3d 801, 824 (10th Cir. 1995) (internal citations omitted).  Here, Plaintiffs allege that the undisclosed exculpatory pathology reports and slides were "favorable" and "material" for *Brady* purposes, because this evidence would have created reasonable doubt that Abby Tiscareno perpetrated the offense in that the finding of prior bleeding in N.M.'s brain demonstrated by the undisclosed pathology evidence could be interpreted as representing an old subdural hematoma that rebled either spontaneously, or as the result of trauma inflicted by another person prior to the time N.M. was left with Abby Tiscareno for daycare. (Complaint, ¶¶ 300-301)

In the absence of any eyewitnesses to N.M.'s injury, the State's theory of the case at the Preliminary Hearing and trial -- that Abby Tiscareno was the only person who could have injured N.M. -- hinged entirely on the testimony of its medical experts, Walker and Frasier, about what the "medical evidence" purportedly showed regarding the nature and timing of the injury as indicating the identity of the

perpetrator.[3] Thus, the failure of the defendants, including Walker,  to disclose the exculpatory pathology evidence, deprived Abby Tiscareno's attorney of the ability to counter the expert medical opinions of Walker and Frasier that N.M.'s injury could only have been caused through violent shaking of N.M. by Abby Tiscareno.[4]

Plaintiffs also allege that the exculpatory pathology evidence was "material' under *Brady* to impeach the preliminary hearing testimony of Frasier and the trial testimony of Walker and Frasier, that all of the bleeding in the N.M.'s brain was "fresh", such that the injury had to be the result of head trauma inflicted by Abby Tiscareno, the person who was with N.M. immediately prior to the time he became unconsciousness. (Complaint, ¶¶197-205 [preliminary hearing], ¶¶ 227-244 [trial])

---

[3]  *See*, *State of New Mexico v. Schoonmaker*, 176 P.3d 1105, 1113-1114 (New Mexico 2008), citing extensive case law concerning disagreement in medical community as to the amount of time between the occurrence of brain injury and when the child becomes symptomatic, and whether such injuries can be caused by means other than violent shaking, and concluding that the defendant received ineffective assistance of counsel where his attorney failed to engage an expert to testify regarding these matters due to the defendant's lack of funds. *Id*. at 1115-1117).

[4]  The "materiality" of medical testing reports regarding the injury to the victim in alleged child abuse cases for *Brady* purposes, is illustrated by the Utah Supreme Court's decision in *State v. Hales*, 2007 UT 14, ¶¶79-93, 152 P.3d 321 (Utah 2007), another alleged "shaken baby" case in which Walker testified as a medical expert for the State. In *Hales*, the Court held that the defendant, who was convicted of the murder of a child who died from injuries sustained when defendant allegedly shook him as a baby years earlier, was prejudiced by his counsel's failure to obtain a qualified expert to provide an independent interpretation of the CT scans of the victim, requiring a new trial. *See also*, *Gersten v. Senkowski*, 299 F. Supp.2d 84, 101 (E.D.N.Y. 2004) (discussing materiality of medical testing reports in providing defense with means to challenge expert medical testimony of State's witnesses at trial); *Ham v. State*, 760 S.W.2d 55, 55-58 (Texas 1988) (Failure to disclose testimony of chief medical examiner that tended to confirm defense expert's testimony and to disagree with State's expert witness regarding the nature and timing of injuries in child abuse case violated *Brady*.)

"When a case hinges all but entirely on whom to believe, an expert's interpretation of relevant physical evidence (or the lack of it) is the sort or neutral, disinterested testimony that may well tip the scales and sway the fact-finder." *Pavel v. Hollins*, 261 F.3d 210, 224 (2nd Cir. 2001) (internal citations omitted.)

Based on the foregoing, "absolute witness immunity" under *Briscoe* does not bar Plaintiffs' §1983 *Brady* claim against Walker for failing to disclose material exculpatory evidence to the prosecutor in the underlying criminal case against Abby Tiscareno, simply because Walker has absolute witness immunity for his false and misleading trial testimony, under where Walker acted as member of the prosecution team in failing to disclose exculpatory evidence to the prosecutor. *Briscoe*. *See*, *Sornberger*, at 1028.

