IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ABBY TISCARENO and GUILLERMO TISCARENO,<br><br>        Plaintiffs,<br><br>vs.<br><br>LORI FRASIER, et al.,<br><br>        Defendants. | ORDER and MEMORANDUM DECISION<br><br><br><br><br><br>Case No. 2:07-CV-336 CW |

In this action Plaintiffs Abby Tiscareno and Guillermo Tiscareno have sued various Defendants for violating Ms. Tiscareno's civil rights under 42 U.S.C. § 1983 and the Utah constitution.[1]  Now before the court are motions to dismiss by each Defendant except Lori Frasier.  For the reasons stated below, the motions of Intermountain Health Care, William Beerman and Richard Anderson are DENIED.  Marion Walker's motion is GRANTED.

**BACKGROUND**

The core underlying allegations in this case are well summarized in the court's September 29, 2008 Memorandum Decision and Order in this case (Dkt. No. 61, the "2008 Order").  In

---

[1]  Although Mr. Tiscareno is a named Plaintiff, it is unclear to the court whether he asserts any claim in the First Amended Complaint.  That is, each cause of action specifies that it was Ms. Tiscareno's rights that were allegedly violated.  None of the causes of action expressly claims any violation of Mr. Tiscareno's rights.  Accordingly, for the purposes of this Order, the court will treat the First Amended Complaint as if it were made by Ms. Tiscareno alone.  This convention, however, is not necessarily meant to imply that Mr. Tiscareno is not a valid claimant in this action.

short, Ms. Tiscareno alleges that she was wrongly accused of abusing a one year old boy in her care. Ms. Tiscareno contends that during the initial investigation and her first trial related to the alleged child abuse, each Defendant played some role in withholding exculpatory evidence from both the prosecutor and her defense counsel. She further alleges that Dr. Walker and Dr. Frasier were responsible for malicious prosecution of her. Ms. Tiscareno was convicted at her first trial. Ms. Tiscareno asserts that after the withheld exculpatory evidence came to light, she was retried and acquitted. The court will go into further detail regarding Ms. Tiscareno's factual and legal allegations below as they become relevant.

## ANALYSIS

**I.      Motion to Dismiss Standard**

The moving Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(c).[2] Motions to dismiss under Rule 12(c) are reviewed under the same standard as motions made under Rule 12(b)(6). *Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009). That is:

> "In reviewing a motion to dismiss, this court must look for plausibility in the complaint." "Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."

*Id.* at 1223-34 (citations omitted). Moreover, when considering a motion to dismiss for failure to state a claim, the truth of well-pleaded facts is assumed and such facts are viewed "in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

---

[2] Ms. Anderson and Dr. Walker also move, expressly or impliedly, under Rule 12(b)(1), for lack of subject matter jurisdiction. That is, they argue that the court has no jurisdiction over Ms. Tiscareno's state law constitutional claims because she failed to file a notice of claim.

**II.     IHC and Mr. Beerman**

In the First Amended Complaint, Ms. Tiscareno asserts that Intermountain Health Care and William Beerman violated her due process rights under the Fourteenth Amendment of the United States constitution as well as under Article 1, Section 7, of the Utah constitution. Specifically, Ms. Tiscareno asserts that these Defendants had an obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose to the prosecution the exculpatory medical records created and kept at IHC's Primary Children's Medical Center ("PCMC"). Ms. Tiscareno alleges that these records were not produced and that part of the reason for this failure was IHC and Mr. Beerman's failure to adopt policies to make sure it happened. IHC and Mr. Beerman move to dismiss on two grounds. First, they contend that the 2008 Order dismissed Ms. Tiscareno's claims against them with prejudice, making them *res judicata*. Second, they contend that they are entitled to absolute witness immunity. The court will address these arguments below.

**A.     Are Ms. Tiscareno's Claims against IHC and Mr. Beerman *Res Judicata*?**

IHC and Mr. Beerman first argue that the claims against them were decided in their favor with prejudice in the 2008 Order. This argument does not prevail. As these Defendants point out, the 2008 Order does not specify whether the dismissal of the claims against them was with or without prejudice. But the court is not convinced that an unspecified dismissal is by default "with prejudice" in every case. To the contrary, "[a]s a general matter, a party should be granted an opportunity to amend his claims prior to a dismissal with prejudice." *See Sheldon v. Vermonty,* 269 F.3d 1202, 1207 n.5 (10th Cir. 2001). This statement is especially cogent given Federal Rules' liberal policy in favor of amendment. *See* Fed. R. Civ. P. 15.

