IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ABBY TISCARENO,<br>GUILLERMO TISCARENO,<br><br>    Plaintiffs,<br><br>v.<br><br>LORI FRASIER, et al.<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:07-cv-00336-CW-DBP<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Dustin B. Pead |

## I.  INTRODUCTION

This matter was referred to the Court under 28 U.S.C. § 636(b)(1)(A). Plaintiffs are Abby and Guillermo Tiscareno.  Defendant relevant to this decision is Defendant Dr. Lori Frasier. District Judge Ted Stewart previously summarized the case.  (Docket No. 61.)  It stems from Plaintiff Abby Tiscareno's criminal prosecution for felony child abuse of a fourteen-month-old child named N.M., and exculpatory evidence Defendant Frasier allegedly withheld.  (Id.) Specifically, the exculpatory evidence showed prior bleeding in N.M.'s head suggesting prior injury.  (Id.)

Before the Court is Plaintiffs' motion to quash the second subpoena duces tecum Defendant Frasier served on nonparty Earl Xaiz.  (Dkt. No. 268).  Xaiz acted as Abby Tiscareno's defense attorney during her first, criminal trial.  The Court granted Xaiz's third party motion for joinder in Plaintiffs' motion to quash.  (Dkt. No. 298.)  The Court also considers Defendant Frasier's motion for leave to file a surreply to Plaintiffs' motion to quash.  (Dkt. No. 281.)

Page **1** of **10**

The Court **GRANTS** Plaintiffs' motion to quash the second subpoena duces tecum because it is unreasonably cumulative. (Dkt. No. 268.) As such, the Court will not address Plaintiffs' other arguments for quashing.[1] The Court **DENIES** Plaintiffs' request for sanctions as described below. (Dkt. No. 268.) The Court **GRANTS** Defendant Frasier's motion for leave to file a surreply as described below. (Dkt. No. 281.)

## II.     PROCEDURAL HISTORY

On November 6, 2012, this Court granted Plaintiffs' motion to quash the first subpoena duces tecum ("SDT") Defendant Frasier served on Xaiz. (Dkt. No. 254 at 3.) The Court quashed the SDT because of its "defective service" on Plaintiffs, and its "overbroad content." (Id. at 4.) It sought a complete copy of Xaiz's file relating to his criminal representation of Abby Tiscareno. (Id.) The Court stated "Defendant Frasier [was] free to serve Xaiz a new subpoena as she [saw] fit." (Id.)

On December 10, 2012, Defendant Frasier served a second SDT on Xaiz. (Dkt. No. 268-1, Ex. 2 at 8-10.) The SDT asked Xaiz to produce the following "selected file materials pertaining to [his] representation of" Abby Tiscareno "with regard to her criminal prosecution":

(a) Any available trial exhibits admitted to the court at the time of trial still in your possession.
(b) All expert materials, including correspondence, reports, summaries, evaluations, resumes, attorney notes, or other materials associated with any experts, both consulting expert and retained experts, who were involved in this matter, whether for the plaintiff or for the defense.
(c) All witness files or materials, including all correspondence, notes, attorney notes, reports, evidence, or other writings associated with any witness.

---

[1] Plaintiffs move to quash the second subpoena duces tecum ("SDT") Defendant Frasier served on Xaiz for the following reasons: (1) Defendant Frasier's counsel failed to meet-and-confer with Plaintiffs' counsel prior to serving the SDT; (2) the SDT seeks information irrelevant to the parties' claims and defenses, but rather seeks information related to the subject matter of the case without prior court order; and (3) the SDT violates this Court's November 6, 2012 order because it is overbroad, cumulative, harassing, and imposes an undue burden on Plaintiffs and Xaiz. (Dkt. No. 268.)

(d) To the extent they are not produced under subsection (a) above, any photographs, video recordings, audio recordings, or any other taped, digital or electronic media or materials related in any way to the subject prosecution and/or defense in the subject case, including all witness interviews, police or other interviews.

(Dkt. No. 268-1, Ex. 2 at 10.)

### III. STANDARD OF REVIEW FOR MOTION TO QUASH SUBPOENA DUE TO CUMULATIVE NATURE

Plaintiffs ask the Court to quash Defendant Frasier's second SDT, in part, because it is unreasonably cumulative. (Dkt. No. 268 at 10-11.) Under Fed. R. Civ. P. 26(b)(2)(C)(i) "the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative . . . ." See Hall v. UNUM Life Ins. Co of America, 300 F.3d 1197, 1203 (10th Cir. 2002) ("Cumulative or repetitive evidence . . . should not be admitted.")