### a.    Walker's Expert Witness Report

Walker argues that, "Plaintiffs also claim that the pretrial report that Dr. Walker wrote was misleading" (Complaint, ¶¶ 215-221) and that "witness immunity bars this claim as well," based on his attorneys' factual representations that "this report was written as part of the pretrial discovery process and supplanted a discovery deposition." (Def. Mem. 6)  These unsworn statements of counsel are non-evidentiary and must be disregarded in the determination of the motion. *Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc.*, 988 F. Supp. 404, 407 (S.D.N.Y. 1997) ("Testimonial evidence submitted on motions must be in the form of affidavits or declarations. Unsworn statements by counsel simply will not do."); *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.")  Walker also fails to provide any legal authority to support his argument that "absolute witness immunity"

7

extends to the *non-disclosure* of exculpatory pathology evidence in a pretrial expert report to prosecutor Brickey.

### b.    Walker's Failure To Disclose Exculpatory Evidence In Response To Prosecutor's Requests Or Subpoenas For N.M.'s Medical Records

Walker argues that, "Plaintiffs allege that Walker failed to properly respond to a records subpoena," based on his attorneys' factual representations that, "the only subpoena he [Walker] received demanded his trial appearance only, and did not include a demand to produce any documents. (See Exhibit 1)." (Def. Mem. 6) These unsworn factual representations of Walker's counsel are non-evidentiary and the document attached as Exhibit 1 is not properly authenticated and must be disregarded in the determination of the motion. *See, Markowitz*, at 407; *Skyline Corp.*, at 1337. Additionally, the fact that Walker received a witness subpoena for trial is not evidence that he did not earlier receive a request or a document subpoena from prosecutor Brickey for all of N.M.'s medical records, as Plaintiffs allege.  Nor does this fact counter Plaintiffs' allegation that Walker did not disclose the pathology slides and reports concerning N.M. that were exculpatory of Abby Tiscareno in response to Brickey's request or subpoena. (Complaint, ¶¶ 175-179)

Walker alternatively argues that even if he received a request or document subpoena for N.M.'s medical records, his failure to provide the exculpatory pathology records is protected by "absolute witness immunity" under *Briscoe*, citing *Boice v. Unysis Corporation*, 50 F.3d 1145 (2nd Cir. 1995). (Def. Mem. 6) However, *Boice* held only that "absolute witness immunity" precludes a *defamation claim* for providing

documents in response to a document subpoena, the contents of which allegedly defame the plaintiff. *Boice*, at 1147-48.   *Boice* did not consider and did not hold that "absolute witness immunity" precludes a §1983 *Brady* claim against a member of the prosecution team who fails to produce exculpatory medical records requested by the prosecutor in the criminal prosecution of the alleged perpetrator, as in the instant case. Thus, *Boice* does not support Walker's argument for dismissal of Plaintiffs' §1983 *Brady* claim.

**D.    WALKER'S ARGUMENT THAT HE HAD NO DUTY OF DISCLOSURE UNDER *BRADY*, BASED ON UNSWORN STATEMENTS OF HIS ATTORNEYS THAT ARE CONTRARY TO THE ALLEGATIONS OF PLAINTIFFS' COMPLAINT, IS WITHOUT MERIT AND MUST BE DENIED**

The obligation to disclose exculpatory evidence under *Brady* "is the obligation of the government, not merely the obligation of the prosecutor… Exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does." *United States v. Blanco*, 392 F.3d 382, 393-394 (9th Cir. 2004). (Internal quotations omitted) [5] "The 'prosecution' for *Brady* purposes encompasses not only the individual prosecutor handling the case, but also extends to the prosecutor's entire office, as well as law enforcement

---

[5] *See also*, *Smith v. Sec. of New Mexico Dept. of Corrections*, 50 F.3d 801, 831 (10th Cir. 1995) (Lack of communication between county investigative agencies was not a defense to prosecutor's failure to disclose exculpatory evidence under *Brady*); *U.S. v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995) ("[P]rosecutor is deemed have knowledge of and access to anything in the custody or control of any federal agency participating in the same investigation of the defendant."); *Pennsylvania v. Ritchie*, 480 U.S. 39, 43-45, 57-59, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality opinion) (prosecutor had duty to obtain exculpatory evidence possessed by Children and Youth Services); *Giglio v. U.S.*, 405 U.S. 150, 152-55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (*Brady* violation when one prosecutor did not disclose deal unknown to him between key witness and another prosecutor.)

9

personnel and other arms of the state involved in investigative aspects of a particular criminal venture. Logically, then, it follows that because investigative officers are part of the prosecution, the taint on the trial is no less if they, rather than the prosecutors, were guilty of non-disclosure." *Smith v. Sec. of New Mexico Dept. of Corrections*, 50 F.3d 801, 824 (10th Cir. 1995) (internal quotations and citations omitted).