Moreover, this case is not like that in *Rinehart v. Locke,* 454 F.2d 313 (7th Cir. 1971). In *Rinehart*, a plaintiff filed a second complaint after his first complaint was dismissed. *Id.* at 313.

3

Leave to amend his first complaint had been denied. *See id.* at 314. The plaintiff's second complaint was nearly identical to the first one, except that it included the additional allegation with which the plaintiff had attempted to amend the first one. *See id.* It was in that context that the Seventh Circuit found that the previous dismissal had been with prejudice, even though the court had not specified if it was with or without prejudice. *See id.* at 315  Accordingly, the claims in the plaintiff's second complaint were dismissed as *res judicata*. *See id.*

In this case, Ms. Tiscareno has filed an amended complaint, not a successive one. Moreover, the court has granted Ms. Tiscareno leave to file this complaint against IHC and Mr. Beerman (Dkt. No. 80). IHC and Mr. Beerman did not oppose that motion or object to the magistrate judge's order granting it. Further, the 2008 Order dismissed the claims against IHC and Mr. Beerman on the ground that Ms. Tiscareno had not sufficiently alleged that they were state actors. The First Amended Complaint, however, contains various allegations that arguably establish that IHC and Mr. Beerman should be deemed state actors. IHC and Mr. Beerman appear to acknowledge this possibility by not moving on that ground again. Finally, as pointed out by Ms. Tiscareno in her opposition, *res judicata* requires a final judgment and the 2008 Order was not such a judgment because it did not dispose of all claims against all parties. Accordingly, the court declines to hold that the 2008 Order's dismissal of the claims against IHC and Mr. Beerman was made with prejudice to Ms. Tiscareno's right to amend or should be considered *res judicata*. To the extent that the 2008 Order could be read in that fashion, it would be clearly in error.

**B.     Are IHC and Mr. Beerman Entitled to Absolute Witness Immunity?**

The second ground on which IHC and Mr. Beerman seek dismissal is their assertion that they are entitled to absolute witness immunity. The core of IHC and Mr. Beerman's argument on

this point is that in this case, they acted like any lay witnesses responding to subpoenas and records requests made by the prosecution in a criminal case. They conclude that they should therefore be shielded from liability for any deficiency in their production by witness immunity. As discussed below, this argument does not prevail.

On a factual level, IHC and Mr. Beerman contend that their roles were limited to treating the allegedly abused child and maintaining records related to that treatment. In their view, then, they acted like lay witnesses when they responded to subpoenas and record requests made by the prosecutor in Ms. Tiscareno's first trial. It may be that this version of the facts will prevail in a later proceeding. But reading the First Amended Complaint in Ms. Tiscareno's favor, as the court must, *see Ridge at Red Hawk*, 493 F.3d at 1177, it is clear that IHC and Mr. Beerman's alleged roles are not limited in this way. Read in the light most favorable to Ms. Tiscareno's claims, the First Amended Complaint asserts that IHC and Mr. Beerman willingly adopted roles as *de facto* members of the prosecutor's investigation team in Ms. Tiscareno's case. That is, the complaint can be read to allege that IHC established the Center for Safe Families at PCMC, that the Center's purpose was to investigate and assist in the state's prosecution of child abuse, and that the Center joined the prosecution's investigation of the alleged crime against Ms. Tiscareno in particular. The complaint can further be understood to allege that IHC and Mr. Beerman knew that PCMC's records in cases of alleged child abuse would be used to prosecute people like Ms. Tiscareno and that they did nothing to ensure that all of the records would be properly disclosed to the parties. Moreover, the complaint appears to allege enough to conclude that IHC and Mr. Beerman should be deemed state actors in this case. These allegations move the asserted roles of IHC and Mr. Beerman away from mere lay witnesses to investigators for the prosecution team. And, as established in *Smith v. Secretary of N.M. Dep't of Corrs.*, 50 F.3d 801 (10th Cir. 1995),

5

*Brady*'s disclosure duty extends to "other arms of the state involved in investigative aspects of a particular criminal venture." *Id.* at 804 (footnote omitted.)