Discovery against nonparties is obtained by subpoena. Fed. R. Civ. P. 45. However, "[a]ll discovery, including that sought through a subpoena, is subject to [Fed. R. Civ. P. 26(b)(2)(C)'s] limits." Hunsaker v. Proctor & Gamble Mfg. Co., No. 09-26666-KHV, 2010 WL 5463244, at *4 (D. Kan. Dec. 29, 2010). See also Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 591-92 (D. Kan. 2003) (acknowledging that Fed. R. Civ. P. 45 "does not include relevance as an enumerated reason for quashing a subpoena," but still quashing a subpoena that sought irrelevant documents because "[i]t is well settled . . . that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) . . . .").

Relevant here, several courts have quashed subpoenas viewed as unreasonably cumulative or duplicative. See Haber v. ASN 50th St., LLC, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) (quashing a subpoena that was duplicative of already answered document requests); Int'l Coal Grp., Inc. v. Tetra Fin. Grp., LLC, No. 2:09-cv-115-CW-PMW, 2010 WL 2079675, at *2 (D. Utah May 24,

2010) (citing Fed. R. Civ. P. 26(b)(2)(C)(i)'s limitation on unreasonably cumulative and duplicative discovery to quash a duplicative subpoena that sought documents "likely" already produced).

## IV. ANALYSIS OF PLAINTIFFS' MOTION TO QUASH SECOND SUBPOENA DUCES TECUM

The Court recognizes Defendant Frasier's argument that her second SDT seeks documents relevant to defending against Plaintiffs' Brady claim. (Dkt. No. 274 at 3.) That is, Defendant Frasier seeks documents that show Xaiz knew about N.M.'s prior-bleeding during Abby Tiscareno's first, criminal trial. (Id.)[2] However, given the particular circumstances of this case, the Court agrees with Plaintiffs that the second SDT is unreasonably cumulative.

Plaintiffs state the parties already produced documents from Prosecutor Brickey's file,[3] Xaiz's file, as well as the entire correspondence between Prosecutor Brickey and Xaiz. (Dkt. No. 268 at 10-11.) Plaintiffs assert these documents "conclusively establish[] that the exculpatory pathology reports regarding N.M. were never produced to" Prosecutor Brickey, or Xaiz. (Dkt. No. 280 at 9.) Moreover, a Salt Lake City Tribune article previously submitted into evidence quotes Prosecutor Brickey, and Xaiz, as never receiving the pathology analysis during Abby Tiscareno's first trial. (Dkt. No. 268-1, Ex. 9.) Xaiz even submitted a declaration confirming he never received exculpatory pathology evidence prior to the first trial. (Id., Ex. 10.)

Based on this, it appears the parties already turned over all of Xaiz's documents potentially relevant to the issue of prior-bleeding. In the Court's opinion, these documents strongly suggest

---

[2] Under U.S. v. Erickson, a Brady violation requires criminal defendants lack knowledge of exculpatory evidence. 561 F.3d 1150, 1163 (10th Cir. 2009) ("[A] defendant is not denied due process by the government's nondisclosure of evidence if the defendant knew of the evidence anyway.").

[3] Prosecutor Brickey prosecuted Abby Tiscareno in her first, criminal trial.

that Xaiz's knowledge of prior-bleeding, if any, is not contained in his criminal file. Indeed, Defendant Frasier's only reason to speculate to the contrary stems from: (1) a medical expert's (Dr. Walker's) testimony that N.M's pathology analysis showed some old blood; and (2) Xaiz's reference to this testimony in his closing argument. (Dkt. Nos. 274 at 7-8; 276-6; 276-7.) See Tiscareno v. Frasier, No. 2:07-CV-336 TS, 2008 WL 4527340, at *3 (D. Utah Sept. 29, 2008) ("Dr. Walker's trial testimony about the pathology examination *was the first time he had mentioned the fact of the pathology examination* . . . in the presence of the prosecution team.") (emphasis added).