Although investigators have no duty to turn over exculpatory evidence *to the defense*, they do have a *Brady* duty, and they "satisfy their obligations under *Brady* when they turn exculpatory and impeachment evidence over to the prosecutors." *Steidl v. Fermon*, 494 F.3d 623, 631 (7th Cir. 2007), quoting *McMillian v. Johnson*, 88 F.3d 1554, 1567 (11th Cir. 1996); *Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police*, 411 F.3d 427, 442-443 (3rd Cir. 2005) (Prosecutor is responsible to learn of and disclose favorable evidence known to others acting on the government's behalf.) Numerous courts have held state police officers and forensic investigators liable for failing to disclose material exculpatory evidence to the prosecutor in response to §1983 claims under *Brady*. *See, e.g., Mitchell v. Gibson*, 262 F.3d 1036, 1063-1066 (10th Cir. 2001) (Forensic chemist); *Jones v. City of Chicago*, 856 F.2d 985, 991,993-994 (7th Cir. 1988) (Police lab technician); *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988) (Police officer).

Although Walker contends that, "*Brady* has no application here," based on his attorneys' factual representation that, "Dr. Walker was not part of the prosecution team,"(Def. Mem. 7), this unsworn representation is non-evidentiary and must be

10

disregarded in the determination of the motion. Walker admits this allegation is contrary to the allegations of Plaintiffs' Complaint (Def. Mem. 7), which must be taken as true for purposes of deciding the motion. *See,* Standard of Review, *supra*, at 1.

Walker also argues that he had no *Brady* disclosure duty, based on his attorneys' factual representations that, "Dr. Walker was not a prosecutor, police officer or police investigator. He was just a surgeon who did an operation and was later asked to tell a jury what he did and saw during the operation." (Def. Mem. 7). Again, these non-evidentiary allegations are contrary to the well-pleaded factual allegations of Plaintiffs' Complaint, which must be taken as true for purposes of Walker's motion for judgment on the pleadings. *See, Markowitz*, at 407; *Skyline Corp*., at 1337. Here, Plaintiffs allege that, as part of his duties as a state employee, Walker, individually and in concert with other defendants in this case, principally defendant Frasier, participated in the assessment of child abuse cases for prosecution by the State, and functioned as expert medical witnesses for the State in criminal child abuse prosecutions. (Complaint, ¶¶4-20, 47, 51, 108- 122). In addition to the *Tiscareno* criminal case, Walker has testified as an expert medical witness for the State in a number of alleged "shaken baby" cases, including *State v. Hales*, 2007 UT 14, ¶28, 152 P.3d 321 (Utah 2007); *State v. Francis*, Case No. 001902836, Second Judicial Dist., Utah (2000) (Plaintiffs' Exh.1) and *State v. Michael James Fisk III*, 966 P.2d 860, 862 (Utah App.1998).

Only by ignoring Walker's central role as a medical investigator and forensic medical expert witness for the State in child abuse cases generally and in the underlying criminal case as alleged in Plaintiffs' Complaint, can Walker's attorneys blithely

11

represent that "Walker was just a surgeon who did an operation and was later asked to tell a jury what he did and saw during the operation" and suggest that Walker was just a "lay witness." (Def. Mem. 7). These unsworn representations display a serious lack of candor toward the Court and the Plaintiff by Walker's counsel and should not be tolerated. Moreover, counsel's representations are contrary to the well pleaded allegations of Plaintiffs' Complaint which must be considered as true for purposes of the pending motion. *See*, Standard of Review, *supra*, at 1; *See also*, Summary of Plaintiffs' Factual Allegations, ¶¶1-21, *supra*, at ix-xiv.

Finally, Walker argues that he is entitled to absolute witness immunity on Plaintiffs' §1983 *Brady* claim on the ground that, "Plaintiffs never allege that Dr. Walker was a complaining witness"[6] (Def. Mem. 7). This argument is incorrect. Under *Brady* and its progeny, the duty to disclose exculpatory evidence applies to all members of the prosecution team, not just the complaining witness or witnesses. "*Brady* and *Giglio* impose obligations not only on the prosecutor, but on the government as a whole." *United States v. Blanco*, 392 F.3d 382, 393-394 (9th Cir. 2004) (DEA's failure to provide exculpatory evidence upon request from U.S. Attorney constitutes a *Brady* violation.) Thus, contrary to Walker's argument (Def. Mem. 7), there is no legal requirement that Plaintiffs allege that Walker was a "complaining witness" Complaint to state a viable §1983 *Brady* claim against him,. and Plaintiffs have pleaded facts in their Complaint from which a reasonable fact

---

[6]   As explained below, the factual issue of whether Walker was a "complaining witness" is only relevant to Plaintiffs' §1983 malicious prosecution claim. *See,* Argument, Point I. E., at 13-16.

finder could conclude that Walker functioned as a "member of the prosecution team" in the underlying criminal case. *See,* Summary of Plaintiffs' Factual Allegations, ¶¶ 1-20, *supra*, at ix-xiv. Thus, Walker's motion for judgment on the pleadings on the §1983 *Brady* claim, on the ground that he had no duty of disclosure under *Brady*, is without merit and must be denied.