Moreover, the blanket of absolute witness immunity does not appear to cover as wide of an area as these Defendants contend it does. It is true that in the Tenth Circuit, absolute witness immunity extends "beyond the trial itself to judicial proceedings generally." *Anthony v. Baker*, 955 F.2d 1395, 1400 (10th Cir. 1992). But none of the cases cited by IHC and Mr. Beerman stand for the proposition that a member of the prosecution team who fails to provide exculpatory evidence is protected from a federal civil rights suit by absolute witness immunity. For example, in *Briscoe v. LaHue*, 460 U.S. 325, 342 (1983), the Supreme Court upheld the grant of witness immunity to a police officer alleged to have perjured himself while testifying, not a police officer who withheld exculpatory evidence. Nor does the court view the logic of those cases to be extendable to such a case.[3] To the contrary, the court views a case cited by Ms. Tiscareno, *Bragdon v. Malone*, 425 F. Supp. 2d 1 (D.D.C. 2006) to be a closer analogy to this case. In *Bragdon*, a plaintiff brought an action against an FBI agent based in part on the agent's alleged failure to disclose exculpatory evidence. *Id.* at 3. The agent claimed absolute prosecutorial immunity, pointing out that the immunity "cloaks witnesses testifying during trial." *Id.* at 3-4 (citation omitted). The *Bragdon* court refused to extend prosecutorial immunity to the agent's actions, however, pointing out that the agent was neither testifying or acting as counsel for the government. *Id.* at 4. The *Bragdon* court further reasoned that the agent was acting as an investigator, a role in which not even the prosecutor would be immune. *Id.* at 4-6. Here, as in *Bragdon*, IHC and Mr. Beerman are alleged to be investigators for the prosecution. Accordingly,

---

[3] To the extent these Defendants rely on state cases based on state law witness immunity concepts, the court is not persuaded that they apply to this federal constitutional claim.

like prosecutorial immunity in *Bragdon*, witness immunity does not apply to these Defendants as a legal matter under the facts Ms. Tiscareno alleges here.

For these reasons, IHC and Mr. Beerman's motions to dismiss are DENIED.

**III.     Claims Against Richard Anderson**

In the First Amended Complaint, Ms. Tiscareno asserts that Richard Anderson, as director of the Utah Department of Child and Family Services, violated her due process rights under the Fourteenth Amendment of the United States constitution as well as under Article 1, Section 7, of the Utah constitution. Ms. Tiscareno asserts that DCFS had an obligation under *Brady* to ensure that exculpatory evidence against individuals being prosecuted for child abuse is disclosed. As with IHC and Mr. Beerman, Ms. Tiscareno asserts that Mr. Anderson's failure to adopt appropriate policies lead directly to the failure of the prosecutor and her counsel from obtaining the exculpatory records at issue here. Mr. Anderson moves to dismiss on various grounds.[4] The court will address his arguments below.

**A.     Is Mr. Anderson Entitled to Qualified Immunity?**

Mr. Anderson argues that he is entitled to qualified immunity. First, he contends that DCFS had no obligation to disclose exculpatory information under *Brady* because it was not part of the prosecution of Ms. Tiscareno. Next, he asserts that the allegations are insufficient to establish supervisor liability. Finally, he asserts that the law was not clearly established regarding the alleged violation.

---

[4] Mr. Anderson also submits various documents that purport to establish facts outside of the First Amended Complaint. Because he has made a motion to dismiss, the court declines to consider those purported facts at this stage. Doing so would convert this motion into one for summary judgment, *see* Rule 12(d), but the court believes that this matter should be decided with respect to the matters plead on the face of the complaint only.

### 1.     Did Mr. Anderson Have a Duty Under *Brady*?

Mr. Anderson's first argument is that DCFS was not part of the prosecution team against Ms. Tiscareno and therefore it had no duty to provide exculpatory evidence. In support, Mr. Anderson asserts that DCFS's primary purpose is to provide welfare services, citing Utah Code Ann. § 62A-4a-103. He further contends that DCFS has no legal duty or ability to pursue the prosecution of child abuse. Moreover, he contends that during pre-removal proceedings, DCFS "is not required to duplicate an aspect of the investigation that, in the division's determination, has been satisfactorily completed by law enforcement." Utah Code Ann. § 62A-4a-409(11)(b). Relatedly, he points out that under Utah Code Ann. § 62A-4a-202.3(3)(a), DCFS does not have to conduct additional interviews regarding abuse investigated by law enforcement if law enforcement produced a written report after a "timely and thorough investigation" of the abuse.