In light of the above, the Court concludes that Defendant Frasier failed to provide adequate reasons to believe that Xaiz's file contains documents evidencing his knowledge of prior bleeding. Without more, the Court holds Defendant Frasier's second SDT is cumulative of documents already produced. See Koch v. Koch Indus., Inc., No. 85-1636-C, 1992 WL 223816, at *12 (D. Kan. Aug. 24, 1992) ("Cumulative discovery requests may be denied when they lack any real potential for producing previously undiscovered material."). Therefore, the Court **GRANTS** Plaintiffs' motion to quash the second SDT Defendant Frasier served on Xaiz. (Dkt. No. 268.)[4]

### V.     SANCTIONS

Plaintiffs seek sanctions against Defendant Frasier's counsel, Andrew Morse, for the following reasons: (1) failing to meet-and-confer regarding Plaintiffs' objections to the second SDT; (2) failing to obtain a court order allowing for subject matter discovery; and (3) allegedly

---

[4] If Defendant Frasier wishes to subpoena Xaiz, rather than his criminal file (Dkt. No. 274 at 14), then she must follow Fed. R. Civ. P. 45, and serve an appropriate subpoena on him, rather than a subpoena duces tecum.

violating this Court's November 6, 2012 order by serving an overbroad SDT.  (Dkt. No. 268 at 12.)

Conversely, Defendant Frasier argues sanctions are not warranted.  (Docket No. 274 at 14.) She argues Morse provided Collard detailed letters explaining why the documents requested met the discovery standard.  (Id.)  For the reasons below, the Court agrees with Defendant Frasier.  Accordingly, the Court **DENIES** Plaintiffs' request for sanctions.  (Dkt. No. 268.)

### A.  Failure to Meet-and-Confer as Sanction Ground

#### i.    Correspondence History

On November 13, 2012, Collard sent Morse a written objection to the second SDT.  (Dkt. No. 268-1, Ex. 3 at 12-15.)  Collard asked Morse to "explain how each category of requested documents [was] relevant to any of the claims or defenses of the parties in this action."  (Id. at 13.)

On December 4, 2012, Morse wrote to Collard to address her objections.  (Id., Ex. 6 at 23-24.)  Morse opined the documents sought were reasonably calculated to lead to admissible evidence.  (Id. at 23.)  Morse believed Xaiz's file contained exculpatory evidence related to Plaintiffs' Brady violation claim.  (Id.)  Morse also believed Xaiz's file contained admissions of probable cause related to Plaintiffs' malicious prosecution claim.  (Id.)  He asked Collard to "[p]lease consider this [letter] our attempt to meet and confer to resolve this discovery dispute."  (Id. at 24.)

On December 6, 2012, Collard wrote Morse.  (Dkt. No. 268-1, Ex. 7.)  She opined that Morse had not sufficiently explained the relevance of the documents sought.  (Id.)  In their subsequent motion to quash, Plaintiffs claim that, on December 10, 2012, Morse served the

second SDT on Xaiz, *without responding to Plaintiffs' December 6, 2012 letter*.  (Dkt. No. 268 at 8.)

In direct contradiction to Plaintiffs' accusation, in her opposition, Defendant Frasier states that, on December 7, 2012, Morse responded to Collard's December 6, 2012 letter.  (Dkt. No. 274 at 5.)  Defendant Frasier neglected to attach the response letter to her opposition.  However, she claims the letter addressed Plaintiffs' concerns that the second SDT was identical to the first, and provided a side-by-side analysis of the two subpoenas.  (Id.)  The letter also explained, in detail, why Defendant Frasier believed each category of evidence sought was relevant to show Xaiz's knowledge of prior bleeding.  (Id. at 6.)

Despite Defendant Frasier's reference to the December 7, 2012 letter in her opposition, in Plaintiffs' *reply*, they assert Morse "does not dispute Plaintiffs' facts showing that he served the second subpoena duces tecum . . . without responding to the letter from Plaintiffs' counsel dated December 6, 2012, requesting an opportunity to meet and confer."  (Dkt. No. 280 at 2.)

### ii. Defendant Frasier's Motion for Leave to File Surreply

Defendant Frasier filed a motion for leave to file a surreply.  (Dkt. No. 281.)  She wants to "correct[ ] Plaintiffs' counsel's misrepresentation in her reply memorandum that" Morse served the second SDT without responding to Plaintiffs' December 6, 2012 letter.  (Id. at 1-2.)  As support, Defendant Frasier attached Morse's December 7, 2012 letter to Collard.  (Dkt. No. 281-2, Ex. B.)  The letter includes a detailed, four-page explanation about the legal basis for the SDT, and asks Collard to consider the letter a final attempt to meet-and-confer.  (Id.)