**E.     WALKER IS NOT IMMUNE FROM PLAINTIFFS' §1983 CLAIM FOR MALICIOUS PROSECUTION BASED ON "ABSOLUTE WITNESS IMMUNITY" UNDER *BRISCOE***

Walker acknowledges that in *Anthony v. Baker*, 955 F.2d 1395, 1398-1399 (10th Cir. 1992), the Court of Appeals for the Tenth Circuit held that a "complaining witness" in a criminal prosecution is not entitled to absolute immunity under *Briscoe* for instigating, encouraging or maintaining a malicious prosecution. (Def. Mem. 7)

Walker argues for dismissal of Plaintiffs' §1983 malicious prosecution claim based on his attorneys' factual representations that he was not a "complaining witness" in the underlying criminal case against Abby Tiscareno, but merely a "lay witness." (Def. Mem. 7-8)  These unsworn representations are non-evidentiary and must be disregarded for purposes of adjudicating the motion. *See, Markowitz*, at 407; *Skyline Corp.*, at 1337.

Walker's alternative argument that he is not a "complaining witness" because Plaintiffs did not label him as such in their Complaint (Def. Mem. 7), is also incorrect.  "When deciding whether a defendant is absolutely immune from suit, the court must "apply a 'functional approach … which looks to the nature of the function performed, not the identity of the actor who performed it." *P.J. ex rel. Jensen v. Utah*,

13

not Reported in F.Supp.2d, 2006 WL 1702585, *18 (D. Utah) (J. Cassell), (citations omitted).

In *Anthony*, the Court explains that a "complaining witness" is "the person (or persons) who actively instigated or encouraged the prosecution of the plaintiff", or whose "testimony [was] relevant to the manner in which" the plaintiff's prosecution was initiated or perpetuated. Proof of the defendant's role in instituting the criminal prosecution of the plaintiff is an essential element of a malicious prosecution claim." *Anthony v. Baker*, 955 F.2d 1395, 1399 n.2 (10th Cir. 1992).  Thus, in *DeLoach v. Bevers*, 922 F.2d 618, 619-621 (10th Cir. 1990), *cert. denied sub nom. Welsh v. DeLoach*, 112 S.Ct. 65 (1991), the Court of Appeals for the Tenth Circuit affirmed a jury verdict on claim of false arrest for murder of child, and denied qualified immunity against police investigator, based on evidence that the investigator retaliated against the plaintiff for hiring an attorney, mischaracterized evidence and withheld exculpatory opinion of a key medical expert that parent was more likely perpetrator of brain injury than defendant and that injury probably did occur twenty-four hours or more before the child became comatose, in affidavit for arrest warrant.

Similarly, in *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004), the Court of Appeals for the Tenth Circuit held that a forensic chemist, who neither initiated nor filed the charges against the plaintiff, could be sued under §1983 for malicious prosecution and the fact that probable cause existed for the arrest of the defendant did not preclude such liability where the defendant Gilchrist's withholding of exculpatory evidence and fabrication of inculpatory evidence became one of the

14

inseparable bases for the charges against the plaintiff and the district attorney's decision to proceed to trial.

In the instant case, Plaintiffs allege that Walker, in concert with Frasier, instigated, encouraged and maintained a malicious prosecution of Plaintiff Abby Tiscareno from the outset of the criminal investigation and continuing through the trial of Abby Tiscareno, by: (1) providing false and misleading information to the prosecutor and the prosecution team and in his trial testimony implicating Ms. Tiscareno as the only person who could have injured N.M., and (2) concealing and failing to disclose material exculpatory pathology evidence indicating that N.M.'s injury occurred prior to the time N.M. was left in Abby Tiscareno's care, such that a number of other individuals could have caused N.M.'s injury and that the injury could have been accidental.

Plaintiffs also allege that Walker's failure to disclose the exculpatory impeachment evidence to the prosecutor for delivery to Abby Tiscareno's legal counsel, deprived Abby Tiscareno of a fair trial, by making it impossible for the defense to effectively counter the State's theory of the case against Abby Tiscareno, or to impeach the false and misleading testimony of Walker and Frasier at the preliminary hearing and trial, thus causing Plaintiffs to incur the substantial economic, reputational and familial damages alleged in their Complaint. *See,* Summary of Plaintiffs' Factual Allegations, ¶¶22,24, *supra*, at xiv-xv; Complaint, ¶¶ 312-318.