Ms. Tiscareno responds that when there is a report by a medical professional of suspected abuse, as there was here, Utah state statute mandates that DCFS "shall, in addition to its own investigation, comply with and lend support to investigations by law enforcement undertaken pursuant to a report made under this section." Utah Code. Ann. § 62A-4a-402(1)(b). She contends this statute obligates DCFS to become a part of the prosecution team in cases of child abuse reported by medical professionals. She further argues that DCFS, as a matter of *de facto* policy, delegated this duty to IHC, and more specifically to the Center. Because DCFS was using the Center as its proxy in assisting the prosecution, she concludes, Mr. Anderson had a duty to establish policies ensuring that the Center disclose exculpatory evidence in criminal child abuse prosecutions.

The court views this issue as close, but is persuaded by Ms. Tiscareno. In cases of child abuse reported by medical professionals, DCFS is statutorily mandated to "comply with and lend

support" to "law enforcement." Utah Code. Ann. § 62A-4a-402(1)(b). As the court interprets those phrases, Utah statute instructs DCFS to become a part of the prosecution team in Ms. Tiscareno's case.[5] Moreover, in analyzing potential liability for a state agency, courts do not look only to the status of the agency at issue, but rather at the function that the agency served in the case. *See Snell v. Tunnell*, 920 F.3d 673, 687-88 (10th Cir. 1990). In *Snell*, the Tenth Circuit denied absolute immunity to a state child protection services agency. The agency had argued that its role was tied to the judicial phase of the court process, making it absolutely immune from a civil rights suit for any of its actions in the course of a case involving alleged child abuse. *Id.* at 686. The *Snell* court pointed out that absolute immunity was not unlimited, explaining that the "more distant a function is from the judicial process, the less likely absolute immunity will attach." *Id.* at 687. Upon a careful examination of the agency's actions in that case, the *Snell* court found that the agency had acted more like police officers than child advocates and concluded that the agency's immunity from suit for its actions would only be qualified. *See id.* at 689-92. Here, as in *Snell*, DCFS is alleged to have functioned as more than merely a child protective agency, but rather as an active investigator for the prosecution.

On the other hand, the statutes Mr. Anderson relies on to argue that DCFS has no duty to duplicate law enforcement investigations, § 62A-4a-409 and § 62A-4a-203.3(a), are limited to investigations before and after removing a child from parental custody. But there is no allegation here that the police investigation at issue related to removal proceedings. Moreover, the statutes

---

[5] The court is aware that it is not to take Ms. Tiscareno's legal assertions as true. Accordingly, it is worth noting that the court has construed for itself the Utah statute at issue, and agrees with Ms. Tiscareno's reading as a legal matter. Moreover, Mr. Anderson did not contest Ms. Tiscareno's proposed interpretation of the statute, but instead argued that other statutes applied.

cited by Mr. Anderson only excuse DCFS from repeating aspects of a police investigation with which it is satisfied or that were timely and thorough. Ms. Tiscareno did not allege, however, that DCFS was satisfied with any aspect of the police investigation or that the investigation was timely and thorough. To the contrary, Ms. Tiscareno alleges that DCFS relied on the Center's investigation as its own investigation and that DCFS used the Center as its proxy to comply with and lend support to law enforcement's investigation.