Plaintiffs oppose Defendant Frasier's motion for leave to file a surreply.  (Dkt. No. 283.)  They claim "the Court can determine, without the aid of Defendant Frasier's proposed surreply,

whether or not Plaintiffs' counsel was correct in representing in Plaintiffs' Reply memorandum" that Morse failed to respond to Collard's December 6, 2012 letter.  (Id. at 3.)

Because Plaintiffs' allegation of a failure to meet-and-confer regarding the December 6, 2012 letter is serious, and because Defendant Frasier's December 7, 2012 meet-and-confer letter is only attached to her motion for leave to file a surreply, the Court **GRANTS** the motion.  (Dkt. No. 281.)  The Court believes a full analysis of Morse's attempt to meet-and-confer cannot occur without considering the December 7, 2012 letter as evidence.

### iii.    Court's Conclusion on Meet-and-Confer as Sanction Ground

The Court considered all the parties' correspondence about the second SDT, including Morse's December 7, 2012 letter.  The Court concludes that, as it relates to sanctions, Morse satisfied the meet-and-confer requirement prior to serving the second SDT on Xaiz.  Morse sent Collard two, detailed letters, specifically addressing Collard's relevance concerns.  He asked Collard to consider the letters as satisfying the meet-and-confer requirement.  The correspondence demonstrates the parties' irreconcilable viewpoints about the relevance of the documents sought.  Given this, it is unclear what any *further* attempt to meet-and-confer would have accomplished.  Accordingly, the Court **DENIES** Plaintiffs' request for sanctions on the meet-and-confer ground.  (Dkt. No. 268.)

### B. Failure to Obtain a Court Order Allowing for Subject Matter Discovery as Sanction Ground

Plaintiffs argue "the only documents relevant to the parties' claims and defenses[] are the exculpatory pathology reports and slides and other medical records indicating . . . prior bleeding in N.M.'s brain."  (Id. at 8.)  Because Defendant Frasier's SDT "seeks other broad categories of irrelevant documents," Plaintiffs assert Defendant Frasier should have obtained a court order

allowing for subject matter discovery.  (Id. at 9.)  Where Defendant Frasier failed to do so, Plaintiffs claim the Court should award sanctions.  (Id. at 12.)

The Court agrees with Defendant Frasier, in that she did not require a court order to serve her second SDT just because Plaintiffs subjectively believe it relates to irrelevant subject matter.  (Dkt. No. 274 at 7.)  In Re Cooper Tire & Rubber Co., 568 F.3d 1180, 1188-89 (10th Cir. 2009) ("[W]hen a party objects that discovery goes beyond that relevant to the claims or defenses, the court *would* become involved to determine whether the discovery is relevant to the claims or defenses, and if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.") (emphasis added).  Therefore, the Court **DENIES** Plaintiffs' request for sanctions on this ground.  (Dkt. No. 268.)

### C. Violating Previous Court Order as Sanction Ground

Plaintiffs claim sanctions are warranted because Defendant Frasier violated this Court's November 6, 2012 order by serving an overbroad SDT.  (Id. at 12.)   However, this Court's November 6, 2012 order permitted Defendant Frasier to serve another subpoena as she saw fit.  (Dkt. No. 254 at 4.)  The second SDT's alleged overbroadness does not violate this Court's previous order.  Rather, it constitutes an argument for quashing the SDT.  Accordingly, the Court **DENIES** Plaintiffs' request for sanctions on this ground.  (Dkt. No. 268.)

### VI. ORDERS

Based on the analysis above, the Court issues the following orders:

**IT IS ORDERED** that Plaintiffs' motion to quash the second subpoena duces tecum Defendant Frasier served on Earl Xaiz is **GRANTED** as described above, and the Court does so **QUASH** it.  (Dkt. No. 268.)

**IT IS FURTHER ORDERED** that Plaintiffs' request for sanctions related to their motion to quash is **DENIED** as described above.  (Dkt. No. 268.)

**IT IS FURTHER ORDERED** that Defendant Frasier's motion for leave to file a surreply to Plaintiffs' motion to quash is **GRANTED** as described above.  (Dkt. No. 281.)

Dated this 15th day of February, 2013.

_____
Dustin B. Pead
United States Magistrate Judge