The foregoing allegations, construed in the light most favorable to Plaintiffs, provide a factual basis for concluding that Walker indeed functioned as a

15

"complaining witness" in the underlying criminal case. Accordingly, Walker is not entitled to absolute witness immunity on Plaintiffs' §1983 malicious prosecution claim and his motion to dismiss this claim is without merit and must be denied.

**POINT II   WALKER FAILS TO SHOW THAT HIS ALLEGED CONDUCT WAS NOT A "SUBSTANTIAL FACTOR" IN BRINGING ABOUT THE FEDERAL CONSTITUTIONAL DEPRIVATIONS ALLEGED BY PLAINTIFFS. THUS, HIS MOTION TO DISMISS PLAINTIFFS' §1983 CLAIMS MUST BE DENIED.**

Plaintiffs' Complaint alleges that the concurrent actions of the defendants, including Walker, deprived Plaintiff Abby Tiscareno of her federally protected constitutional rights under §1983, such that defendants are jointly and severally liable for these deprivations, and that the resulting injuries and damages "cannot be apportioned." (Complaint, ¶¶280-281) In *Northington v. Marin*, 102 F.3d 1564, 1568-1570 (10th Cir. 1996), the Court discusses joint and several liability and indicates that

> These rules apply in §1983 actions. Persons who concurrently violate others' civil rights are jointly and severally liable for injuries that cannot be apportioned. In such cases, the burden of proof shifts to the defendant to prove that his alleged misconduct was not a "substantial factor" in bringing about the deprivation, "whether or not all wrongdoers are before the court."

Because Walker fails to demonstrate that his alleged misconduct was not a "substantial factor" in bringing about the deprivation, his motion to dismiss §1983 due process and malicious prosecution claims must be denied.  *P.J. ex rel. Jensen v. Utah*, Not Reported in F. Supp.2d, 2006 WL 1702585, at *18.

For all of the foregoing reasons, Walker's motion to dismiss Plaintiffs' §1983 *Brady* claim based on "absolute witness immunity" under *Briscoe*, is without merit and must be denied.

16

**POINT III   WALKER IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS**

**A.   THE UTAH GOVERNMENTAL IMMUNITY ACT DOES NOT APPLY TO PLAINTIFFS' CLAIMS UNDER SELF-EXECUTING PROVISIONS OF THE UTAH CONSTITUTION**

Walker first argues for dismissal of Plaintiffs' state constitutional claims on the ground that, "Plaintiffs failed to file a notice of claim articulating state constitutional claims." (Def. Mem. 8) This argument is frivolous because the Utah Governmental Immunity Act, including its notice of claim provisions, does not apply to Plaintiffs' state constitutional claims under Article I, sections 7 and 14, self-executing provisions of the Utah Constitution.

In *P.J. ex rel Jensen v. Utah*, not reported in F.Supp.2d, 2006 WL 1702585, *14 (D. Utah, 2006), Judge Cassell noted that the Utah Supreme Court had previously ruled that Article I, section 7 is self-executing.[7] Moreover, in *Jensen*, the defendant doctors, who were represented by Mr. Morse and Mr. Williams, the same attorneys who represent defendant Walker in this action, "*assume* that Article I, section 14 (right against unreasonable searches and seizures) is self executing." *Jensen*, at *14. Thus, based on

---

[7]   "Under Utah law, a constitutional provision is self-executing if it articulates a rule sufficient to give effect to the underlying rights and duties intended by the framers. In other words, courts may give effect to a provision without implementing legislation if the framers intended the provision to have immediate effect and if 'no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed....' Conversely, constitutional provisions are not self-executing if they merely indicate a general principle or line of policy without supplying the means for putting them into effect." *P.J. ex rel Jensen v. Utah*, not reported in F.Supp.2d, 2006 WL 1702585, at*13 (D. Utah, 2006), quoting *Spackman v. Board of Educ. of Box Elder County School Dist.*, 2000 UT 87, ¶7, 16 P.3d 533.

17

their participation in *Jensen*, Walker's attorneys were aware that the Plaintiffs' state constitutional claims in this case were predicated on self-executing provisions of the Utah Constitution.