Mr. Anderson argues that *State v. Green*, 108 P.3d 710 (Utah 2005) precludes a holding that DCFS can be considered part of the prosecution. After carefully considering this argument, the court is not convinced. In *Green*, a defendant who had been charged with rape of a child argued that the statute of limitations had run on the charges against him. *See id.* at 714-15. Under the applicable statute, the limitations period began to run within four years after the office was reported "*to a law enforcement agency*." *Id.* (citations omitted). Among other things, the defendant argued that DCFS had been alerted to allegations of child rape over four years before charges against him were filed, and that DCFS met the statute's definition of law enforcement agency. *See id.* at 719. The Utah Supreme Court first concluded that there was no factual or legal merit to the defendant's claim that DCFS had been notified of the rape for the purposes of the statute of limitations. *See id.* 719-20. The *Green* court alternatively reasoned that DCFS was not a "law enforcement agency" for the purposes of the statute of limitations. In support, the court acknowledged that while DCFS "shares investigatory functions with law enforcement," those "shared functions are ancillary to its primary purpose of providing child welfare services." *Id.* at 721 (citing Utah Code Ann. § 62A-4a-103(2)(a)). The court also noted the defendant's argument that DCFS was "responsible for receiving statutorily mandated notification of crimes committed against children." *Id.* at 722 (citing Utah Code Ann. § 62A-4a-402(1). The court

10

reasoned that Section § 62A-4a-402(1) "does not render DCFS a law enforcement agency," first because DCFS was classified separately from law enforcement agencies and second because DCFS is required by that section to notify law enforcement of abuse allegations. *Id.* Given the fact that the Utah Supreme Court addressed the issue relevant to this case only in the alternative, after concluding that there was no factual or legal merit to the defendant's claim, the analysis is dicta. Nevertheless, the dicta is an indicator of how the Utah Supreme Court would decide the case and will be considered as such here.

In this case, Ms. Tiscareno does not argue that DCFS should be treated as a law enforcement agency. Rather, she contends that DCFS was a part of the prosecution's investigative team in the criminal investigation in her case. This argument comports with *Snell*, which establishes that the court is not to look at DCFS's status as an agency separate from law enforcement, but to the role that it was alleged to have played in this case. The court is also satisfied that *Green*'s analysis of § 62A-4a-402(1) in particular does not change the outcome. While the *Green* court considered the question of whether that section converted DCFS into a law enforcement agency for limitations purposes, the court did not address the meaning of the phrase "comply with and lend support to investigations undertaken by law enforcement."

Nor does *Lavallee v. Coplan*, 374 F.3d 41 (1st Cir. 2004), which Mr. Anderson argues controls, change the court's conclusion here. In *Lavallee*, the First Circuit held that files in the possession of a New Hampshire child protection agency were not covered under *Brady* because "they were not within the custody, possession, or control of the prosecution." *Id.* at 44. But the court specifically noted that:

> DCYF [the state agency] is neither the police nor the equivalent of the police in assisting the prosecution. DCYF was not the prosecuting agency and is independent of both the police department and the prosecutor's office. Indeed, in its decision on [plaintiff's]

11

direct appeal, the New Hampshire Supreme Court held that DCYF shared no special relationship with the prosecutor or the police.

*Id.* at 44-45 (citation and footnote omitted).  Unlike the New Hampshire agency before the court in *Lavallee*, Utah statute expressly mandates a "special relationship" between DCFS and the "prosecutor or police." *Id.* at 45.[6]

Mr. Anderson relatedly argues that even if DCFS had a duty under *Brady*, that it would not apply in this case for two reasons.  First, Mr. Anderson contends that DCFS believed that the hospital itself turned over the reports to the prosecution.  Second, he asserts that he had no personal role in the case of the allegedly abused boy.  Neither of these facts were alleged in the complaint, so the court declines to consider them.

### 2. Has Ms. Tiscareno Sufficiently Alleged Supervisor Liability against Mr. Anderson?

Mr. Anderson next contends that Ms. Tiscareno has not plead sufficient facts to show that he could be held liable under § 1983 in his role as a supervisor.  To show that a supervisor is liable under § 1983, a plaintiff must plead that "an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Mead v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) (internal quotation marks and alterations omitted).

---

[6] The court also notes that this case is distinguishable from that in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987).  In *Ritchie*, the Supreme Court held that a criminal defendant's right to exculpatory evidence contained in a state agency's confidential files related to a child abuse investigation was adequately protected by having the court conduct an *in camera* review of those files.  *See id.* at 61.  The court does not view this ruling as dispositive or particularly helpful in this case, because it is distinguishable on the facts and because it arose in a different state statutory scheme than the one at issue here.