In *Heughs Land, L.L.C. v. Holladay City*, 2005 UT App 202, ¶8, 113 P.3d 1024, the Utah Court of Appeals reversed the district court's dismissal of an action on the ground that the developer failed to comply with the notice of claims requirement of the UGIA, holding that the claim could not be precluded because it was brought under a "self-executing" provision of the Utah Constitution. The Court reasoned that, "Heughs Land's inverse condemnation action involves claims under a self-executing provision of the Utah Constitution and does not arise out of, and is not dependent on, a waiver of immunity contained in the UGIA…Therefore, *the notice provisions of the UGIA do not apply to Heughs Land's claim*." *Id*. at ¶11.  (Emphasis supplied)  In *Brokaw v. Salt Lake County*, not reported in F.Supp.2d, 2007 WL 2221065 (D. Utah 2007), at \*6 (¶D), this Court cited *Heughs* as authority for the proposition that the notice of claim requirements contained in the Utah Governmental Immunity Act do not apply to claims for the violation of "self-executing" provisions of the Utah Constitution.

Walker's reliance on *Hall v. Utah Department of Corrections*, 2001 UT 34, ¶¶21-22, 24 P.3d 958, 964 (Utah 2001) to support his argument on this point (Def. Mem. 8), is also misplaced, because *Hall* involved the defendants' alleged violation of rights under a state statute, the Utah Whistleblower Act, not the violation of  "self-executing" provisions of the Utah Constitution as alleged by the Plaintiffs in this case. *Id*. at ¶22.

18

Based upon the foregoing legal authority, Walker's motion to dismiss Plaintiffs' state constitutional claims for lack of notice under the Utah Governmental Immunity Act is contrary to applicable law, frivolous and must be denied.

**B.    WALKER'S ARGUMENT THAT PLAINTIFFS' CLAIMS UNDER THE UTAH CONSTITUTION FAIL TO MEET THE *SPACKMAN* TEST IS WITHOUT MERIT IN THAT IT IS BASED ON WALKER'S MISCHARACTERIZATION OF PLAINTIFFS' CLAIMS AND FACTS THAT ARE CONTRARY TO PLAINTIFFS' ALLEGATIONS**

Walker also seeks dismissal of Plaintiffs' state constitutional claims on the ground that these claims purportedly do not meet the three part test for a viable state constitutional damage claim under *Spackman ex rel. Spackman v. Board of Education*, 2000 UT 87, ¶¶22-24, 16 P.3d 533, 537-39 (Utah 2000), namely that: (1) the plaintiff suffered a flagrant violation of constitutional rights;  (2) existing remedies do not redress plaintiff's injuries; and (3) equitable relief was and is wholly inadequate to protect the plaintiffs' rights or redress the plaintiffs' injuries." *Id.* ¶¶22-24.[8] (Def. Mem. 8-9) This argument is without merit.

Walker argues that Plaintiffs cannot meet the first prong of the *Spackman* test, based on his self-serving mischaracterization of the state constitutional claims asserted in Plaintiffs' Third and Fourth Causes of Action  (Complaint, ¶¶319-328), as merely alleging that "Walker did not undertake the role of a records custodian and bring with him to trial pathology reports" (Def. Mem. 9). This argument fails because under Plaintiffs' *actual* claims and allegations, Plaintiff Abby Tiscareno's rights to due process

---

[8]  Walker incorrectly states the third prong of the *Spackman* test as: "the plaintiffs must articulate the difference between applicable state and federal constitutional claims." (Def. Mem. 8-9)

of law and against malicious prosecution under the Utah Constitution were well established at the time Walker deprived her of these rights.[9] (Emphasis supplied)

### 1.  Plaintiff Abby Tiscareno's State Constitutional Right To Due Process

To show that a defendant committed a "flagrant violation" of the Plaintiffs' state constitutional rights under the first prong of *Spackman*, "a defendant must have violated the clearly established rights of which a reasonable person would have known, thus tracking traditional qualified immunity analysis." *Id*. ¶23. Here, Plaintiff Abby Tiscareno's right not to be deprived of due process in the form of a fair trial by means of the prosecution's failure to disclose exculpatory evidence, was well established under Utah jurisprudence as of 2003, at the time of its alleged deprivation by Walker.

In *State v. Jarrell*, 608 P.2d 218 (Utah 1980), the Utah Supreme Court held that, "The overriding concern in cases involving prosecutorial nondisclosure of evidence which tends to exculpate the defendant is the defendant's right to a fair trial." *Id.* at 225. Even in the absence of a discovery request, the prosecution "has a constitutional duty to volunteer obviously exculpatory evidence and evidence that is 'so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce.'" *Id.* at 224, quoting *U.S. v. Agurs, 427* U.S. 97, at 107. *See also, State v. Carter*, 707 P.2d 656, 662 (Utah 1985) ("Due process requires the state to disclose even unrequested information which is or may be exculpatory."); *State v. Martin,* 1999 UT 72, ¶9, 984 P.2d 975,

---

[9]  In *P.J. ex rel. Jensen v. Utah*, Not reported in F. Supp.2d, 2006 WL 1702585, the Court noted that Walker's counsel who represented the defendant doctors in *Jensen*, mischaracterizing the plaintiffs' claims in that case. *Id*. at *16, 20.