This argument fails.  The First Amended Complaint is replete with allegations that point to a direct connection between Mr. Anderson's failure to implement policy and supervise and the constitutional depravation that occurred here.  First, the complaint alleges that DCFS had a duty to investigate child abuse reported by medical professionals, which duty it delegated to the Center.  More importantly, the complaint contends that DCFS had a statutory duty to assist law enforcement investigations of such abuse and that DCFS used the Center as its *de facto* agent to provide law enforcement with that help.  Finally, Ms. Tiscareno contends that Mr. Anderson's failures to adopt appropriate policies for DCFS and the Center and to provide appropriate supervision to DCFS and the Center directly lead to the failure of both DCFS and the Center to disclose all exculpatory evidence in the prosecution of Ms. Tiscareno.  Assuming all those facts are true, there is a direct link between Ms. Anderson's failures and the unfair trial Ms. Tiscareno alleges she received.  Accordingly, these allegations meet the test for supervisor liability set out in *Mead* comfortably.

        **3.     Was the Law Clearly Established?**

Mr. Anderson next argues that at the time DCFS failed to turn over the exculpatory evidence, it was not clearly established that DCFS had the obligation to do so.  But since at least 1995, when *Smith* was decided by the Tenth Circuit, it has been clear that *Brady* extends to "other arms of the state involved in investigative aspects of a particular criminal venture." *Id.* at 804.  It can be reasonably inferred from the complaint that Mr. Anderson, as a reasonable public official, should have known that DCFS was a state agency mandated to "comply with and lend support" to "law enforcement" investigations of child abuse reported by medical professionals, *see* Utah Code Ann. § 62A-4a-402(1)(b).  A reasonable official would have also known that as a state entity assisting in investigating crime, DCFS had a duty to ensure that all exculpatory

13

evidence under its possession and control was turned over to the prosecutor. Accordingly, a reasonable state agent would have known that DCFS had a duty to disclose all records relating to DCFS's investigation. Because the Center was allegedly acting as DCFS's agent in the investigation of Ms. Tiscareno, it can further be inferred that Mr. Anderson knew that he should have established policies and provided supervision to make sure that the Center fulfilled DCFS's duty.

### B. Do Ms. Tiscareno's State Law Claims against Mr. Anderson Survive?

In addition to the § 1983 claims against Mr. Anderson, Ms. Tiscareno has also asserted that he violated her rights under the Utah constitution. Mr. Anderson argues that these claims should be dismissed for two reasons. First, he contends that Ms. Tiscareno did not file a proper notice of claim upon them. Second, he argues that Ms. Tiscareno cannot show that the violations were flagrant and lacked another remedy.

Addressing Mr. Anderson's first argument, the court is convinced that a notice of claim requirement does not apply here. In *Spackman v. Board of Educ. of Box Elder County School Dist.*, 16 P.3d 533, 536 (Utah 2000), the Utah Supreme Court held that the due process clause contained in Article I, Section 7 of the Utah Constitution is "self-executing." This holding is significant here because when a plaintiff brings suit under a "self executing" Utah constitutional clause, no notice of claim is required. *See*, *e.g.*, *Heughs Land, L.L.C. v. Holladay City*, 113 P.3d 1024, 1027 (Utah Ct. App. 2005) (notice of claims did not apply to "self executing" takings clause in Utah Constitution). Because Ms. Tiscareno claims under Article I, Section 7 of the Utah Constitution, which is "self executing," it follows that she did not have to adhere to a notice of claim requirement.

In support of his second argument, Mr. Anderson points out that Utah law requires plaintiffs to prove three elements in damages actions for violations of the Utah constitution. That is, they must show that the constitutional violation was "flagrant," that "existing remedies do not redress [their] injuries" and that equitable relief is "wholly inadequate" to protect the plaintiffs' rights. *Spackman*, 16 P.3d at 538-39. Mr. Anderson argues that Ms. Tiscareno's complaint fails on the first two elements.

A "flagrant" violation "[i]n essence means that a defendant must have violated 'clearly established' constitutional rights 'of which a reasonable person would have known,'" *Id.* at 538. As explained above, the court believes that this complaint sufficiently pleads a well-known federal constitutional right to disclosure of exculpatory evidence in a criminal prosecution and that a reasonable person in Mr. Anderson's position would be aware of that right. There is no reason to think that the due process clause of Utah's constitution would not fully protect an accused person's right to a fair trial or that such protection would not be clear to Mr. Anderson. Moreover, it is Utah statute that directs DCFS to aid law enforcement in criminal child abuse investigations.