20

(Adopting federal *Brady* analysis for deprivation of due process in the form of fair trial by prosecutor's failure to disclose exculpatory evidence.); *State v. Backalov*, 1999 UT 45, ¶30, 979 P.2d 799 (Prosecution bears a fundamental duty "under both the Utah and United States Constitutions, to disclose material, exculpatory to the defense.")

### 2. Plaintiff Abby Tiscareno's State Constitutional Right Against Unreasonable Seizure

Plaintiff Abby Tiscareno's right not to be subjected to a malicious prosecution by a complaining witness in a criminal case under Article I, section 14 of the Utah Constitution was also well established in 2003-2004, when Walker deprived Abby Tiscareno of this right. Article I, section 14 of the Utah Constitution is identical to the Fourth Amendment to the United States Constitution.  With a few notable exceptions, the Utah Supreme Court has found the protections against unreasonable searches and seizure afforded by both provisions to be coextensive. *State v. DeBooy*, 2000 UT 32, ¶12, 996 P.2d 546. Thus, federal court decisions holding that conduct constituting the malicious prosecution of an individual under the Fourth Amendment provide notice to state actors in Utah that engaging in such conduct would also violate Article I, section 14 of the Utah Constitution.

In *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004), the Tenth Circuit Court of Appeals held that a wrongfully convicted plaintiff, who alleged that a police department forensic chemist maliciously withheld exculpatory evidence and fabricated inculpatory evidence, stated a claim under 42 U.S.C.§1983 for the constitutional tort of malicious prosecution under the Fourth and Fourteenth Amendments, and the fact that

21

Gilchrist neither initiated nor filed the charges against the plaintiff did not preclude the claim. *Id*. at 1284-1296. The Court of Appeals reviewed numerous prior malicious prosecution cases, and concluded "an official in Ms. Gilchrist's position ***in 1986*** had "fair warning" that the deliberate or reckless falsification or omission of evidence was a constitutional violation--even though the arrest had already occurred." (Emphasis supplied.) *Id*. at 1299.[10]

Walker also attempts to controvert Plaintiffs' allegations that Walker failed to properly respond to the prosecutor's formal requests or subpoenas for all of N.M.'s medical records, by failing to produce the exculpatory pathology slides and pathology report (Complaint, ¶¶ 176-180), with his attorneys' unsworn statements that "Walker did not possess the pathology reports" and that "no one asked him to bring the pathology reports" and that "there is no subpoena on file demanding him to bring the pathology reports." (Def. Mem. 9). These representations are non-evidentiary and must be disregarded in the adjudication of the motion, *Markowitz*, at 407; *Skyline Corp.*, at 1337, and Plaintiffs' factual allegations accepted as true. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

---

[10]  "The degree of specificity required from prior case law depends in part on the character of the challenged conduct. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce*, at 1298. "Qualified immunity will not be granted if government defendants fail to make 'reasonable applications of the prevailing law to their own circumstances.'" *Id*.

22

### 3.  Existing Remedies Do Not Adequately Redress Plaintiffs' Injuries

Under the second prong of *Spackman*, Plaintiff must demonstrate that existing remedies "do not redress [plaintiff's] injuries", *Id.* ¶24, not that Plaintiffs "have no other remedy", as Walker incorrectly portrays. (Def. Mem. 9) As Judge Cassell observed in *P.J. ex rel. Jensen v. Utah*, not reported in F.Supp.2d, 2006 WL 1702585, *14, the issue of whether a federal cause of action under §1983 provides sufficient redress for a state constitutional claim is an open question under Utah law. *See, Spackman*, 2000 UT 87, ¶24, n.10. Moreover, Walker's argument that Plaintiff Abby Tiscareno has a better remedy under §1983 for the violation of her rights under the Utah Constitution because attorney fees may be awarded to a prevailing party for claims under §1983 and 42 U.S.C. §1988 (Def. Mem. 9), is incorrect, because there is *no* cause of action for the violation of *state* constitutional rights under 42 U.S.C.§1983. [11]  *Becker v. Kroll*, 494 F.3d 904, 917 (10th Cir. 2007)  ("Becker only has a cause of action under §1983 if the State's actions fail to meet basic *federal* constitutional standards") (Emphasis supplied, internal quotations omitted); *accord*, *Patterson v. American Fork City*, 2003 UT 7, ¶22, 67 P.3d