Turning to whether existing remedies are sufficient, Mr. Anderson argues that there is no difference between Ms. Tiscareno's federal and state constitutional claim. But as a court in this district has recently observed, the Utah Supreme Court has left open the question of whether a federal constitutional tort remedy bars a state constitutional tort remedy. *See P.J. ex. Rel. Jensen v. State of Utah*, 2:05-CV-739 PGC, 2006 WL 1702585, *14 n.92 (D. Utah June 16, 2006) (citing *Spackman*, 16 P3d. at 538 n.10). The parties point to no authority that has resolved this question. In light of this uncertainty, the *P.J.* court refused to hold that Utah law would dictate such a conclusion. *See P.J.*, 2006 WL 1702585 at *14. At least one other decision from this

district has exercised similar caution in refusing to hold that federal constitutional claims bar state claims. *Brokaw v. Salt Lake County*, 2-06-CV-729 TS, 2007 WL 2221065, *4-5 (D. Utah Aug. 1, 2007). These rulings are persuasive here. Accordingly, until there is clearer guidance from the Utah courts on this question or until it becomes apparent from this case itself that the federal and state claims are essentially the same, the court will not dismiss on this ground.

For all of these reasons, Mr. Anderson's motion to dismiss is DENIED.

### III.   Claims against Dr. Walker

In the First Amended Complaint, Ms. Tiscareno asserts that Marion Walker violated her due process rights under the Fourth and Fourteenth Amendments of the United States constitution by failing to disclose exculpatory evidence and by malicious prosecution. She also alleges that Dr. Walker violated her rights under Article 1, Sections 7 and 14, of the Utah constitution. Dr. Walker seeks to dismiss on several grounds.[7] First, he asserts absolute witness immunity. Second he argues that he had no duties under *Brady* and that he was not a complaining witness, negating the federal constitutional claims against him. Third, he argues that he was not alleged to have acted as a complaining witness, negating the malicious prosecution claim against him. Finally, he argues that the state constitutional claim is deficient.

#### A.   Federal Claims Against Dr. Walker

As the other moving Defendants, Dr. Walker argues that he had no duty under *Brady*, precluding a federal due process claim against him for his alleged failure to disclose exculpatory

---

[7] Both parties, whether expressly or impliedly, invite the court to consider facts outside of the pleadings in evaluating Ms. Tiscareno's claims against Dr. Walker. As mentioned above, if the court were to do so, it would convert this motion into one for summary judgment. To avoid such an outcome, the court has not considered any fact outside of the pleadings presented by either side in its analysis of Dr. Walker's motion.

evidence. Specifically, Dr. Walker asserts that he is alleged only to have acted as a witness in Ms. Tiscareno's criminal case and was not part of the prosecution team, so he had no constitutional obligation to reveal exculpatory evidence. Unlike the other moving Defendants, the court agrees with Dr. Walker. The court sees the key question here as when a fact/expert witness testifying for the prosecution crosses the line and becomes an investigator for the prosecution. As explained in *P.J.*, courts answer this question by considering the functional role the individual played in the case. See *P.J.*, 2006 WL 1702585 at *18.

The court has exhaustively analyzed the First Amended Complaint's factual allegations regarding Dr. Walker and has concluded that these allegations do not support the legal conclusion that Dr. Walker functioned as part of the prosecution team for purposes of *Brady*. Ms. Tiscareno generally alleges (1) that Dr. Walker was the treating surgeon of the allegedly abused boy, (2) that Dr. Walker conferred with Dr. Frasier and agreed the injury to the boy was recent, (3) prepared a report for the prosecution that omitted exculpatory evidence, and (4) testified in the criminal case against Ms. Tiscareno without revealing the exculpatory evidence during his initial testimony. Ms. Tiscareno also points out that Dr. Walker regularly testifies in child abuse cases as an expert for the prosecution. Ms. Tiscareno further alleges in conclusory fashion that Dr. Walker advised the prosecutor in the criminal case against Ms. Tiscareno, but alleges no facts that arguably support this conclusion except that he prepared a report for the prosecutor.