---

[11]   42 U.S.C.§1983 provides that: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

466. Thus, a §1983 action is unavailable and thus clearly inadequate, to redress the violation of Abby Tiscareno's state constitutional rights alleged in this action.[12]

Walker's argument that "plaintiffs have failed to articulate the difference between the state and federal constitutional claims" (Def. Mem. 9), is also incorrect. In *Jensen*, Judge Cassell rejected the same argument made by the attorneys representing Walker in this case,[13] stating that this requirement only applies "where a party relies nominally on state constitutional provisions while actually relying on the parallel federal constitutional provisions and analysis based on them." *Id*. at \*20, quoting *State v. Harris*, 2004, UT 103, ¶23, 104 P.3d 1250. As in *Jensen*, Plaintiffs here allege an equal number of claims under the federal and state constitutions. *See*, Statement of Plaintiffs' Claims, *supra*, at 1-2. Thus, there has been no "nominal" reliance on the Utah Constitution by Plaintiffs and hence no requirement under *Spackman* to articulate the difference between state and federal constitutional claims. *Id*.

---

[12]   Walker cites no legal authority to support his argument that attorney fees are not available to the prevailing plaintiff on a claim for deprivation of rights under a self-executing provision of the Utah Constitution.(Def. Mem. 9) Conversely, in *Utahns for Better Dental Health-Davis, Inc. v. Davis*, 2007, UT 97, ¶5, 175 P.3d 1036, the Utah Supreme Court reversed the district court's denial of attorney fees to plaintiffs who successfully blocked an initiative petition from the ballot to reverse a prior referendum vote to fluoridate water as a violation of Article VI, section 1 of the Utah Constitution, holding that "in the absence of a statutory or contractual authorization, the court has inherent power to award reasonable attorney fees when it deems it appropriate in the interests of justice and equity" and finding an award of attorney fees under the "private attorney general" doctrine was appropriate because the plaintiffs vindicated the state constitutional rights of the citizenry. *Id*. at ¶¶9-10.

[13]   *See*, Preface to *Jensen* decision listing Walker's counsel, Andrew M. Morse and David G. Williams, as the attorneys for the defendant physicians in that case.

24

Also, as in *Jensen*, "Both the Federal Rules of Civil Procedure and their Utah counterparts require only "a short and plain statement of the claim showing that the pleader is entitled to relief. At this early stage, it would be premature for the court to dismiss the Jensen's [Tiscarenos'] claims when their Complaint satisfies notice pleading requirements." *Jensen, supra,* at *20.  Thus, the second prong of *Spackman* is satisfied.

### 4.    Equitable Relief Was And Is Wholly Inadequate To Protect The Plaintiffs' Rights Or Redress The Plaintiffs' Injuries

Walker mistakenly represents the third element of the *Spackman* test as requiring that "the plaintiffs articulate the difference between applicable state and federal claims" and does not contest that "equitable relief was and is wholly inadequate to protect Plaintiff's rights or redress the plaintiff's injuries." *Spackman*, ¶25. (Def. Mem. 8-9) Plaintiffs allege they incurred substantial reputational, familial and monetary damages as the result of the deprivations of Plaintiff Abby Tiscareno's state constitutional rights by the defendants, including Walker. (Complaint, ¶¶ 282-293) Because no amount of equitable relief could appropriately redress these injuries and economic damages, Plaintiffs' state constitutional claims meet the third prong of the *Spackman* test.

### CONCLUSION

Defendant Walker fails to carry his burden to show that "absolute witness immunity" bars Plaintiffs' §1983 *Brady* claim and/or Plaintiffs' §1983 malicious prosecution claim, and fails to establish that he has no duty of disclosure under *Brady*. Walker also fails to establish that his challenged conduct was not a "substantial factor" in the alleged deprivation of Plaintiffs' federal constitutional rights under §1983.

25

Walker's argument that Plaintiffs' failure to give notice of their claims under self-executing provisions of the Utah Constitution under UGIA requires dismissal of these claims is frivolous, and Walker's argument that Plaintiffs' state law claims do not meet the *Spackman* test for viable state constitutional damage claims, is unsupported and contrary to the allegations of Plaintiffs' Complaint. Accordingly, Walker's motion for judgment on the pleadings and dismissal of Plaintiffs' federal and state constitutional claims is without merit and must be denied.

DATED and respectfully submitted this 26th day of June 2008.

By: _____

KATHRYN COLLARD

_____

MACON COWLES
Attorneys for Plaintiffs

26