Even in the light most favorable to Ms. Tiscareno, her allegations do not distinguish Dr. Walker from any other fact and expert witness sufficiently to say he functioned as an investigator for the prosecution. Unlike his co-Defendant Dr. Frasier, Dr. Walker is not alleged to have interacted with and directed the activities of the police investigators of in this case. Nor is there

17

an allegation that the prosecutor worked with Dr. Walker to conduct an investigation into the matter on behalf of the prosecution. Rather, it is clear from the complaint that Dr. Walker was a fact witness as to what he saw during the surgery and an expert witness as to the nature of the injuries.

Likewise, Ms. Tiscareno has not alleged enough for the court to conclude that Dr. Walker acted as a "complaining witness" in this case, opening him to potential liability for malicious prosecution. A "complaining witness" is "'the person (or persons) who actively instigated or encouraged the prosecution of the plaintiff'- whose 'testimony [was] relevant to the manner in which' the plaintiff's prosecution was initiated or perpetrated." *P.J.*, 2006 WL 1702585 at *18 (citations omitted). Here, while Ms. Tiscareno probably pleads facts about Dr. Walker sufficient to meet the second part of the definition, she fails to do so with respect to the first. That is, there is nothing in the complaint that would plausibly lead to the conclusion that Dr. Walker "actively instigated or encouraged" the prosecution of Ms. Tiscareno. To be sure, the court believes that there is a clear inference that Ms. Tiscareno might have been spared prosecution if Dr. Walker had come forward with the exculpatory evidence. But that inference is different from a conclusion that Dr. Walker somehow pushed the prosecutor to pursue Ms. Tiscareno. In light of this reasoning, the court believes that the malicious prosecution claim cannot stand against Dr. Walker.

The court does not believe that the rule in *Northington v. Marin*, 102 F.3d 1564 (10th Cir. 1996) changes this outcome. In *Northington*, a deputy sheriff was found to have violated a prisoner's civil rights by spreading a rumor that the prisoner was a jailhouse informant, which resulted in the beating of the prisoner by other prisoners. *Id.* at 1566-67. The deputy sheriff argued that there was no way to prove "but for" causation against him because other deputies at

the jail also spread the rumor before the prisoner was beaten. *Id.* at 1568. The Tenth Circuit disagreed, reasoning that the defendant deputy's sheriff's own actions in spreading the rumors were a substantial factor in causing the harm, which could not be apportioned, and concluded that the sheriff was therefore liable for the whole injury. *Id*. at 1568-70.

The court sees nothing in *Northington* that supports the proposition that someone who is not a part of the prosecution team can be liable for a *Brady* violation if someone else with that duty also failed to disclose information.[8] Rather, the court believes that *Northington* would only apply here to ensure that someone who does have a *Brady* duty does not escape liability due to the failure of others to disclose exculpatory evidence. For example, if Dr. Frasier is found to have had a *Brady* duty that she violated here, *Northington* means that as long as her actions were a substantial factor in causing the harm to Ms. Tiscareno, she cannot avoid being liable because Dr. Walker also did not disclose the exculpatory evidence.

### B.   State Constitutional Claims

Turning to Ms. Tiscareno's state constitutional claims against Dr. Walker, they fail for the same reasons as her federal claims. That is, because the complaint does not adequately allege that Dr. Walker was part of the prosecution team or that he was a complaining witness, he cannot be said to have violated Ms. Tiscareno's state constitutional rights.

For these reasons, Ms. Tiscareno's claims against Dr. Walker are DISMISSED. Note that in dismissing these claims, the court does not suggest that it approves of the type of behavior Dr.

---

[8] Read in the manner Ms. Tiscareno urges, *Northington* would seem to result in possible § 1983 liability for the prisoners who beat the plaintiff there. But neither the court nor the parties in *Northington* even contemplated such an outcome.

Walker allegedly engaged in here. Instead, the court only holds that Ms. Tiscareno has not adequately plead the state and federal constitutional claims she attempts to bring against him.

## ORDER

For the reasons stated above, Dr. Walker's motion to dismiss (Dkt. No. 47) is GRANTED, Mr. Anderson's motion to dismiss (Dkt. No. 82) is DENIED and IHC and Mr. Beerman's motion to dismiss (Dkt. No. 84) is DENIED.

SO ORDERED this 4th day of December, 2009.

BY THE COURT:

_____
Clark Waddoups
United States District Judge