KATHRYN COLLARD, #0697
THE LAW FIRM OF KATHRYN COLLARD, L.C.
4265 South 1400 East, Suite A
Salt Lake City, UT 84124
Tel: (801) 277-2277

ROBERT D. STRIEPER, #10145
STRIEPER LAW FIRM
2366 Logan Way
Salt Lake City, UT 84108-2737
Tel: (801) 631-6421

MACON COWLES, #6790 (Colorado)
EASON RHODE, LLC.
1129 Cherokee
Denver, CO 80204
Tel: (303) 381-3406

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ABBY TISCARENO and GUILLERMO TISCARENO,<br><br>        Plaintiffs,<br>v.<br><br>LORI FRASIER, in her individual capacity; MARION WALKER, in his individual capacity; WILLIAM BEERMAN, in his individual capacity; RICHARD ANDERSON, in his individual and official capacity; INTERMOUNTAIN HEALTH CARE, in its individual capacity; JOHN and JANE DOES 1-20, in their individual capacities,<br><br>        Defendants. | **PLAINTIFFS' MOTION FOR SANCTIONS AGAINST COUNSEL FOR DEFENDANTS IHC AND BEERMAN**<br><br>Case No. 2:07-cv-336<br><br>Judge Clark Waddoups |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ............................................................... iv

PLAINTIFFS' MOTION FOR SANCTIONS AGAINST COUNSEL FOR
DEFENDANTS IHC AND BEERMAN .............................................. 1

SPECIFIC RELIEF REQUESTED ...................................................... 3

INTRODUCTION ............................................................................... 4

FACTS SUPPORTING MOTION ........................................................ 5

ARGUMENT ....................................................................................... 44

   I    THE COURT SHOULD IMPOSE APPROPRIATE SANCTIONS
       ON DEFENDANTS' COUNSEL FOR COMMITTING A FRAUD
       ON THE COURT AND PLAINTIFFS, FOR DISCOVERY ABUSE,
       FOR VIOLATING THE RULES OF CIVIL PROCEDURE AND
       FOR VEXATIOUSLY AND UNREASONABLY MULTIPLYING
       THE PROCEEDINGS AND EXPENSE IN THIS ACTION ........................ 44

       A. MISCONDUCT OF DEFENDANTS' COUNSEL ...................................... 46

    1.  Defendants' Counsel Intentionally Spoiled Defendant Beerman's Evidence In
       This Case While Purporting That Defendant Beerman Possessed Substantial
       Knowledge, Information and Documents Regarding Plaintiffs' Claims .................... 46

    2.  Defendants' Counsel Fabricated Defendant Beerman's Answers To Plaintiffs'
       Original And Amended Complaints ........................................................ 50

    3.  Defendants' Counsel Fabricated Defendant Beerman's Initial Disclosures ............... 53

    4.  Defendants' Counsel Fabricated Defendant Beerman's Responses To Plaintiffs'
       Discovery Requests ......................................................................... 54

    5.  Defendants' Counsel violated Rule 26(g) (1) By Making False Certifications
       That They Had Provided Defendant Beerman's Complete Responses To
       Plaintiffs' Discovery Requests ........................................................... 56

    6.  Defendants' Counsel Brought Dispositive Motions Based, In Part, On The
       Evidence They Fabricated And Relying On Defendant Beerman's Loss Of
       Evidence They Failed To Identify And Preserve And Based On Other
       Inadmissible And Improper Evidence ..................................................... 58

7. Defendants' Counsel Brought Dispositive Motions Based On Representations They Knew Were False Based On Documents In Their Possession They Had Not Disclosed To The Court or Plaintiffs ................................................................. 60

**B. THE FEDERAL RULES, STATUES AND THE INHERENT POWERS OF THE COURT PROVIDE A BASIS FOR APPROPRIATE SANCTIONS AGAINST DEFENDANTS' COUNSEL** ........................................................................... 62

1. Federal Rules And Inherent powers ............................................. 62

2. 28 U.S.C. §1927 ............................................................................. 63

**C. CONSIDERATION OF THE EHRENHAUS FACTORS SUPPORTS THE IMPOSITION OF SEVERE SANCTIONS AGAINST COUNSEL FOR DEFENDANTS IHC AND BEERMAN** ......................................................................... 66

1. The Degree of Prejudice to the Non-Culpable Party ................... 67

2. Interference With Judicial Process .............................................. 71

3. The Culpability of Defendants' counsel ...................................... 73

4. Warning About Sanctions ............................................................. 75

5. Efficacy of Lesser Sanctions ....................................................... 76

CONCLUSION ...................................................................................... 76

INDEX TO EXHIBITS ........................................................................... 80

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1988) ........ 69

*Braley v. Campbell*, 832 F.2d 1504 (10th Cir. 2005) ........ 64

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2133 (1991) ........ 63

*Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993) ........ 44

*Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992) ........ 66, 67

*Garcia v. Berkshire Life Ins. Co. of America*, 2007 WL 6757307 (D. Colo. 2007) ........ 71

*Garcia v. Berkshire Life Ins. Co. of America*, 569 F.3d 1174 (10th Cir. 2009) ........ 70, 71, 72

*Hamilton v. Boise Cascade Express*, 519 F.3d 1197 (10th Cir. 2008) ........ 64

*Hart v. Dillon*, 2013 WL 3442555, (D. Colo. 2013) ........ 70

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, (1944) ........ 50, 51

*Landscape Properties, Inc. v. Vogel*, 46 F.3d 1416 (8th Cir. 1995) ........ 51

*Law v. NCAA*, 134 F.3d 1438 (10th Cir. 1998) ........ 62

*Lonsdorf v. Seefeldt*, 47 F.3d 893 (7th Cir. 1995) ........ 44

*M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869 (10th Cir. 1987) ........ 66

*Myers v. Colgate-Palmolive Co.*, 26 Fed. Appx. 855 (10th Cir. 2002) (unpublished) ........ 62

*National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543 (N.D. Cal. 1987) ........ 46

*Phillip M. Adams & Associates, L.L.C. v. Dell, Inc.*, 621 F. Supp.2d 1173 (D. Utah 2009) ........ 46, 47

*Philips Electronics North America Corp. v. BC Technical*, 773 F.Supp.2d 1149 (D. Utah, 2011) ........ 46, 47, 65, 66, 69, 70, 72, 73, 77, 78

*Pope v. Federal Express Corp.*, 138 F.R.D. 675 (W.D. Mo. 1990) ........ 67

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455 (1980) ........ 63

*Samsung Electronics Co., Ltd. V. Rambus, Inc.*, 439 F. Supp.2d 524 (E.D. Va. 2006) ........ 65

*Steinert v. Winn Group, Inc.*, 440 F.3d 1214 (10th Cir. 2006) ........ 64

*Synanon Found., Inc. v. Bernstein*, 517 A.2d 28 (D.C. Cir. 1986) ................................... 63

*The Procter & Gamble Co. v. Haugen*, 427 F.3d 727 (10th Cir. 2005) ............................. 66

*The Pension Comm. of the Univ. of Montreal Pension Plan v.*
    *Banc of Am. Securities, LLC,* 685 F.Supp.2d 456
    (S.D.N.Y.2010) .................................................................................... 47

*United States v. Wallace*, 964 F.2d 1214 (D.C. Cir. 1992) ............................... 64

*Webb v. Claimetrics Management, LLC*, 412 Fed. Appx. 107
    (10th Cir. 2011) .................................................................................... 66

*White v. GM Corp.*, 908 F.2d 675, 686 (10th Cir. 1990) .................................. 62

## STATE CASES

*Wilson v. IHC Hospitals Inc*., 2012 UT 43 ........................................................ 75

## STATUTES AND RULES

28 U.S.C.§1927 ........................................................................................ 1, 63, 64

F.R.Civ.P.11(c) .............................................................................................. 1, 62

F.R.Civ.P.11(c)(4) ............................................................................................... 62

F.R.Civ.P.12(a)(1)(A) .................................................................................... 50, 52

F.R.Civ.P. 26 Advisory Committee Note (1983) .............................................. 57

F.R.Civ.P. 26(a)(1) ..................................................................................... 19, 56

F.R.Civ.P.26(g)(3) ................................................................................... 1, 56, 62

F.R.Civ.P.37(b) .................................................................................................. 62

F.R.Civ.P.37(c) ............................................................................................. 1, 62

F.R.Civ.P.56(c)(2) ............................................................................................. 40

F.R.Civ.P.56(c)(4) ....................................................................................... 38, 40

F.R.Civ.P.56(c)(1)(A) ........................................................................................ 39

F.R.Civ.P.56(h) ............................................................................................. 1, 63

## TREATISES

7 Moore's Federal Practice, §60:33 .................................................................. 44

## PLAINTIFFS' MOTION FOR SANCTIONS AGAINST COUNSEL FOR DEFENDANTS IHC AND BEERMAN

Plaintiffs, by and through counsel and pursuant to 28 U.S.C.§1927, and F.R.Civ.P.11(c), 26(g)(3), 37(c), 56(h)  and the inherent powers of the Court, hereby move this Court for the imposition of appropriate sanctions directed against Defendant IHC and/or its attorneys, Charles Dahlquist, Robert Wallace, Michael Johnston and David Hardy, counsel for Defendants IHC and Beerman and their law firm, Kirton & McConkie ("Defendants' counsel"),  based on Defendants' counsel's intentional and egregious misconduct in the litigation of this action, including:

A.      Committing a continuing fraud on the Court and Plaintiffs during the past seven years of litigation in this case by simultaneously:

1.      Deliberately failing to identify and preserve Defendant Beerman's testimony and evidence to unfairly defeat Plaintiffs' claims against Defendants Beerman and Defendant IHC in this action;

2.      Deliberately fabricating evidence to support Defendant IHC's asserted defenses to Plaintiffs' claims in this action, including Defendant Beerman's purported Answers to Plaintiffs' first and second amended Complaints, Defendant Beerman's Initial Disclosures, responses to four sets of discovery requests directed to Defendant Beerman, which Defendant Beerman testified he did not provide; and by

3.      Falsely representing to the Court and to Plaintiffs that affirmative factual representations purporting to be those of Defendant William Beerman (1) in his Answer to Plaintiffs' first and second amended Complaints; (2) in his initial and subsequent

1

disclosures; and (3) in his responses to Plaintiffs' four sets of discovery requests, were the true and correct responses of Defendant Beerman, when they were not;

      B.    Filing and arguing dispositive motions on behalf of Defendants William Beerman and IHC, including their most recent motion for summary judgment which resulted in the dismissal of Defendant Beerman as a defendant in this action based, in part, on the evidence Defendants' counsel fabricated, and in part, on Defendant Beerman's deposition testimony that he cannot now recall many of the facts and documents Defendants' counsel failed to obtain, preserve or provide to in response to Plaintiffs' discovery requests;

      C    Filing and arguing dispositive motions on behalf of Defendants William Beerman and IHC based on representations purporting to be those of Defendants William Beerman and IHC that are nothing more that unsworn testimony of Defendants' counsel;

      D.    Filing and arguing dispositive motions on behalf of Defendants William Beerman and IHC based  on inadmissible evidence, including unsworn statements of counsel purported to be the representations of Defendants Beerman and IHC, and the inadmissible Affidavit of William Beerman;

      E.    Failing to identify and preserve relevant documents and information in Defendants Beerman's Initial and subsequent disclosures and in response to Plaintiffs' discovery requests and destroying documents relevant to this case.

2

## SPECIFIC RELIEF REQUESTED

Based on the misconduct of Defendants' counsel, Plaintiffs respectfully request the Court to impose appropriate sanctions on Defendant IHC and/or Defendants' counsel, including but not limited to the issuance of an Order striking IHC's Answer and entering its default in this case. Alternatively, or additionally, the Court should impose some or all of the following sanctions on Defendant IHC and/or Defendants' counsel:

1.     Requiring Defendants' counsel to personally pay all of the attorney fees and costs incurred by Plaintiffs in the discovery conducted against Defendants IHC and Beerman in this action;

2.     Requiring Defendants' counsel to personally pay all attorney fees and costs incurred by Plaintiffs in opposing the dispositive motions filed by Defendants IHC and Beerman;

3.     Requiring Defendants' counsel to personally pay all attorney fees and costs incurred by Plaintiffs in deposing Defendant Beerman;

4.     Requiring Defendants' counsel to personally pay all attorney fees and costs incurred by Plaintiffs in preparing sanctions motions against Defendants' counsel;

5.     Giving an instruction to the jury in the trial of this action that Defendants' counsel fabricated evidence in this case and identifying the evidence they fabricated;

6.     Giving an instruction to the jury that the evidence Defendants or their counsel destroyed in this case would have been favorable to the Plaintiffs;

3

7.      Precluding Defendants' counsel from using any of the evidence they fabricated on behalf of Beerman or Defendant IHC in the trial of this action;

8.      Requiring Defendants' counsel to make Defendant Beerman available to be examined as a witness in the trial of this action;

9.      Barring Defendants' counsel and the law firm of Kirton & McConkie from receiving directly or indirectly, payment for their representation of Defendants IHC and Beerman in this action;

10.     Referring this matter to the district court's admissions and grievances committee to determine whether Defendants' counsel should be barred from practicing in this Court; and

11.     Providing any further sanctions against Defendant's counsel or relief for Plaintiffs as the Court deems just and appropriate to redress the prejudice to Plaintiffs resulting from the misconduct of Defendants' counsel.

## **INTRODUCTION**

The deposition of Defendant William Beerman conducted on January 21, 2013, revealed that for the previous seven years of this litigation, counsel for Defendant Beerman failed to obtain and preserve his evidence in this action, fabricated pleadings, motions and responses to Plaintiffs' discovery requests to Defendant Beerman, and made false represented to the Court and Plaintiffs regarding Defendant Beerman's knowledge, information and documents in this case.

4

As the result of Defendant Beerman's deposition testimony, it has also come to light that Defendants' counsel have filed dispositive motions on behalf of Defendants William Beerman and IHC, including their most recent motion for summary judgment which resulted in the dismissal of Defendant Beerman as a defendant in this action, based, in part, on the evidence Defendants' counsel fabricated, and in part, on Defendant Beerman's deposition testimony that he cannot now recall many of the facts and documents Defendants' counsel failed to obtain, preserve or provide in response to Plaintiffs' discovery requests.

Plaintiffs submit that due to the fraudulent and abusive conduct of Defendants' counsel, Mr. Dahlquist, Mr. Wallace, Mr. Johnston and Mr. Hardy, Plaintiffs have been permanently deprived of important evidence to support their claims against the Defendants IHC and Beerman in this case and that the severe sanctions should be personally imposed on Defendants' counsel for their ongoing and serious misconduct in the litigation of this action.

## FACTS SUPPORTING MOTION

1.      On January 6, 2006, Plaintiffs served notice on Defendant IHC of their intent to file a medical malpractice case against Defendant IHC, Dr. Lori Frasier and Dr. Marion Walker regarding the matters giving rise to Plaintiffs' claims in this action.[1]

2.      On May 22, 2007, Plaintiffs filed their original Complaint and Jury Demand against Defendants IHC, Beerman and Frasier and other defendants in their

---

[1] *See*, Notice of Intent (Doc. 364-17).

*individual capacities*. Plaintiffs made similar allegations in their First and Second

Amended Complaints. [2]

    3.    Charles W. Dahlquist II of the law firm of Kirton & McConkie, counsel for

IHC and William Beerman in this action ("Mr. Dahlquist"), represented Defendant IHC

the prior malpractice proceeding and represented Defendants IHC and Beerman from the

inception of this action. [3] Thus, Defendants admit they had notice of Plaintiffs' claims

involving IHC, Frasier and Walker, as early as January, 2006, and Plaintiffs' claims

against Defendants IHC, Beerman, Frasier and Walker in May, 2007, when the

Complaint in this action was filed. [4] However, Defendant's counsel, Mr. Dahlquist, does

not assert that he created a litigation hold on destruction of IHC documents, including the

documents of Defendants Beerman and Defendant Frasier, at this time. *Id*.

    4.    On October 4, 2007, Mr. Dahlquist and Mr. David J. Hardy ("Mr. Hardy")

entered their appearances as counsel for Defendants William Beerman and IHC and

requested "that all filings or other documents required to be filed and/or served on the

above named defendants be served upon the undersigned." (Doc. 17, Doc. 20) Mr.

---

[2] *See*, ¶¶ 29, 31, Complaint, (Doc. 2); ¶¶13,  28-29, First Amended Complaint (Doc. 79),
at 6, 8; ¶¶15, 21, 29, Second Amended Complaint (Doc. 288), at 9,10, 12.

[3] Please note that as of November 28, 2011, by Defendant "HSI" (IHC Health Systems
Inc., was substituted for Defendant "IHC" (Intermountain Health Care, Inc.) as a
defendant in this action. *See, Order Substituting IHC Health Services, Inc. For
Intermountain Health Care As A Defendant In This Action And Dismissing IHC As A
Defendant In This Action.* (Doc. 182) The designation "IHC" is also used to denote
"IHC Health Systems Inc." is used interchangeably with "HSI" herein. *See also,* ¶34,
Plaintiffs' Statement of Facts, at 20.

[4] *See*, Admission of Plaintiffs' Fact ¶289 in *William Beerman's And IHC Health Services,
Inc.'s Reply Memorandum Supporting Its Motion for Summary Judgment.* (Doc. 383)

Dahlquist has functioned as lead counsel for Defendants William Beerman and IHC at all times in this litigation.

5.      On October 4, 2007, Mr. Dahlquist and Mr. Hardy, purporting to act on behalf of Defendants William Beerman and Intermountain Health Care, filed a *Motion to Dismiss* "based on absolute immunity from liability arising from their presentation of evidence in civil proceedings"  (Doc. 18). In his supporting *Memorandum*, (Doc. 19), Mr. Dahlquist represented to the Court that "Mr. Beerman and Intermountain are exempt from *Brady* liability **based upon being witnesses who submitted documents pursuant to subpoenas**. **There has been no indication that Mr. Beerman or Primary Children's Medical Center … were <u>in any way</u> involved in the prosecution or testifying**."[5] In his *Reply Memorandum*, Mr. Dahlquist represented that "None of the personnel addressed by these cases were, like Beerman and Intermountain, **mere witnesses**."[6]

6.      In his *Reply Memorandum*, Mr. Dahlquist further represented to the Court that the actions of Defendants William Beerman and IHC could not be considered to be engaged in state action under any of the tests for state action, because "***There was no delegation of state authority to them***, as the prosecution of Ms. Tiscareno was the responsibility of state actors."[7]

---

[5] *See*, Conclusion, *Memorandum of Points and Authorities In Support of Motion To Dismiss*, (Doc. 19) at 6-7.

[6] *See*, *Reply to Plaintiffs' Memorandum In Opposition to Motion To Dismiss of Defendants IHC and Beerman* (Doc. 32) at 4.

[7] *See*, *Reply to Plaintiffs' Memorandum In Opposition to Motion To Dismiss of Defendants IHC and Beerman*, (Doc. 32) at 6.

7.      In November 2007, at the time of Mr. Dahlquist's foregoing representations in his Motion to Dismiss[8], he knew they were false and misleading. Mr. Dahlquist knew that Defendants Beerman and IHC were not involved in the prosecution of Abby Tiscareno only as "mere witnesses," but had responsibilities to produce medical records of suspected child abuse victims to prosecutors under the State Contract and that *there was a "delegation"* of state authority to IHC and Beerman to assist DHS/DCFS in the investigation and prosecution of child abuse cases, under the State Contract. However, Mr. Dahlquist did not disclose the existence of the State Contract to the Court and Plaintiffs *until four years later*, in September 2011[9].

8.      On March 17, 2008, Mr. Dahlquist and Mr. Hardy, on behalf of Defendants William Beerman and Intermountain Health Care, filed a *Supplemental Memorandum in Support of Motion To Dismiss By William Beerman and Intermountain Health Care*, (Doc. 45), in which they represented to the Court that "*[b]y responding to the subpoena or request for records, Intermountain and Beerman acted in the capacity of a lay witness making a "statement.*"[10]

9.      At the time Mr. Dahlquist and Mr. Hardy made this representation, they knew it was false and misleading, because it did not inform the Court of IHC's and

---

[8] *Id.*

[9] *See, Contract with IHC and State of Utah* (Doc. 140-10), filed September 9, 2011as Exhibit I to *Memorandum Supporting Motion Of William Beerman And Intermountain Health Care To Dismiss And/Or For Summary Judgment*, Doc. 140, at 6; *See also,* ¶24, Plaintiffs' Statement of Fact, at 16-17.

[10] *See, Supplemental Memorandum in Support of Motion To Dismiss By William Beerman and Intermountain Health Care*, (Doc. 45), at 4-5.

Beerman's duties to provide records of suspected child abuse victims to state law

enforcement personnel and prosecutors under the State Contract, which Defendants'

counsel would not reveal (and then, in an incomplete version) for over three more years.[11]

The State Contract shows IHC had a duty to investigate child abuse and a duty to collect

turn over medical records to prosecutors in child abuse cases[12]:

1. Part  I(D)(5) – (Doc. 348-2), at 18:

   "… Contractor shall **maintain or shall supervise the
   maintenance of all records necessary for the proper and
   efficient operation of the programs covered by this
   Contract** …" (Emphasis supplied.)

2. Part I(D)(6)(b) – (Doc. 348-2), at 19:

   "The Contractor shall retain all records relating to clients under 18
   years old … until the child client reaches the age of twenty-two
   (22)…"

3. Part II(C)(1)(a-c) - (Doc. 348-2), at at 25:

---

[11] *See, Exhibit I Contract with IHC and State of Utah* Doc. 140-10, filed September 9,
2011. *See also,* Fact ¶24, *Memorandum Supporting Motion of William Beerman And
Intermountain Health Care To Dismiss And/Or For Summary Judgment*, Doc. 140, at 6.

[12] In fact, IHC did not disclose the ***complete*** State Contract until February 19, 2013, over
16 months after IHC's and Beerman's Initial Disclosures on September 30, 2011. *See,*
**Plaintiffs' Exh. 1**, at 2-3. The complete State Contract was first filed by Plaintiffs on
May 20, 2013, as Doc. 348-2. As an example, the incomplete State Contract did not
contain the "Sole Source" letter (Compare Doc. 140 with Doc. 348-2, at 67).

1.   **General Description of Services, Supports or Projects:**  The Contractor shall:

    a.   Provide medical examinations for sexual and physical abuse of children who have been allegedly abused or neglected;

    b.   Assist DHS/DCFS in the diagnosis of child abuse and neglect;

    c.   Provide training and/or consultation regarding the unique diagnostic and treatment issues in the medical care of children who have been allegedly abused or neglected, including medically neglected disabled infants.  Training will target professionals providing the medical assessments and those utilizing these assessments to make social and legal decisions regarding their care; and

4.   Part II(C)(2)(c, d) - (Doc. 348-2), at 25:

    2.   **Description of Population Served by the Contractor:**

        c.   DHS/ DCFS staff, including but not limited to Child Protective Services ("CPS") and caseworkers; and

        d.   Legal Professionals

5.   Part II(C) (4)(a) - (Doc. 348-2), at 25-26:

    4.   **Program Objectives:**  The Contractor shall comply with the following objectives and evaluation requirements:

        a.   The Contractor will provide child abuse and/or neglect evaluations to include the following: physical examinations, diagnostic and other consultative services as appropriate.  The Contractor will submit written reports to DHS/DCFS outlining the results of the evaluations.

6.   Part III(1) - (Doc. 348-2), at 28:

    1.   **Compliance with Scope of Work Standards:**  The Contractor shall comply with and maintain records and documentation sufficient to verify compliance with all standards described in Part II ("Scope of Work and Special Conditions") of this contract.

7.   Sole Source letter - (Doc. 348-2), at 67:

    expertise in the area of child protection medical evaluations.  Agencies most directly involved in child abuse/neglect cases - law enforcement, DCFS and the Attorney General's Office – use Primary as their main resource for assessments.  Most of the severe cases requiring the highest level of expertise in evaluation are for children who are hospitalized at PCMC and it would be

In addition, IHC policies, which would not be disclosed until January 20, 2012 (nearly 4 years after IHC's and Beerman's Supplement to their Motion to Dismiss) (Doc. 45, filed April 17, 2008), when IHC and Beerman responded to Plaintiffs'

2nd Discovery[13]) show that IHC had duties to turn over to law enforcement and prosecutors, medical records from their investigations of child abuse:

1.  IHC Policy 3.4.9.1.c(c)(1)(5) (Doc. 364-6, at 48-49)

    c. **Disclosing child abuse reports.** Child abuse reports and related Protected Health Information are confidential and may be made available only to:

    1. A police or Law Enforcement Agency investigating a report of child abuse or neglect.

    5. An officer of the public prosecutor or his or her deputies.

2.  IHC Policy 3.4.9.1.c(f) (Doc. 364-6, at 49)

    f. **Accounting of Disclosures.** Disclosures to law enforcement for child abuse must be written to the Accounting of Disclosures. However, if a law enforcement agent requests a delay in the logging; see ***Section 3.2.5***

3.  IHC Policy 3.4.9.1.c(g)(10) (Doc. 364-6, at 50)

    g. Procedure for reporting Child, Elderly and Disabled Adult Abuse:

    10. Law Enforcement Officials and personnel from the Department of Protective Services may review physical exam, labs, x-rays or any other information obtained by the physician without a subpoena or court order.

4.  IHC Policy 3.4.9.1.c(g)(13)(iv) (Doc. 364-6, at 50-51)

    g. Procedure for reporting Child, Elderly and Disabled Adult Abuse:

    13. Documentation:

---

[13] *See,* Doc. 364-5, at 28.

> iv. Providers and IHC Employees
> must follow the IHC Accounting of
> Disclosures policy and procedure.

10.    On September 29, 2008, the Court, per Judge Ted Stewart, entered a *Memorandum Decision* (Doc. 61), at 9-16, dismissing Plaintiffs' claims against Defendants William Beerman and IHC, based on Plaintiffs' failure to adequately allege facts showing that these Defendants were involved in "state action" in depriving Plaintiff Abby Tiscareno of her rights under §1983.

11.    On December 2, and December 5, 2008, the Court issued Orders granting Plaintiffs leave to file their First Amended Complaint to state additional factual allegations supporting their claims against Defendants IHC and Beerman. (Doc. 78, Doc. 80) On December 3, 2008, Plaintiffs filed their First Amended Complaint (Doc. 79), without having the State Contract to support their allegations.

12.    On December 23, 2008, Mr. Dahlquist, Mr. Hardy and Matthew C. Ballard, on behalf of Defendants William Beerman and IHC, filed a *Motion To Dismiss Plaintiffs' First Amended Complaint* (Doc. 84), seeking dismissal of Plaintiffs' claims based on res judicata and absolute witness immunity.  In their supporting *Memorandum* (Doc. 85), Defendants' counsel represented that "***these defendants are exempt from liability based upon <u>being witnesses</u> who submitted documents pursuant to subpoenas***." (Doc. 85), at 8 (Emphasis supplied)[14]

---

[14] *See also,* ¶9, Plaintiffs' *Statement of Facts,* at 8-12.

13.     At the time they made this representation, counsel for Defendants William

Beerman and IHC knew they were false and misleading because they knew that

Defendants Beerman and IHC were not acting merely as "witnesses", but were

performing duties under the State Contract, in supplying medical records of IHC,

dba/PCMC, to Prosecutor Brickey for use in the criminal prosecution of Abby

Tiscareno.[15]

14.     On December 4, 2009, the Court entered an Order denying Defendant

William Beerman's and IHC's motion to dismiss Plaintiffs' First Amended Complaint.

(Doc. 113) at 3-7.

15.     On March 1, 2010, Mr. Dahlquist, Mr. Robert R. Wallace ("Mr. Wallace")

and Mr. Ballard filed an "Answer of William Beerman and IHC to First Amended

Complaint and Jury Demand," purporting to provide Defendant Beerman's and

Defendant IHC's responses to the allegations of Plaintiffs' First Amended Complaint.

(Doc. 121)  This Answer was filed 15 months after the filing of Plaintiffs' First Amended

Complaint and it would be another 18 months until IHC and Beerman disclosed the State

Contract. (Doc. 140-10)

16.     On March 2, 2010, Robert R. Wallace ("Mr. Wallace") filed a Notice of

Appearance of Counsel for Defendants William Beerman and IHC. (Doc. 122)

17.     In their Answer to Plaintiffs' First Amended Complaint, Mr. Dahlquist, Mr.

Wallace and Mr. Ballard represented that Defendants William Beerman and IHC denied

---

[15] *Id.*

or specially denied certain allegations of Plaintiffs First Amended Complaint[16] or denied certain allegations "for lack of information."[17]

18.    In the Answer, Defendants' counsel represented that Defendants William Beerman and IHC "admit" numerous substantive allegations of Plaintiffs' First Amended Complaint.[18]

19.    At the time Mr. Dahlquist, Mr. Wallace and Mr. Ballard represented to the Court and Plaintiffs that Defendant William Beerman denied, specifically denied, or admitted certain factual allegations of Plaintiffs' First Amended Complaint, Defendants' counsel knew these representations were false and misleading, because they had never discussed the allegations of Plaintiffs' First Amended Complaint with Defendant Beerman. According to Defendant Beerman's sworn deposition testimony, on January 21, 2013, Defendant Beerman had never read Plaintiffs' Complaint, had never read any of the interrogatories or requests for production of documents,[19] did not know what it meant that he was a defendant in this lawsuit, and had never been contacted by IHC and told that he was part of this lawsuit, despite the fact that Defendant Beerman has been available to be contacted.[20]

---

[16] *See*, Answer of William Beerman and Intermountain Health Care to First Amended Complaint and Jury Demand, (Doc. 121), at ¶¶ 5, 8, 11, 13, 22, 26, 47, 49, 59, 61, 62, 64, 67, 72-73, 75.

[17] *Id*. at ¶¶ 2-4, 9, 10-11, 19, 20-21, 27, 31, 33, 36-46, 48, 50-54, 57, 60, 63, 70, 74.

[18] *Id*. at ¶¶ 6, 7, 12, 14, 16, 25, 28-30, 32, 34, 49, 50, 56, 58-59, 61.

[19] *See*, Deposition of Defendant William Beerman (Doc. 364-3) at 18:2-13; 32:25-33:5.

[20] *Id*. at 47:11-48:1.

20.     In the Answer, Defendants' counsel represented that Defendant Beerman

denied the allegations of ¶4 of Plaintiffs' First Amended Complaint (Doc.79), that the U

of U (University of Utah) and IHC, doing business as PCMC, "jointly employed Frasier

at PCMC. *See*, ¶5, Answer (Doc. 121) at 3: "*These defendants* deny the allegations in

paragraph 4 of the First Amended Complaint." (Emphasis supplied) Thus, Defendants'

counsel fabricated Defendant Beerman's denial to mirror the denial they asserted on

behalf of Defendant IHC.

21.     At the time Mr. Dahlquist, Mr. Wallace and Mr. Ballard  made this

representation to the Court and Plaintiffs, they knew it was false and misleading because

they had never discussed this allegation with Defendant Beerman. In fact, in his

deposition, Defendant Beerman testified he did not know who Lori Frasier is.[21] Mr.

Dahlquist and Mr. Wallace also knew this denial was false and misleading, because

Defendant Frasier *was* and is a dual employee of IHC and the U of U, as shown on her

*Conflict of Interest Disclosure* (Doc. 348-3), which Plaintiffs ultimately obtained in

discovery.[22] This "complete" State Contract was finally obtained by Plaintiffs' counsel

two weeks after Plaintiffs filed their Second Amended Complaint (Doc. 288), and 15

months after IHC's and Beerman's filed the incomplete version (Doc. 140-10) in support

---

[21] *See*, Deposition of Defendant William Beerman, (Doc. 364-3) at 17:22-18:17; 21:6-18;
22:6-8; 32:24-37:2; 37:24-39:8; 40:15-45:23; 47:11-48:1.

[22] *See*, **Plaintiffs' Exh. 1**, 2/19/2013 Email String between Attorney Collard and
Attorney Dahlquist re disclosure of "complete" State Contract.

of their *Memorandum Supporting Motion Of William Beerman And Intermountain Health Care To Dismiss And/Or For Summary Judgment* ([Doc. 140](#)).

22.     On September 9, 2011, Mr. Dahlquist and Mr. Wallace filed the *Motion of William Beerman and IHC to Dismiss and/or for Summary Judgment* ([Doc. 139](#)) and supporting *Memorandum*. ([Doc. 140](#))  In their *Memorandum*, Defendants' counsel represented that "***William Beerman and IHC are not state actors for purposes of civil rights violations. IHC is <u>a private hospital entity</u> and Mr. Beerman was <u>merely the head of a record department</u>  in IHC***." (Emphasis supplied)[23]

23.     At the time they made these representations to the Court and Plaintiffs, Mr. Dahlquist and Mr. Wallace knew they were false and misleading based on their knowledge that Defendants William Beerman and IHC were not acting merely as "witnesses who submitted documents pursuant to subpoenas," but were fulfilling contractual duties under the State Contract to assist DHS/DCFS in the investigation and prosecution of child abuse cases, wherein IHC and Beerman were required to supply medical records to Prosecutor Brickey for use in the criminal prosecution of Abby Tiscareno.[24]

24.     In the same *Memorandum*, Mr. Dahlquist and Mr. Wallace make multiple factual representations on behalf of Defendant William Beerman regarding the "Facts as

---

[23] *See, Memorandum in Support of Motion of William Beerman and IHC to Dismiss and/or for Summary Judgment* ([Doc. 140](#)) at 2.

[24] *See,* ¶¶ 9, 12, Plaintiffs' Statement of Facts, at 8-12.

to medical records sought from IHC and provided in the first criminal case",[25] and "Facts

as to the Involvement of IHC with the State of Utah."[26]

    25.    Mr. Dahlquist and Mr. Wallace knew at the time they made these factual

representations to the Court and Plaintiffs that they were false and misleading because

Defendants' counsel had never discussed any of these purported "facts" with Defendant

Beerman, as he testified in his deposition.[27]  Thus, Defendants' counsel fabricated these

"facts" on behalf of Defendant Beerman to mirror those asserted on behalf of Defendant

IHC.

    26.    In the same *Memorandum*, Mr. Dahlquist and Mr. Wallace represent that

 "IHC entered into a contract with the State of Utah, whereby IHC performs medical

assessments of injured children" and attached ***an incomplete copy*** of the contract as

Exhibit I (Doc. 140-10) ("the State Contract").[28]  This incomplete copy of the State

Contract did not contain, among other things, as part of Attachment A, the Conflict of

Interest-Disclosure Statement for Defendant Lori Frasier. Plaintiffs later obtained this

document[29], which shows that Defendant Frasier is a dual employee of IHC/dba PCMC

---

[25] *Id.*, ¶¶ 9-21, at 3-6.

[26] *Id.*, ¶¶22-25, at 6.

[27] *See*, Deposition of Defendant William Beerman, (Doc. 364-3) at 17:22-18:17; 21:6-18;
    22:6-8; 32:24-37:2; 37:24-39:8; 40:15-45:23; 47:11-48:1.

[28] *See*, ¶¶ 24, *Memorandum in Support of Motion of William Beerman and IHC to
    Dismiss and/or for Summary Judgment* (Doc. 140) at 6.

[29] In fact, IHC did not disclose the ***complete*** State Contract until February 19, 2013, over
    16 months after IHC's and Beerman's Initial Disclosures on 9/30/2011. *See,* **Plaintiffs'
    Exh. 1**, at 2-3; . The complete State Contract was first filed by Plaintiffs on May 20,

and the University of Utah,[30] a fact which Defendants' counsel represented that

Defendant IHC and Beerman "denied" in their Answer.[31]

27.     In the same *Memorandum*, Mr. Dahlquist and Mr. Wallace represented that

under the State Contract, IHC receives a flat fee of $200,000 annually from the State, and

that this "is a  miniscule amount compared to the IHC budget considering all of its

hospitals and facilities…[and is] substantially less than one percent of IHC's operating

expenses."[32] Defendants' counsel knew at the time they made these representations, they

were false and misleading as to the huge economic benefit the State of Utah confers on

IHC under the State Contract.  Defendants' counsel failed to advise the Court and

Plaintiffs that under the State Contract, DHS/DCFS contracts with IHC as the "sole

source" provider of medical assessments for suspected victims of child abuse[33], and that

the vast majority of children who are brought to PCMC for assessment of child abuse,

also receive treatment at PCMC for which IHC is able to bill government and private

insurance providers millions of dollars per year. For example, NM's care in the period

2013, as Doc. 348-2. As an example, the incomplete State Contract did not contain
Frasier's Conflict of Interest Disclosure (Compare Doc. 140 with Doc. 348-2, at 65).

[30] *See,* Doc. 348-3;  Doc. 348-2, at 65.

[31] *See,* ¶¶ 20-21, Plaintiffs' Statement of Facts, at 15;  *See also, Defendants' Responses to
Plaintiffs' Undisputed Material Facts,* Facts 22, 254, 255,  *William Beerman's and IHC
Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary
Judgment*  (Doc. 383), at 23, 113-115.

[32] *See,* ¶¶ 24-25, *Memorandum in Support of Motion of William Beerman and IHC to
Dismiss and/or for Summary Judgment* (Doc. 140) at 6.

[33] *See*, Part 1(A)(7) "COMPLIANCE WITH PROCUREMENT REQUIREMENTS",
State Contract, Doc. 348-2, at 4; "Sole Source" letter, Attachment B, "Complete" State
Contract, Doc. 348-2, at 67. Attachment B, the "Sole Source" letter, giving justification
for awarding a sole source contract to IHC, was missing from Doc. 140-10.

11/4/2003 through 12/8/2003 cost over $109, 384.57,[34] and this amount did not include the cost of the neurosurgeons, who are subcontractors to IHC/PCMC, nor the costs for NM's separate admissions on 12/17/2003 and12/23/2003. *Id.*

28.     On September 23, 2011, Michael D. Johnston entered an appearance of counsel for Defendants. (Doc. 154)

29.     On September 23, 2011, Mr. Dahlquist, Mr. Johnston and Mr. Wallace filed a Motion to Join Defendant Anderson's *Motion to Stay Discovery* pending resolution of their pending motion to dismiss on behalf of Defendants Beerman and IHC. (Doc. 155)

30.     On October 14, 2011, the Court issued a Memorandum Decision and Order denying Defendant Anderson's *Motion to Stay Discovery* as untimely. (Doc. 167)

31.     On September 30, 2011, Mr. Dahlquist and Mr. Wallace filed *Rule 26 Initial Disclosures on behalf of Defendant William Beerman and Defendant IHC*,[35] representing these Disclosures contained Defendant Beerman's information and documents. F.R.Civ.P.26(a)(1) requires a party to disclose:

> (ii) a copy—or a description by category and location— of all documents, electronically stored information, and ***tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses***, unless the use would be solely for impeachment;

(Emphasis Supplied)

---

[34] *See,* **Plaintiffs' Exh. 2**, Billing Records for NM - 11-14-2003 thru 12-8-2003

[35] *See, Defendant William Beerman and Intermountain Health Care's Rule 26 Initial Disclosures,* dated September 30, 2001, **Plaintiffs' Exh. 3**.

32.     At the time they made Defendant Beerman's Initial Disclosures, Mr. Dahlquist and Mr. Wallace knew they were false and misleading because they had never discussed these matters with Defendant Beerman, as he testified in his deposition, and Defendants' counsel had fabricated Defendant Beerman's disclosures to mirror those of Defendant IHC.[36]

33.     On November 1, 2011, based on the information and documents purportedly provided by Defendants William Beerman and IHC in their Answer, in their motions to dismiss or for summary judgment and in their Initial Disclosures, Plaintiffs served *Plaintiffs' First Set of Discovery to IHC and William Beerman*, which included interrogatories and requests for admission to Defendant Beerman.[37]

34.     On November 28, 2011, the Court issued an Order substituting IHC Health Services, Inc. ("HSI") for Defendant IHC[38] in this action (Doc. 182), based on the stipulation of counsel for Plaintiffs and Defendant IHC. (Doc. 180)

35.     On December 1, 2011, Mr. Dahlquist, Mr. Wallace and Mr. Johnston filed *Defendant Intermountain Health Care and William Beerman, Responses to Plaintiffs' First Set of Discovery*, [39] representing that these were Defendant Beerman's responses. At

---

[36] *See, Defendants' Responses to Plaintiffs' Undisputed Material Facts,* Facts 22, 254, 255, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 23, 113-115.

[37] *See*, *Plaintiffs' First Set of Discovery To Intermountain Health Care and William Beerman*, **Plaintiffs' Exh. 4**.

[38] *See also,* note 2, *supra,* at ix.

[39] *See, Defendant Intermountain Health Care and William Beerman, Responses to Plaintiffs' First Set of Discovery*. (Doc. 364-4) at 1: ("Defendants Intermountain Health

the time, Defendants' counsel knew this representation was false and misleading because they had never discussed the interrogatories and requests for production of documents contained in *Plaintiffs' First Set of Discovery* with Defendant Beerman, as he testified in his deposition.[40] Thus, Defendants' counsel did not provide Defendant Beerman's true responses and fabricated Defendant Beerman's disclosures to mirror those of Defendant IHC.

36.    Additionally, in *IHC's and Beerman's Response to Plaintiffs' First Discovery*, Defendants IHC and Beerman admitted that they had previously destroyed: (a) The DHS Provider Code of Conduct during the relevant time;[41] (b) the cost statements submitted to DHS for the investigation of child abuse related to NM;[42] (c) the endorsement naming the State of Utah, DHS and others as "additional insured[s];"[43] (d) the documentation of training dates, topics, participants, etc., as required by the State Contract;[44] and (e) the program materials developed for trainings.[45]

---

Care and William Beerman, by counsel and pursuant to the Federal Rules of Civil Procedure, respectfully submit ***their responses*** to Plaintiffs' First Set of Discovery."(Emphasis supplied))

[40] *See, Defendants' Responses to Plaintiffs' Undisputed Material Facts,* Facts 22, 254, 255, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 23, 113-115.

[41] *See,* Interrogatory ¶33(D), Doc. 364-4, at 28.

[42] *See,* Interrogatory ¶33(E), Doc. 364-4, at 28.

[43] *See,* Interrogatory ¶33(F), Doc. 364-4, at 28.

[44] *See,* Interrogatory ¶33(I), Doc. 364-4, at 29.

[45] *See,* Interrogatory ¶33(J), Doc. 364-4, at 29.

37.     On December 9, 2011, based on the information and documents

purportedly provided by Defendants William Beerman and IHC in their Answer, in their

motions to dismiss or for summary judgment, in their Initial Disclosures and in their

responses to *Plaintiffs' First Set of Discovery*,  Plaintiffs served *Plaintiffs' Second Set of*

*Discovery to Defendant Intermountain Health Services, Inc. and William Beerman*,

which included interrogatories and requests for production of documents to Defendants

William Beerman and IHC.[46]

38.     On January 20, 2012, Mr. Dahlquist, Mr. Wallace and Mr. Johnston, filed

their *Response to Plaintiffs' Second Set of Discovery to Defendant Intermountain Health*

*Services, Inc. and William Beerman*,[47] representing the responses stated therein were

those of Defendants William Beerman and IHC. At the time, Defendants' counsel made

this representation, they knew it was false and misleading because they had never

discussed these matters with Defendant Beerman, as he testified in his deposition.[48] Thus,

Defendants' counsel had fabricated Defendant Beerman's disclosures to mirror those of

Defendant IHC.

39.     On January 6, 2012, Mr. Dahlquist, Mr. Wallace and Mr. Johnston, filed a

*First Amended Answer of William Beerman and IHC to Plaintiffs' First Amended*

---

[46] *See, Plaintiffs' Second Set of Discovery to Defendant Intermountain Health Services, Inc. and William Beerman*, **Plaintiffs' Exh. 5**.

[47] *See, Response To Plaintiffs' Second Set of Discovery to Defendant Intermountain Health Services, Inc. and William Beerman*. (Doc. 364-5)

[48] *See, Defendants' Responses to Plaintiffs' Undisputed Material Facts,* Facts 22, 254, 255, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 23, 113-115.

*Complaint and Jury Demand* (Doc. 184), representing  to the Court and Plaintiffs that Defendant Beerman denied, denied for lack of information, and admitted various allegations of Plaintiffs' First Amended Complaint.[49] Defendants' counsel knew these representations were false and misleading at the time they were made, because Defendants' counsel had never discussed these matters with Defendant Beerman, as he testified in his deposition [50] and Defendants' counsel had fabricated Defendant Beerman's responses in the *Answer* to mirror those of Defendant IHC.[51]

40.     On January 10, 2012, Plaintiffs' served *Plaintiffs' Third Set of Discovery Requests to Defendants Health Services, Inc. and William Beerman*, which included interrogatories and requests for production of documents to Defendant William Beerman.[52]

41.     On February 6, 2012, Mr. Dahlquist, Mr. Wallace and Mr. Johnson served their *Response to Plaintiffs' Third Set of Discovery to Defendants IHC Health Services, Inc., and William Beerman*, representing that the responses to Plaintiffs' interrogatories and requests for production of documents contained therein, were those of Defendants

---

[49] *See, First Amended Answer Of William Beerman And IHC Health Services Inc. To Plaintiffs' First Amended Complaint And Jury Demand*. (Doc. 184)

[50] *See*, Deposition of Defendant William Beerman, (Doc. 364-3) at 17:22-18:17; 21:6-18; 22:6-8; 32:24-37:2; 37:24-39:8; 40:15-45:23; 47:11-48:1.

[51] *Id.*

[52] *See*, *Plaintiffs' Third Set of Discovery Requests to Defendants Health Services, Inc. and William Beerman*, **Plaintiffs' Exh. 6**.

William Beerman and IHC.[53] At the time Defendants' counsel made this representation, they knew it was false and misleading because they had never discussed these matters with Defendant Beerman, as he testified in his deposition,[54] and had fabricated Defendant Beerman's responses to mirror the responses of Defendant IHC.[55]

42.     In *Defendants IHC's and Beerman's Response to Plaintiffs' Third Set of Discovery*, Defendants IHC and Beerman admitted that they had destroyed evidence describing the funds the State of Utah paid to CSHF for each year from 2003 through 2005.[56] Defendants' Counsel also objected that Plaintiffs' Interrogatory ¶12, asking for the identity and description of funds paid by the federal government to CSHF during each year for the years 2003 through 2005, on the grounds that Plaintiffs' interrogatory was not "calculated to lead to the discovery of admissible evidence," and further that:

> ***these defendants state*** that there was no federal funding for
> the medical assessment services provided to NM in this case,
> nor for any medical assessment services provided by
> physicians at PCMC in connection with the Medical
> Assessment Program of the Center for Safe and Healthy

---

[53] *See, Response to Plaintiffs' Third Set of Discovery to Defendants IHC Health Services, Inc., and William Beerman*. (Doc. 364-7) ("Defendants, Intermountain Health Care and William Beerman, by counsel and pursuant to the Federal Rules of Civil Procedure, respectfully submit their responses …" at 1; "We believe …" at 7; "these defendants state …" at 8, 14-17, 19, 22; "we do claim …" at 10; "To the best of our knowledge …" at 11; "We have" at 23)

[54] *See*, Deposition of Defendant William Beerman, (Doc. 364-3) at 17:22-18:17; 21:6-18; 22:6-8; 32:24-37:2; 37:24-39:8; 40:15-45:23; 47:11-48:1; *See also*, *Defendants' Responses to Plaintiffs' Undisputed Material Facts,* Facts 22, 254, 255, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 23, 113-115.

[55] *Id.*

[56] *See*, Interrogatory ¶11, Doc. 364-7, at 8; RFP ¶8, Doc. 364-7, at 23.

> Families. The Center for Safe and Healthy Families does
> receive a SAMHSA grant from the federal government, but
> those funds are specifically to fund training for a therapy
> program and have nothing to do with the medical assessment
> of alleged abuse victims. (Emphasis supplied) [57]

43.     On July 14, 2012, based on the purported response of Defendants Beerman

and IHC to Plaintiffs' prior discovery requests, Plaintiffs' served *Plaintiffs' Fourth Set of*

*Discovery Requests to Defendants Health Services, Inc. and William Beerman*, which

included interrogatories and requests for production of documents to Defendant William

Beerman and IHC.[58]

44.     On November 27, 2012, Mr. Dahlquist, Mr. Wallace, and Mr. Johnson filed

their *Response to Plaintiffs' Fourth Set of Discovery Requests to Defendants IHC Health*

*Services, Inc. and William Beerman*, representing these responses to Plaintiffs'

interrogatories and requests for production of documents contained therein, were those of

Defendants William Beerman and IHC.[59] At the time Defendants' counsel made this

representation, they knew it was false and misleading because they had never discussed

these matters with Defendant Beerman, as he testified in his deposition.[60] Thus,

---

[57] *See,* Interrogatory ¶12, Doc. 364-7, at 8-9; RFP ¶9, Doc. 364-7, at 23.

[58] *See*, *Plaintiffs' Fourth Set of Discovery Requests to Defendants Health Services, Inc. and William Beerman*. **Plaintiffs' Exh. 7.**

[59] *Response to Plaintiffs' Fourth Set of Discovery Requests to Defendants IHC Health Services, Inc. and William Beerman*. (Doc 364-8) ("Defendants, Intermountain Health Care and William Beerman, …, respectfully submit their responses …" at 1; "These defendants …" at 2-7, 10-11)

[60] *See*, Deposition of Defendant William Beerman, Doc. 364-3 at 17:22-18:17; 21:6-18; 22:6-8; 32:24-37:2; 37:24-39:8; 40:15-45:23; 47:11-48:1; *See also*, *Defendants' Responses to Plaintiffs' Undisputed Material Facts,* Facts 22, 254, 255, *William*

Defendants' counsel knew they did not provide Defendant Beerman's true responses to
*Plaintiffs' Fourth Set of Discovery*, and had fabricated Defendant Beerman's responses to
duplicate the responses of Defendant IHC.[61]

45.    Defendants' counsel admit that in the course of this action, Defendant
Beerman's counsel have filed dispositive motions, responses to pleadings, initial and
subsequent discovery disclosures and responses to Plaintiffs' discovery requests on all
purporting to present the knowledge, information and documents of Defendant
Beerman.[62]  Defendants' counsel respond that:

> William Beerman was, at one time, an employee of PCMC
> and IHC, Health Services, Inc. As such, defense counsel has
> provided a defense to Mr. Beerman, even though it was
> determined early on that he had no recollection of the NM
> case and had no day-to-day, hands on experience with
> providing responses to requests for medical records.
> According, as in all cases, counsel consulted with those who
> are in the best position to know the answers to any discovery
> requests.[63]

46.    On January 21, 2013, Plaintiffs conducted the deposition of Defendant
William Beerman. (Doc. 364-3)[64] When asked what he had done to prepare for his
deposition, Defendant Beerman testified as follows:

---

[61] *Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic)
Motion For Summary Judgment* (Doc. 383), at 23, 113-115.

[61] *Id.*

[62]  *See, Defendants' Responses to Plaintiffs' Undisputed Material Facts,* Fact ¶254,
*William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its
(sic) Motion For Summary Judgment* (Doc. 383), at 113.

[63] *Id.*

[64] Deposition of William Beerman, January 21, 2013. (Doc. 364-3)

> Q: What did you review for today's deposition?
> A: I'm sorry?
> Q: Did you review anything for today's deposition?
> A: No. [65]

Thus, Defendants' counsel obviously did not review any documents or information with Defendant Beerman to prepare him to be deposed in this case after seven years of litigation.

47. Defendants counsel do not dispute that during his deposition, Defendant Beerman specifically testified that he had never read the Complaint in this case, *Id*. at 32:24-33:1, that he had never read any of the interrogatories or requests for production, *Id*. at 33:2-5, that he did not know the what the Tiscarenos' claims in this action are, or who the Tiscarenos are, *Id*. at 18:2-6; that he had no understanding of what happened to Abby Tiscareno or why she was being prosecuted, *Id*. at 18:11-16; that he couldn't recall being asked to assist in responding to discovery requests, interrogatories, requests for production of documents, *Id*. at 21:6-18; that he didn't know who NM is, or that it was NM's medical records, or that his Department's failure to produce certain medical records of NM were the basis of this lawsuit, *Id*. at 24:21-25:6; that he didn't know who David Brickey is, *Id*. at 25:1-13; that he did not know who Earl Xaiz is, *Id.* at 37:10-11; that he didn't know who discovered the Pysher Pathology Report and the Townsend letter, *Id.,* at 40:15-23; that he did not recognize the Pathology Report on NM, *Id.,* at 45:24-46:11; that he did not review anything for the deposition, *Id*. at 15:21-16:1; that he had heard that he was a defendant in this lawsuit but "I'm not sure how that applies or

---

[65] *See,* Beerman Deposition, Doc. 364-3, at 15:21-16:1.

exactly what it means, to be honest with you.", *Id.* ,at 47:11-15; and testified that "I'm not aware of anything in this case at all." *Id.* at 25:7-11.[66]

48.    Defendants' counsel, Mr. Dahlquist, Mr. Wallace and Mr. Johnston,  admit that "At the time of his deposition, on January 21, 2013, Defendant Beerman had never read the Complaint, and had never read any of the interrogatories or requests for production of documents in this case." They respond that:

>  Admit. Because Mr. Beerman had no information with regard to the Information requested in either Interrogatories or requests or Requests for Production of Documents, there was no reason for him to have read those documents. Mr. Beerman had no knowledge or recollection whatsoever of the Tiscareno case or any of the documents requested. Therefore, as an employee of PCMC, he was represented as such, and the answers to interrogatories and responses to the Requests for Production of Documents were provided by those individuals within PCMC who were most likely to know. It is clear from his deposition that Mr. Beerman had no information that was specifically relevant to this case. [67]

49.    In his deposition, Defendant Beerman testified that he has been available to be contacted by IHC regarding this lawsuit since he left PCMC in 2005. *Id.* at 47:16-48:1, and Defendants' counsel admit this fact.[68]

---

[66] *See, Defendants' Responses to Plaintiffs' Undisputed Material Facts,* Fact ¶255, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment*  (Doc. 383), at 113.

[67] *See,* Defendants' Response to Plaintiffs' Undisputed Material Facts, Fact ¶22, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment*  (Doc. 383), at 23.

[68] *See*, Defendants' Responses to Plaintiffs' Undisputed Material Facts, Fact ¶256, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment*  (Doc. 383), at 115.

50.     In his deposition,[69] Defendant Beerman repeatedly testified that he "didn't

know" and/or "could not recall" the answers to questions concerning the facts related to

this action. For example, Mr. Beerman testified that he didn't know if the answer to

Interrogatory 20 was correct "because I can't remember. That may or may not be true, I

don't know." *Id*. at 25:14-26:4; that he didn't know if the answer to Interrogatory No. 3

was accurate because "I can't recall if our process was to go through risk on subpoenas or

not. So I'm not sure I can answer that." *Id*. at 26:18-27:8; that he didn't recall if risk

management ever stopped him from producing a record, *Id*. at 28:1-3; that he didn't

remember the normal workflow for obtaining records from pathology, *Id*. at 28: 4-6; that

he didn't know  and could not remember if something from the pathology lab would first

go to the tumor registry, *Id*. at 31:7-32:14; that he didn't recall the procedure when

medical records were subpoenaed, *Id*. at 34:6-12; that he didn't recall the procedure when

Safe and Healthy Families got involved, *Id*. at 34:13-34:22; 40:1-14; that he didn't know

if risk management made a privilege log of documents they did not produce, Id. at 37:24-

39:15; that he would have remembered whether medical records went to Safe and

Healthy Families in child abuse cases "but I don't remember now." *Id*. at 41:7-24; that he

couldn't remember the protocol when medical records were requested by a department as

to how the request was logged, *Id*. at 43:10-23; 44:2-19. Defendants' counsel admitted

that Defendant Beerman so testified, but objected that "this fact or series of facts are not

---

[69] Deposition of William Beerman, January 21, 2013. ([Doc. 364-3](#))

relevant or material to the Motion for Summary Judgment before the Court in this matter."[70]

51.     During his deposition,[71] when asked if there was a particular procedure in the Medical Records Department when a prosecutor was requesting medical records by subpoena and the case involved child abuse, Defendant Beerman testified "I'm sure there was. I don't remember what it was." *Id*. at 35:2-18. Defendant Beerman testified that at the time, he would have known the procedures, *Id*. at 36:1-18, and that "There are things that I would have understood back then that I've forgotten now." *Id*. at 36:19-37:2.

52.     During Defendant Beerman's deposition (Doc. 364-3), Mr. Dahlquist stated that the responses to Plaintiffs' interrogatories to Defendants Beerman and IHC were signed by IHC's risk manager, not by Defendant Beerman, and that "he was an employee of Primary Children's Medical Center and we were responding there." Doc. 364-3, at 26:5-17.[72]

53.     In his deposition (Doc. 364-3), Defendant Beerman testified that he did not know what kind of records would be kept out of a client's file. In an abuse or a rape case, Defendant Beerman testified that the medical records he could remember receiving were

---

[70] *See,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Fact ¶257, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its* (sic) *Motion For Summary Judgment* (Doc. 383), at 115-116.

[71] Deposition of William Beerman, January 21, 2013. (Doc. 364-3)

[72] *See,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Fact ¶260, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 117.

"little to none," and that "I can't say with clarity.  I can't really remember." More fully, he

testified: [73]

> Q.     So you wouldn't know what kinds of records they
>        could and could not withhold?
> A.     [by Mr. Beerman] Another department typically
>        oversaw that function.  And if it didn't make it to us,
>        we managed what we got.
> Q.     What other department would have seen those?
> A.     Again, I can speculate on my memory of it, if that
>        helps.
> MR. DAHLQUIST: Just do the best you can.
> Q.     Yeah, to the best of your ability.
> A.     Some folks in the emergency room housed those type
>        of records.
> Q.     And what folks were those?
> A.     Her name was Lori.  She was a manager.  I don't know
>        what she did with those records or how she accounted
>        for them.
> Q.     Was it Lori Frasier?
> A.     I can't remember.  I think I would know if you told me,
>        but that's not ringing a bell.
> Q.     What kind of records would you expect to get on a
>        rape case or abuse case in the medical records?
> A.     From my memory, little to none.  I mean, there was
>        information in the record on that type of a case, but
>        probably -- I can't say with clarity.  I can't really
>        remember.
> Q.     Would you get, like, the ER admission note?
> A.     Yes.  I think -- if I recall, we would get generic
>        information, but we would not get information that
>        probably dealt with who may be involved or notes that
>        would implicate another person, that if someone ever
>        got ahold of the record without subpoena, that kind of
>        thing.
> Q.     Would you get things like labs?
> A.     I assume we did.
> Q.     How about pathology reports?
> A.     I would assume that we did.

---

[73] *See,* Beerman Deposition, Doc. 364-3, at 13:23-15:20.

> Q.     So the type of records that you wouldn't receive then
>        would be the type of records that would actually
>        implicate somebody in a crime?
> A.     To my memory, yes.
> Q.     And a pathology report wouldn't be something that
>        would implicate any person in a crime; is that correct?
> A.     I don't think I could answer that.  I'm not a pathologist.
>        I have no idea.

*Id.*

Defendants' counsel do not dispute that Defendant Beerman so testified, but objected that

"This fact or series of facts are not relevant or material to the Motion for Summary

Judgment before the Court in this matter", without stating any grounds for the

objection.[74]

54.    Although Defendant Beerman was responsible for the medical records and

the medical records are central to any abuse investigation, he was not aware of IHC

contract with the state to investigate child abuse cases. When asked about his knowledge

about the role or his role in the investigation of child abuse cases in his deposition (Doc.

364-3), counsel for Defendants objected.  In particular, Defendant Beerman testified:

> Q.     Do you understand that the -- what's your
>        understanding -- I'm sorry.  What's your understanding
>        of the contract with the state in child abuse cases that
>        Primary Children's had?
> A.     I have no understanding of it.
> Q.     Did you understand that there was a contract with the
>        state?
> A.     No.

---

[74] *See,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Fact ¶269,
*William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its
(sic) Motion For Summary Judgment* (Doc. 383), at 119-121.

Q.      Do you understand that the hospital does pursue or
        assist in the pursuit of child abuse cases; correct?
        MR. MORSE:  Objection to foundation.
        MR. DAHLQUIST:  Don't guess.
A.      I'm not sure what you are asking.  I'm sorry.
Q.      What is your understanding about Primary Children's
        Medical Center's duties in a child abuse case?
        MR. MORSE: Same objection.
A.      We treat the patients when they come in.  I'm sorry.
        I'm not really sure what you are asking so...
        MR. DAHLQUIST:  That's okay.
Q.      You understand that Primary Children's Medical
        Center investigates and assists in the investigation of
        child abuse cases?
        MR. MORSE:  Objection, lack of foundation.
A.      Can you say that again?
Q.      You understand that Primary Children's Hospital
        investigated and works with the police department in
        investigating child abuse cases?
        MR. DAHLQUIST:  Objection, calls for legal
        information.  If you understand the question, go ahead
        and answer.
A.      I didn't know that the hospital did investigative work.
        I know the hospital probably provided information to
        law authorities to do theirs, but I'm not aware that the
        hospital itself did investigations. [75]

Defendants' counsel admits that Defendant Beerman so testified, but objected that such

facts are not relevant or material to Defendants' Motion for summary judgment, without

stating any grounds for the objection. [76]

      55.    In his deposition, Defendant William Beerman testified:[77]

---

[75] *See,* Beerman Deposition, Doc. 364-3, at 16:8-17:21.

[76] *See,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Fact ¶270,
    *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its
    (sic) Motion For Summary Judgment* (Doc. 383), at 121-122.

[77] *See,* Beerman Deposition, Doc. 364-3, at 19:11-15.

> Q.     Would you -- if you are noticing that a discharge
>        summary is not there and that person requested the
>        record, would you pursue and find that missing record?
> A.     We probably would, yeah.

Defendants' counsel admitted that Defendant Beerman so testified but objected that such

facts are not relevant or material to Defendants' Motion for summary judgment, without

stating any grounds for the objection.[78]

56.     In his deposition (Doc. 364-3), Defendant Beerman testified he could not

remember what was supposed to be contained in a medical record:[79]

> Q.     What is your understanding of what is supposed to be
>        in a medical records file?
> A.     I'm probably not going to be able to give a
>        comprehensive answer because it's been eight years.  I
>        remember very elementary things like knowing that
>        there would be lab notes, knowing that there would be
>        nursing notes, knowing that there would be a discharge
>        summary, knowing that there would be an H and P.
>        There's probably a list a mile longer than I can
>        remember that I used to work with, but I just don't
>        really remember anymore. (Id.)
> Q.     And the staff, when they work with that list, do you
>        have a copy of that list?  Do you --
> A.     I don't recall if I had a copy or not at the time. (Id.)

---

[78]  *See,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Fact ¶271,
*William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its
(sic) Motion For Summary Judgment*  (Doc. 383), at 122.

[79]  *See,* Beerman Deposition, Doc. 364-3, at 19:21-20:15.  *See also,* Defendants'
Responses to Plaintiffs' Undisputed Material Facts, Fact ¶272, *William Beerman's and
IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For
Summary Judgment* (Doc. 383), at 122-123.

34

Defendants' counsel admitted that Defendant Beerman so testified but objected that such facts are not relevant or material to Defendants' Motion for summary judgment, without stating any grounds for the objection.[80]

57.     In his deposition (Doc. 364-3), Defendant Beerman testified he could not recall the roles that each department played in obtaining records for a criminal investigation:[81]

> Q.     In a criminal investigation, would other physicians and other people have access to a medical record?
> A.     I can't remember.  There was one more group. Insurance company would have asked us at some point, for billing purposes and that kind of thing.
> Q.     Would Safe and Healthy Families also?
> A.     Probably.  I don't remember the department that well, but I remember that name.
> Q.     And they would have access to those records?
> A.     I can't remember.  I want to say yes, but I literally can't remember.  So I don't know if they would have worked through risk or come through us.  I don't remember.
> Q.     Do you know who would know that?
> A.     Probably most anybody working in that position now that is currently active in that role that hasn't been gone eight years.

Defendant's counsel admits that Defendant Beerman so testified, but objected that such facts are not relevant or material to Defendants' motion for summary judgment.[82]

---

[80] *Id.*

[81] *See,* Beerman Deposition, Doc. 364-3, at 23:5-23. *See also,* Beerman Deposition, Doc. 364-3, at 19:21-20:15.  *See also,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Fact ¶273, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 123.

[82] *Id.*

58.     In his deposition, Defendant Beerman testified in numerous additional

particulars, that he could not recall the answers to questions regarding the facts

underlying the facts of this case. Defendants' counsel did not dispute that Defendant

Beerman so testified but objected to the relevance of these facts to Defendants' motion

for summary judgment, without stating any grounds for the objection.[83]

59.     On January 31, 2013, the Court entered a Minute Entry (Doc. 286),

granting *Plaintiffs' Motion for Leave to File Second Amended Complaint* (Doc. 235),

which had been previously filed on September 8, 2012. (Doc. 235, Doc. 236), and

*Plaintiffs' Second Amended Complaint* was filed on February 1, 2013. (Doc. 288)

60.     On February 28, 2013, Mr. Dahlquist, Mr. Wallace and Mr. Johnston filed

*Defendant William Beerman and IHC Health Service Inc. Answer to Plaintiffs' Second*

*Amended Complaint and Jury Demand.* (Doc. 305)

61.     In this *Answer*, Defendants' counsel represent to the Court and the

Plaintiffs that Defendant Beerman denied, specifically denied, denied for lack of

information and admitted, various allegations of Plaintiffs' Second Amended Complaint.

*Id*.  On information and belief, Defendants' counsel knew these representations were

false and misleading at the time they were made, because Defendants' counsel never

discussed these matters with Defendant Beerman to obtain his true responses. Thus,

Defendants' counsel did not provide Defendant Beerman's true responses to Plaintiffs'

---

[83] *See,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Fact ¶¶273-288,
*William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its
(sic) Motion For Summary Judgment* (Doc. 383), at 123-134.

allegations and fabricated Defendant Beerman's responses to duplicate the responses of Defendant IHC.

62.     On March 15, 2013, Mr. Dahlquist, Mr. Wallace and Mr. Johnston filed *William Beerman's and IHC Health Services, Inc. ("Intermountain")'s Motion for Summary Judgment and Supporting Memorandum*, seeking dismissal or summary judgment on Plaintiffs' claims against Defendant William Beerman and Defendant IHC. (Doc. 343)

63.     In support of *William Beerman's and IHC Health Services, Inc. ("Intermountain")'s Motion for Summary Judgment*, Mr. Dahlquist, Mr. Wallace and Mr. Johnston submitted as Exhibit H, the *Affidavit of William Beerman* (Doc. 343-8), to support their purported "undisputed facts"[84] and argument that Defendant Beerman did not act as a final policymaker for Defendant IHC,[85] one of the bases on which Plaintiffs asserted Defendant IHC's §1983 liability in this action.[86]

64.     In Defendant Beerman's Affidavit, Defendants' counsel did not state any adequate facts to establish Defendant Beerman's competence to testify to the matters stated in his Affidavit as required pursuant to F.R.Civ.P.56(c)(4).[87] Defendant Beerman

---

[84]  *See*, ¶¶39-57, "Facts", *William Beerman's and IHC Health Services, Inc. ("Intermountain")'s Motion for Summary Judgment*, (Doc. 343), at 22-25.

[85]  *See*, Point VIII, Argument, *William Beerman's and IHC Health Services, Inc. ("Intermountain")'s Motion for Summary Judgment*, Doc. 343, at 49-51.

[86]  *See*, Point III, VIII, Argument, *Plaintiffs' Memorandum In Opposition To Defendants IHC's and Beerman's Motion for Summary Judgment* (Doc. 364), at 209, 233-237.

[87]  F.R.Civ.P.56(c)(4) provides that: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible

states only that "I am …competent in all regards to state what is stated herein" (*Affidavit of William Beerman* (Doc. 343-8), ¶2, at 3).

65.    In Defendant Beerman's Affidavit, Defendants' counsel did not state any adequate facts to establish that the statements in the Affidavit were made on Defendant Beerman's personal knowledge as required pursuant to F.R.Civ.P.56(c)(4). Conversely, the Affidavit states that "I, William Beerman, being duly sworn, testify and state as follows in accordance with *my best knowledge, recollection and belief*" and that "I state the following of my own personal knowledge *unless the content or statements indicate otherwise*"[88] (emphasis supplied), making it impossible to discern which statements in Defendant Beerman's Affidavit, if any, are actually stated on "personal knowledge."[89]

66.    Plaintiffs objected to the admissibility of Defendant Beerman's Affidavit to support his motion for summary judgment on the grounds that it was inadmissible to support a motion for summary judgment under Rule 56 (c)(4), on the grounds that the Affidavit did not show it was based on personal knowledge or show that Defendant Beerman was competent to state the facts set forth in his Affidavit.[90]

---

in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

[88] *See*, Introduction and ¶3, Affidavit of William Beerman (Doc. 343-8), at 2-3.

[89] *See*, Plaintiffs Response to ¶¶39-through the second paragraph numbered "57," *Plaintiffs' Memorandum In Opposition To Defendants IHC's and Beerman's Motion for Summary Judgment*, (Doc. 364), at 54-94; *See also*, Argument Point XII(B)(3), at 260.

[90] *See,* Plaintiffs' Response To Defendants' Facts 39-57, under "Objections", *Plaintiffs' Memorandum In Opposition To Defendants IHC's and Beerman's Motion For*

67.     In replying to the "undisputed facts" set forth by Plaintiffs in opposition to

Defendant Beerman's and IHC's Motion for Summary Judgment, Defendants counsel,

Mr. Dahlquist, Mr. Wallace and Mr. Johnston, set forth numerous factual assertions

purporting to be those of Defendants Beerman and IHC that are nothing more than

unsworn statements of Defendants' counsel, which are inadmissible to dispute Plaintiffs'

"undisputed facts" under F.R.Civ.P.56(c)(1)(A).[91] These responses[92] are prefaced with

the phrase "These defendants …" or "Defendants Intermountain and Beerman admit…" ,

suggesting that the responses are actually responses of Defendants Beerman and IHC,[93]

but these representations are unsupported by any declaration or affidavit of Defendant

---

*Summary Judgment*, (Doc. 364), at 54-93; *See also*, Point XII (B)(3) "Culpability",
Argument, *Id.*, at 260.

[91] F.R.Civ.P.56(c)(1)(A) states that "A party asserting that a fact cannot be or is
genuinely disputed must support the assertion by: (A) citing to particular parts of
materials in the record, including depositions, documents, electronically stored
information, affidavits or declarations, stipulations (including those made for purposes
of the motion only), admissions, interrogatory answers, or other materials."

[92] *See*, ¶¶ 2-4, 8, 10, 13- 17, 19, 20, 21, 22, 26, 29, 32, 34, 35, 38, 41, 47, 54, 60, 63, 75-
76, 84, 86, 91, 132, 178, 186-189, 193, 198, 205, 222, 229, 236, 252, 254, 255, 264,
267, 305, Defendants IHC's and Beerman's Response to Plaintiffs' Undisputed
Material Facts, *William Beerman's and IHC Health Services, Inc.'s Reply
Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 11-
141.

[93] *See*, e.g., ¶¶ 6, 8, 13- 15, 17, 25-26, 41, 130, 132, 193, 205, 211, 222, 229, Defendants
IHC's and Beerman's Response to Plaintiffs' Undisputed Material Facts, *William
Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic)
Motion For Summary Judgment* (Doc. 383), at 13-103

39

Beerman or any designated IHC representative,  required to support or dispute facts in a summary judgment motion under F.R.Civ.P.56(c)(4).[94]

68.     In replying to Plaintiffs' undisputed facts in their Reply Memorandum In Support of Defendants Beerman's and IHC's motion for summary judgment, Defendants' counsel failed to admit or deny most of "undisputed material facts" Plaintiffs asserted in opposition to the motion, based on improper objections that the asserted facts were not relevant to the motion. These unauthorized objections were insufficient to dispute Plaintiffs' asserted facts in opposition to Defendants IHC's and Beerman's Motion for Summary Judgment under F.R.Civ.P.56(c)(2), which only authorizes objections to asserted facts supporting or opposing summary judgment, on the ground that "a fact cannot be presented in a form that would be admissible in evidence."[95]

69.     On October 1, 2013, the Court heard oral argument on Defendant's IHC's and Beerman's Motion for Summary Judgment. During the hearing, Defendant Beerman's counsel argued that Defendant Beerman should be granted summary judgment, stating:

---

[94] F.R.Civ.P.56(c)(4) provides "Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

[95] *See,* Defendants' Objections to Plaintiffs' Undisputed Material Facts, Plaintiffs' Facts 38, 41, 47, 48, 54, 55, 56, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74,75,76, 77, 78, 81-129, 135-174, 176, 178, 182, 183, 184-185, 190, 194, 196, 200, 201-210, 212-215, 223-235, 237, 241-245, 248-251, 257, 258-259, 262-263, 269-288, 292-300, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 30-138.

> Mr. Beerman has personnel under him. He testified in his
> deposition that he does not take a personal role in providing
> medical records, he even named the type of personnel, and I
> think he gave one name of one witness who may have been
> on his staff at that time, that long time ago, who provided
> medical records. He was not personally involved. [96]

70.    In the October 1, 2013 hearing, Plaintiffs' counsel argued that Defendant

Beerman should not be granted summary judgment where his counsel:

A.    Failed to contact Defendant Beerman during the course of the litigation, to

respond to Plaintiffs' Complaint, or to make his Initial and subsequent Disclosures, or to

provide responses to Plaintiffs' discovery requests, thus failing to preserve or present

Defendant Beerman's evidence in this case to the Court and Plaintiffs in the pleading and

discovery phases of this litigation prior to Defendant Beerman's deposition;[97]

B.    Fabricated Defendant Beerman's responses to Plaintiffs' original and

amended Complaints, misleading the Court and Plaintiffs in this case to believe that

Defendant Beerman had substantial knowledge, information and documents concerning

this case;[98]

C.    Fabricated Defendant Beerman's responses to Plaintiffs' four sets of

discovery requests, misleading the Court and Plaintiffs in this case to believe that

---

[96] *See,* Transcript of Hearing on Motions for Summary Judgment, October 1, 2013,
   **Plaintiffs' Exh. 8**, at 100:25-101:6.

[97] Transcript of October 1, 2013 Hearing re MSJs, **Plaintiffs' Exh. 8**, at 100:2-14;
   103:10-104:7.

[98] Transcript of October 1, 2013 Hearing re MSJs, **Plaintiffs' Exh. 8**, at 102:23-103:9.

Defendant Beerman had substantial knowledge, information and documents concerning this case;[99]

      D.    Ambushing Plaintiffs' counsel in Defendant Beerman's deposition with Defendant Beerman's testimony that Defendants' counsel had never contacted him during the course of the litigation, and with Mr. Dahlquist's admission that they had fabricated all of Defendant Beerman's responses to pleadings, his disclosures and his responses to Plaintiffs' prior discovery requests;[100]

      E.    Taking advantage of their careful cultivation of Defendant Beerman's loss of memory concerning the events of this case, by using Defendant Beerman's spoiled deposition testimony to argue there was insufficient evidence to support Plaintiffs' claims against Defendant Beerman.[101]

      71.    Subsequently, the Court granted Defendant Beerman's motion for summary judgment[102] based on the Court's conclusion that "There's no evidence, as I understand it, that Mr. Beerman was involved in any way in the subpoena or that he was aware of Dr. Frasier's request in any way. … If there were evidence that Mr. Beerman knew about it, told somebody to ignore it, knew about it, chose to do nothing. I mean there's just no

---

[99] Transcript of October 1, 2013 Hearing re MSJs, **Plaintiffs' Exh. 8**, at 103:10-104:7.

[100] Transcript of October 1, 2013 Hearing re MSJs, **Plaintiffs' Exh. 8**, at 103:14-104:7.

[101] Transcript of October 1, 2013 Hearing re MSJs, **Plaintiffs' Exh. 8**, at 102:14-104:7.

[102] *See,* Order Granting In Part And Denying In Part Motions For Summary Judgment**,** Doc. 392, at 2. *See also,* Transcript of October 1, 2013 Hearing re MSJs, **Plaintiffs' Exh. 8**, at 106:3-4.

evidence at all that I can see that he was in any way involved in this…" [103] The Court

reserved the issue of whether to grant sanctions against Defendants' counsel based on

their alleged misconduct. [104]

72.    In *IHC's and Beerman's Amended Answer to Plaintiffs' First Amended*

*Complaint* (Doc. 184), Defendants' counsel denied Plaintiffs' state action allegations in

paragraph ¶42 of Plaintiffs' First Amended Complaint. [105]

---

[103] Transcript of October 1, 2013 Hearing re MSJs, **Plaintiffs' Exh. 8**, at 97:14-17;
99:22-100:1.

[104] Transcript of October 1, 2013 Hearing re MSJs, **Plaintiffs' Exh. 8**, at 106:4-7.

[105] *See,* ¶23, Doc. 184, at 6; ¶42, Doc. 79, at 10-15.

## ARGUMENT

**I       THE COURT SHOULD IMPOSE APPROPRIATE SANCTIONS ON DEFENDANTS' COUNSEL FOR COMMITTING A FRAUD ON THE COURT AND PLAINTIFFS, FOR DISCOVERY ABUSE, FOR VIOLATING THE RULES OF CIVIL PROCEDURE AND FOR VEXATIOUSLY AND UNREASONABLY MULTIPLYING THE PROCEEDINGS AND EXPENSE IN THIS ACTION**

"Fraud on the court" is that "species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993). An attorney's "loyalty to the Court, as an officer thereof, demands integrity and honest dealing with the Court [and] when he departs from that standard in the conduct of a case, he perpetrates fraud on the Court." *Id.,* citing 7 Moore's Federal Practice, §60:33. A plan or scheme is not required for finding "fraud on the court". "Reckless disregard for the truth is sufficient." *Id.,* at 352-353. *See also, Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995) (holding that it is not required to establish that fraud altered the outcome of the case. It is sufficient that prejudice has occurred.)

As demonstrated in Plaintiffs' supporting facts, during the entire seven years this action has been litigated, counsel for Defendants Beerman and IHC, including Mr. Dahlquist, Mr. Wallace, Mr. Johnston and Mr. Hardy, systematically and deliberately perpetrated a fraud on this Court and Plaintiffs and repeatedly violated and abused the Federal Rules of Civil Procedure relating to pleadings and discovery.

44

Defendants' counsel failed to preserve Defendant Beerman's information and documents in this case, destroyed relevant documents, and fabricated Defendant Beerman's Answers to Plaintiffs' original and Amended Complaints, his Initial Disclosures and subsequent disclosures, and Defendant Beerman's responses to Plaintiffs' First, Second, Third and Fourth Sets of Discovery, which included interrogatories and requests for production of documents addressed to Defendant Beerman. Despite their fabrication of these matters, Defendants' counsel certified that Defendant Beerman's responses were complete and correct, in order to mislead the Court and Plaintiffs to believe that Defendant Beerman was in possession of substantial knowledge, information and documents concerning this case, so that Plaintiffs would not look for other potential Defendants or sources of the evidence Defendants' counsel represented Defendant Beerman possessed.

Additionally, Defendants' counsel committed a fraud on this Court and Plaintiffs by (1) bringing and opposing dispositive motions in this case based on the purported evidence of Defendant Beerman they fabricated and failed to preserve; (2) providing a bad faith affidavit of Defendant Beerman; and (3) by failing to comply with the rules for presenting and supporting a motion for summary judgment, which is the subject of a separate motion for sanctions against Defendants' counsel now pending before the Court.

By engaging in this conduct, Defendants' counsel have vexatiously and unreasonably multiplied the proceedings, fees and expense to the parties in this action (including their own clients), have required the Court and Plaintiffs to spend substantial

45

amounts of time in addressing the misconduct of Defendants' counsel and have severely

prejudiced Plaintiffs in their right to conduct discovery and their right to a fair trial in this

action.

A.    **MISCONDUCT OF DEFENDANTS' COUNSEL**

      1.    **DEFENDANTS' COUNSEL INTENTIONALLY SPOILED DEFENDANT BEERMAN'S EVIDENCE IN THIS CASE WHILE PURPORTING THAT DEFENDANT BEERMAN POSSESSED SUBSTANTIAL KNOWLEDGE, INFORMATION AND DOCUMENTS REGARDING PLAINTIFFS' CLAIMS**

"The obligation to retain discoverable materials is an affirmative one; it requires

that the agency or corporate officers having notice of discovery obligations communicate

those obligations to employees in possession of discoverable materials. *National Ass'n of*

*Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557-558 (N.D. Cal. 1987) It is no

defense that particular employees were not on notice of the duty to preserve evidence or

what kinds of evidence were material to the potential litigation." *See*, *Turnage*, 115

F.R.D. at 557. "To hold otherwise would permit an agency, corporate officer, or legal

department to shield itself from discovery obligations by keeping its employees

ignorant." *Id*. As this Court observed in *Philips Electronics North America Corp. v. BC*

*Technical*, 773 F.Supp.2d 1149 (D. Utah, 2011)

> Spoliation is both the destruction of evidence and/or the
> failure to preserve evidence. As such, litigants have a duty to
> preserve documents or materials…that may be relevant to
> ongoing and potential future litigation. ***In most cases, the***
> ***duty to preserve is triggered by the filing of a lawsuit, but***
> ***that duty may arise even before a lawsuit is filed if a party***
> ***has notice that future litigation is likely***.

*Id*. at 1194-95 (citations and quotations omitted), (Emphasis supplied).

"A failure to preserve evidence may be negligent, grossly negligent, or willful. …
After the duty to preserve attaches, the failure to collect [records] from key players [] [is]
grossly negligent or willful behavior." *Phillips, Id.,* at 1202-1203, citing *The Pension
Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Securities, LLC,* 685
F.Supp.2d 456 (S.D.N.Y.2010). Bad faith "culpability, may not mean evil intent, but
simply signify responsibility and control." *Phillip M. Adams & Associates, L.L.C. v. Dell,
Inc.*, 621 F. Supp.2d 1173, 1192-1193 (D. Utah 2009).

On January 6, 2006, Plaintiffs served notice on Defendant IHC of their intent to
file a medical malpractice case against IHC, Dr. Lori Frasier and Dr. Marion Walker,
regarding the matters giving rise to Plaintiffs' claims in this action.[106] On May 22, 2007,
Plaintiffs filed their original Complaint in this action against Defendants IHC, Beerman
and Frasier in their ***individual capacities***.[107]

After learning of Plaintiffs 'claims, Defendants' counsel had an obligation to issue
a litigation hold on destruction of IHC's documents in this case, including the documents
of Defendants Beerman and Frasier, but apparently did not do so.[108] *See, Philips
Electronics,* at 1195 (Duty to preserve evidence and issue a "litigation hold" arises when
a party "reasonably anticipates litigation").

---

[106]  *See*, ¶1, Plaintiffs' Statement of Facts, at 6.
[107]  *See*, ¶2, Plaintiffs' Statement of Facts, at 6.
[108]  *See*, ¶¶36, 42 and 56, Plaintiffs' Statement of Facts, at 21, 24, 34.

Plaintiffs' Complaint alleged that Defendants IHC's, Beerman's and Frasier's deliberate or reckless failure to turn over the medical records, including the exculpatory Pathology Reports of N.M. to Prosecutor Brickey, and thus deprived Plaintiff Abby Tiscareno of her Fourteenth Amendment right to a fair trial. Thus, the knowledge, information and documents possessed by Defendant Beerman, as Director of Medical Records at PCMC, regarding these matters, were critical to Plaintiffs' understanding of how the events in this case unfolded.

In his deposition on January 21 2013, (Doc. 364-3), Defendant Beerman testified he had never read the Complaint in this case, had never seen Plaintiffs' interrogatories or requests for production of documents or responded to them, despite the fact that he has been available to be contacted by his counsel since leaving IHC in 2005. Defendant Beerman also testified he had no idea what being a defendant in a lawsuit meant and did not know why he and IHC were being sued in this action. When asked about his memory of events in this case, including his own conduct, the conduct of other Defendants IHC and Frasier, and the policies, procedures, rules, regulations and customs regarding medical records at the time the events in this case, Defendant Beerman repeatedly testified that he could not recall the requested information due to the passage of time.[109]

During Defendant Beerman's deposition, Defendants' counsel, Mr. Dahlquist, admitted that Defendant Beerman had never read the Complaint, interrogatories of requests for production of documents directed to him by Plaintiffs, and that Defendants'

---

[109] *See*, ¶¶ 46-47, 50-51, 53, 56, 57, Plaintiffs' Statement of Facts, at 27-36.

counsel had answered these requests based on information Defendants' counsel obtained from other sources.[110]

As Defendant Beerman's deposition testimony indicates, Defendant IHC's and Beerman's counsel not only made no effort to preserve Defendant Beerman's evidence regarding this case, but intentionally sought to lessen Beerman's knowledge and memories of what transpired in this case, by failing to discuss and involve Defendant Beerman in responding to Plaintiffs' original and amended complaints, in failing to involve Defendant Beerman in making Defendants' initial or subsequent disclosures in this case, and in failing to involve Defendant Beerman in responding to Plaintiffs' discovery requests in this action for over six years.

By representing both IHC and Defendant Beerman in this action, IHC's counsel maintained exclusive control over Defendant Beerman, and were subtly, but effectively, able to destroy Defendant Beerman's potential evidence against Defendant IHC and Defendant Frasier by never discussing the case with Defendant Beerman and shuffling him off to the sideline where the passage of time and other events would deprive Plaintiffs and the Court of Defendant Beerman's information and documents.

Defendants' counsel's efforts to deprive Plaintiffs of Defendant Beerman's evidence by failing to collect and preserve such evidences, were maximized by Defendant's counsel's simultaneous and ongoing fabrication of pleadings and discovery

---

[110] *See*, ¶¶ 45, 48-49, 52, Plaintiffs' Statement of Facts, at 26-30.

responses, purporting to be based on the information and documents of Defendant

Beerman, discussed below. These pleading and discovery responses were false and

misled the Court and Plaintiffs to believe that Defendant Beerman possessed substantial

knowledge, information and documents regarding Plaintiffs' claims against all of the

Defendants in this action, on which Plaintiffs could conduct discovery.

### 2. DEFENDANTS' COUNSEL FABRICATED DEFENDANT BEERMAN'S ANSWERS TO PLAINTIFFS' ORIGINAL AND AMENDED COMPLAINTS

F.R.Civ.P.12(a)(1)(A) provides that a "defendant" must serve an answer.

However, Defendant Beerman testified in his deposition on January 21, 2013, that he had

never read the Complaint in this case and that no one from IHC had contacted him about

this action since he left IHC's employment in 2005, as Defendant's counsel admit.[111]

On March 1, 2010, Defendants' counsel filed Defendant Beerman's Answer to

Plaintiffs' First Amended Complaint, purporting to provide Defendant Beerman's denials

and admissions of Plaintiffs' allegations.[112]

Because Defendants' counsel never contacted Defendant Beerman about the

Complaint in this case, they could only have fabricated his Answer to Plaintiffs'

Complaint and amended Complaints.[113] Fabrication of evidence by attorneys is sufficient

evidence of fraud on the court. *Hazel-Atlas Glass Co. v. Hartford-Empire Co*., 322 U.S.

---

[111] *See,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Facts 22, 254, 255, 256, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 23, 113-115.

[112] See, ¶¶14-18, Plaintiffs' Statement of Facts, at 13.

[113] *See*, ¶¶15-21, 39, Plaintiffs' Statement of Facts, at 13-16.

238, 239-242, (1944). "A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel." *Landscape Properties, Inc. v. Vogel*, 46 F.3d 1416, 1422 (8th Cir. 1995).

In the caption and allegations of their original and amended Complaints, Plaintiffs expressly named William Beerman as a party defendant "in his individual capacity."[114] Thus, Defendants' counsel were all on notice Defendant Beerman was being sued "in his individual capacity," as a separate party defendant, and not as an employee of Defendant IHC. Thus, Defendants' counsel's admitted decision not to provide Defendant Beerman with a separate defense in this action, but merely to treat him as an employee of Defendant IHC, is contrary to law and furnishes no excuse for Defendants' counsel's admitted fabrication of Defendant Beerman's Answers to Plaintiffs' First and Second Amended Complaints in this case.[115]

Mr. Dahlquist's self-serving and unsupported assertion that "it was determined early on that he [Defendant Beerman] had no recollection of NM's case,"[116] is belied by Defendant Beerman's deposition testimony (1) that no one from IHC has contacted him about this action since he left IHC in 2005, and the fact that Plaintiffs' Complaint was filed in May, 2007, and that (2) when queried regarding his knowledge of events in this

---

[114] *See*, ¶2, Plaintiffs' Statement of Facts, at 6.

[115] *See,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Facts 22, 254, 255, 256*, William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 23, 113-115.

[116] *Id.*

case in his deposition, Defendant Beerman did not testify that he had no information regarding numerous topics, as Mr. Dahlquist contends, but that he could have provided the information at an earlier time.[117]

Defendants' counsel, Mr. Dahlquist, admits that in the course of this action, Defendants' counsel have "filed responses to pleadings, initial and subsequent discovery disclosures and responses to Plaintiffs' discovery requests, all purporting to present the knowledge, information and documents of Defendant Beerman," but that "it was determined early on that he had no recollection of the NM case… According (sic), counsel consulted with those in the corporate body who in the best position to know the answers to any discovery requests."[118] This justification is without merit. Even assuming Defendant Beerman truly had no information or knowledge to admit or deny the allegations of Plaintiffs' Complaint and amended Complaints,  F.R.Civ.P.12(a)(1)(A) required Defendant Beerman's counsel to set forth Defendant's lack of knowledge and information in *his* Answers.

Defendants' counsel had no authorization to substitute fabricated responses, based on facts or information gleaned from "those in the corporate body who in the best position to know the answers to any discovery requests"[119], whose identities and the factual basis of their purported information, were never disclosed by Defendants'

---

[117] *See*, ¶¶50-51, 56-57, Plaintiffs' Statement of Facts, at 29-30, 34-36.

[118] *See,* Defendants' Responses to Plaintiffs' Undisputed Material Facts, Facts 22, 254, 255, 256, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment*  (Doc. 383), at 23, 113-115.

[119] *Id.,* Fact 254, at 113.

counsel, in responding to Plaintiffs' amended Complaints. For all the Court or Plaintiffs know, Defendants' counsel simply fabricated Defendant Beerman's responses to the allegations of Plaintiffs' original and Amended Complaints, based on their own view of what responses would most assist their defense of Defendant IHC.

**PREJUDICE TO PLAINTIFFS**: It was eminently foreseeable to Defendants' counsel that their conduct in fabricating Defendant Beerman's Answers to Plaintiffs' original and amended Complaints, would mislead Plaintiffs' counsel to believe that the Answers filed by Beerman, as represented Defendant Beerman's denials and admissions to the allegations of Plaintiffs' original and amended Complaints, and that Plaintiffs' counsel would plan their discovery requests to Defendant Beerman based on his purported responses in his Answers.[120]

### 3.   DEFENDANTS' COUNSEL FABRICATED DEFENDANT BEERMAN'S INITIAL DISCLOSURES

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure provides in pertinent part, that "a ***party*** must, without awaiting a discovery request, provide to the other parties" an Initial Disclosure containing the information and documents described in Rule 26(a)(1)(A)(i)(ii)(iii)(iv). Defendants' counsel, Mr. Dahlquist, Mr. Wallace and Mr. Johnston filed Defendant Beerman's Initial and subsequent Disclosures,[121] which were signed by Mr. Dahlquist. Defendants' counsel admit they fabricated Defendant Beerman's Initial and subsequent disclosures from information provided by unidentified

---

[120] *See*, ¶37, Plaintiffs' Statement of Facts, at 22.
[121] *See*, ¶¶31-33, Plaintiffs' Statement of Facts, at 19-20.

persons "within the corporate body."[122] Defendants' counsel knew such misconduct was

a blatant violation of 26(a)(1)(A) which require a "*party*" to provide an Initial Disclosure.

(Emphasis supplied)

**PREJUDICE TO PLAINTIFFS**: Defendants' counsel could obviously foresee

that Plaintiffs' counsel and the Court would be misled to believe that the responses

provided in Defendant William Beerman's Initial Disclosure were, in fact, the responses

of Defendant Beerman, and that Plaintiffs' counsel would fashion subsequent discovery

requests and other discovery based on the facts, information and documents purported to

be disclosed by Defendant Beerman and would forego looking for other defendants and

other sources of the information Defendant Beerman was represented to possess.[123]

### 4. DEFENDANTS' COUNSEL FABRICATED DEFENDANT BEERMAN'S RESPONSES TO PLAINTIFFS' DISCOVERY REQUESTS

Rule 33(b) (1)(A) provides that interrogatories must be answered "by the *party* to

whom they are directed." Similarly, Rule 34(b)(2)(A) provides that "The *party* to whom

the request is directed must respond in writing within 30 days after being served."

(Emphasis supplied)

Defendants' counsel, Mr. Dahlquist, Mr. Wallace and Mr. Johnston, admit they

fabricated Defendant Beerman's responses to Plaintiffs' four sets of discovery

---

[122] *See*,[Defendants' Responses] to Plaintiffs' Undisputed Material Facts, Facts 22, 254, 255, 256, *William Beerman's and IHC Health Services, Inc.'s Reply Memorandum Supporting Its (sic) Motion For Summary Judgment* (Doc. 383), at 23, 113-115

[123] *See*, ¶33, Plaintiffs' Statement of Facts, at 20.

requests,[124] which included interrogatories and requests for production of documents
Defendant Beerman, with information Defendants' counsel say they obtained from
unidentified persons "within the corporate body."[125]   However, Defendants' counsel
failed to disclose this fact to Plaintiffs in any of the responses they filed to Plaintiffs'
discovery requests on behalf of Defendant Beerman. For all the Court and Plaintiffs
know, Defendant Beerman's purported answers to Plaintiffs' discovery requests are
nothing more than the unsworn testimony of Defendants' counsel provided under the
guise of discovery responses purported to be supplied by Defendants Beerman. [126]
Defendants' counsel knew that fabricating Defendant Beerman's responses to Plaintiffs'
interrogatories and document requests violated the provisions of Rule 33 and Rule 34,
which require a "party" to respond to discovery requests.

     In *IHC's and Beerman's Response to Plaintiffs' First Discovery*, Defendants IHC
and Beerman admitted that they had previously destroyed documents relevant to
Plaintiffs' claims in this action.[127]   In *Defendants IHC's and Beerman's Response to
Plaintiffs' Third Set of Discovery*, Defendants IHC and Beerman also admitted that other
documents relevant to Plaintiffs' claims had been destroyed.[128]

---

[124] See,¶¶ 35, 38, 40, 41, 44, Plaintiffs' Statement of Facts, at 19-26.

[125] *See*, ¶¶35, Plaintiffs' Statement of Facts, at 19-20.

[126] *See*, fn.411, *supra*, at 35, referring to Defendants IHC's and Beerman's Responses To
    Plaintiffs' First, Second, Third and Fourth Discovery Requests, each indicating in the
    introduction, that they are the responses or answers of Defendants IHC and Defendant
    William Beerman.

[127] *See*, ¶¶36, Plaintiffs' Statement of Facts, at 21-22.

[128] *See*, ¶¶36, 42, 56, Plaintiffs' Statement of Facts, at 24.

**PREJUDICE TO PLAINTIFFS**: Defendants' counsel could also foresee that Plaintiffs' counsel and the Court would be misled to believe that the responses provided to Plaintiffs' discovery requests by Defendants' counsel were, in fact, the responses of Defendant Beerman, and that Plaintiffs' counsel would fashion subsequent discovery requests and other discovery based on these responses, and would not pursue other potential avenues of discovery or defendants. [129] Additionally, Plaintiffs were prejudiced by the Defendants' destruction of documents relevant to their claims against the Defendants.[130]

5. **DEFENDANTS' COUNSEL VIOLATED RULE 26(G) (1) BY MAKING FALSE CERTIFICATIONS THAT THEY HAD PROVIDED DEFENDANT BEERMAN'S COMPLETE RESPONSES TO PLAINTIFFS' DISCOVERY REQUESTS**

F.R.Civ.P. 26(g)(3) relates to an attorney's duty to certify provides, in pertinent part, that that a client has provided all the information and documents available to him that are responsive to the discovery demand, and provides, in pertinent part,

> Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection, must be signed by at least one attorney of record in the attorney's own name or by the party personally.-if unrepresented….By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
> (B) with respect to a discovery request, response, or objection, it is: (i) consistent with these rules and warranted by existing law or by a non-frivolous argument for

---

[129] *See*, ¶¶37, Plaintiffs' Statement of Facts, at 21-22.

[130] *See*, ¶¶36, 42 and 56, Plaintiffs' Statement of Facts, at 21, 24, 34-35.

> extending, modifying, or reversing existing law, or for
> establishing new law; (ii) is not interposed for any improper
> purposes, such as to harass, cause unnecessary delay, or
> needlessly increase the cost of litigation.[131]

By fabricating Defendant Beerman's Initial Disclosures and supplemental

disclosures, and fabricating Defendant Beerman's responses to Plaintiffs' discovery

requests, and signing the same,[132] Defendants' counsel, Mr. Dahlquist, violated Rule

26(g) (1)(A) and (B)(i), in that: (1)  the fabricated  disclosures and discovery responses

were not "complete or correct" because they were not Defendant Beerman's personal

responses; and because (2) the responses were inconsistent with Rules 33 and 34, which

require discovery responses to be provided by a "party."

Defendants' counsel also knew that the fabricated disclosures and discovery

responses were interposed for improper purposes, such as "to harass, cause unnecessary

delay, or needlessly increase the cost of litigation," and to mislead the Court and

Plaintiffs to believe that Defendant Beerman had substantial knowledge, information and

documents regarding Plaintiffs' claims against Defendants IHC and Beerman, to mask

their spoliation of Defendant Beerman's true evidence in this action, and to obtain the

dismissal of Plaintiffs' claims against Defendants IHC and Beerman by engaging in these

egregious tactics.

---

[131]  *See also*, F.R.Civ.P.26 Advisory Committee Note (1983): "[T]he signature certifies
that the lawyer has made a reasonable effort to assure ***that the client*** has provided all
the information and documents available to him that are responsive to the discovery
demand." (Emphasis supplied.)

[132] *See*, Defendants IHC's and Beerman's Initial Disclosures, **Plaintiffs' Exh. 3, 9, 10**
and **11**.

**PREJUDICE TO PLAINTIFFS**:  Because Defendants' counsel signed and certified Defendant Beerman's Initial Disclosure and responses to Plaintiffs' discovery requests as complete, Plaintiffs were further misled to believe that the representations made therein regarding Defendant Beerman's knowledge, information and documents, in this case, were actually those of Defendant Beerman, and to rely on these misrepresentations in conducting discovery of Defendant Beerman in this action.

6. **DEFENDANTS' COUNSEL BROUGHT DISPOSITIVE MOTIONS BASED, IN PART, ON THE EVIDENCE THEY FABRICATED AND RELYING ON DEFENDANT BEERMAN'S LOSS OF EVIDENCE THEY FAILED TO IDENTIFY AND PRESERVE AND BASED ON OTHER INADMISSIBLE AND IMPROPER EVIDENCE**

Defendants' counsel have also filed dispositive motions, including *Defendants' IHC's and Beerman's Motion for Summary Judgment* (Doc. 343), based, in part, on unsworn statements of Defendants' counsel falsely attributed to Defendants IHC and Beerman,[133] and based on evidence Defendants' counsel spoiled by their failure to preserve it. This evidence included an improper Affidavit of Defendant Beerman prepared and submitted by Defendants' counsel, citing his deposition testimony regarding facts concerning Plaintiffs' claims against Defendants that Defendant Beerman could no longer recall.[134] The Affidavit failed to state any adequate facts to show that the facts stated in the Affidavit, other than those quoted from his deposition testimony, were based

---

[133] *See*, ¶67, Plaintiffs' Statement of Facts, at 39-40.
[134] *See*, ¶¶62-63, Plaintiffs' Statement of Facts, at 37-38.

on Defendant Beerman's personal knowledge, or that he was competent to testify to the matters stated. Thus, the Court should find that this affidavit was made in bad faith. [135]

Defendants' counsel also objected to numerous facts with improper objections that were insufficient to dispute such facts.[136] Defendants' counsel also violated numerous other rules relating to the presentation of Defendant Beerman's and Defendant IHC's motion for summary judgment, which are the subject of a separate motion for sanctions.[137]

**PREJUDICE TO PLAINTIFFS**: Following Defendants' counsel's admission that they had fabricated Defendant Beerman's Answer, his disclosures and his responses to Plaintiffs' discovery requests, Defendants Beerman and IHC nonetheless filed *Defendants William Beerman's and IHC's Motion for Summary Judgment*, based on the evidence they had fabricated, and based on other inadmissible evidence. As the result, Plaintiffs' counsel had to spend an inordinate amount of time objecting and responding to this Motion, to expose the fabricated evidence that supported the Motion.

Plaintiffs were further prejudiced in responding to the Motion because Defendants' counsel also relied on Defendant Beerman's loss of memory regarding the facts and circumstances giving rise to Plaintiffs' claims against Defendant Beerman and the other Defendants in this case, which Defendants' counsel had cultivated, by failing to

---

[135] *See*, ¶¶64-66, Plaintiffs' Statement of Facts, at 38-39.

[136] *See*, ¶68, Plaintiffs' Statement of Facts, at 40.

[137] *See, Plaintiffs' Brief re: Order Granting Sanctions Against Counsel for Defendants IHC and Beerman for Failing To Comply With Local Rule 56-1 (b)*, (Doc.394).

perform their duties to identify, preserve and produce Defendant Beerman's evidence at the time Defendants' counsel were initially notified of Plaintiffs' claims.

Additionally, Plaintiffs were fundamentally and irremediably prejudiced because Defendants' counsel had affirmatively represented that Defendant Beerman had substantial knowledge, information and documents regarding Plaintiffs' claims, so that Plaintiffs would not conduct discovery to find this material elsewhere. Given the fact that Defendants' counsel had perpetrated this fraud on the Court and Plaintiffs through seven years of litigation by the time Defendants' counsel filed Defendant Beerman's and IHC's motions for summary judgment, it was too late for Plaintiffs' counsel to obtain Defendant Beerman's spoiled evidence from other sources. Thus, Plaintiffs submit that Defendants' counsel should be deprived of all of the fruits of their egregious misconduct in this case and that the Court should impose appropriate sanctions to punish and deter the misconduct of Defendants' counsel and to remedy the prejudice Defendants' counsel have caused Plaintiffs in the conduct of discovery and preparation for the trial of this action.

7. **DEFENDANTS' COUNSEL BROUGHT DISPOSITIVE MOTIONS BASED ON REPRESENTATIONS THEY KNEW WERE FALSE BASED ON DOCUMENTS IN THEIR POSSESSION THEY HAD NOT DISCLOSED TO THE COURT OR PLAINTIFFS**

Defendants' counsel vexatiously and unreasonably multiplied the proceedings and expense to Plaintiffs, by bringing filing Answers and dispositive motions denying that Defendant Frasier was a dual employee of IHC and the University of Utah, when they

had documents in their possession showing the converse, which Defendants' counsel had not disclosed to Plaintiffs.[138]

In their Answers and dispositive motions, including Defendants' IHC's and Beerman's most recent motion for summary judgment, Defendants' counsel have also persisted in denying Plaintiffs' "state action" allegations and insisting that Defendants IHC, Beerman and Frasier's were only witnesses who were called in the trial of Abby Tiscareno, and had no other involvement in the investigation or prosecution of Abby Tiscareno, despite the fact they had in their possession, the State Contract, showing that Defendants IHC, Beerman and Frasier were all performing contractual duties in the investigation and prosecution of suspected child abuse victims, at all times relevant to the Plaintiffs' claims.[139]

Defendants' counsel knew these representations were false at the time they were made, based on documents in their possession, including the State Contract, showing that Defendants IHC, Beerman and Frasier, were performing delegated duties from DHS/DCFS, to assist these state agencies, in the investigation and prosecution of child abuse cases, as a "sole source" provider of these services.[140]

---

[138] *See*, ¶¶ 19-21, 72, Plaintiffs' Statement of Facts, at 14-16. *See also*, Defendants' Response to Plaintiffs' Fact, ¶32, denying Plaintiff's assertion that Frasier is a dual employee of Defendant IHC and U of U, Defendants' Reply *Memorandum Supporting Defendant William Beerman's and IHC's Motion for Summary Judgment* (Doc. 383), at 27-28.

[139] *See*, ¶¶22-23, Plaintiffs' Statement of Fact, at 16-17.

[140] *See*, ¶¶ 22-27, 29-31, Plaintiffs' Statement of Facts, at 16-19.

**PREJUDICE TO PLAINTIFFS**: As the result of the false representations of Defendants' counsel, Plaintiffs have been repeatedly required to respond to baseless dispositive motions by Defendants' counsel based on their arguments that Defendants IHC, Beerman and Frasier were not engaged in "state action", while Defendants' counsel withheld from the Court and Plaintiffs documents in their possession supporting Plaintiffs' position, vexatiously and unreasonably multiplying the proceedings and the expense to the Plaintiffs in this action.

## B. THE FEDERAL RULES, STATUES AND THE INHERENT POWERS OF THE COURT PROVIDE A BASIS FOR APPROPRIATE SANCTIONS AGAINST DEFENDANTS' COUNSEL

### 1. FEDERAL RULES AND INHERENT POWERS

The *Federal Rules of Civil Procedure* provide the means for a district court to sanction at attorneys and their clients for a variety of inappropriate conduct, including but not limited to Rule 11,[141]  Rule 26,[142] Rule 37[143] and Rule 56(h).[144]

---

[141] The Court may impose sanctions *sua sponte* under F.R.Civ.P.11(c) against an attorney for making false representations to the Court, but the Court must first notify the attorney and provide the attorney with an opportunity to be heard and respond to the allegations. *White v. GM Corp.*, 908 F.2d 675, 686 (10th Cir. 1990). If the court decides to sanction an attorney under Rule 11, the sanction "must be limited to what suffices to deter repetition of the conduct." F.R.Civ.P.11(c)(4).

[142] Under F.R.Civ.P.26(g)(3), improperly certifying a discovery request warrants an "appropriate sanction" which may include and assessment of attorney fees.

[143] The Tenth Circuit has not expressly addressed the issue of whether monetary sanctions may be imposed on attorneys under F.R.Civ.P.37(c), which only speaks of sanctions against "parties", but has upheld monetary sanctions against attorneys under F.R.Civ.P. 37(b) which also speaks only of sanctions against "parties." *See, Law v. NCAA,* 134 F.3d 1438, 1441 (10th Cir. 1998); *Myers v. Colgate-Palmolive Co.,* 26 Fed. Appx. 855, 862 (10th Cir. 2002) (unpublished).

Courts also have inherent power to sanction attorneys and parties. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S.Ct. 2133 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-677, 100 S.Ct. 2455 (1980). A court may sanction bad faith conduct of parties or attorneys perforce of its inherent powers, "even when that conduct could also be sanctioned under the Federal Rules of Civil Procedure or a statute." *Chambers*, 501 U.S. at 50, 111 S.Ct. 2123. Additionally, the fees and expenses awarded need not bear a direct causal connection to particular acts of falsification. Rather, as the Court recognized in *Chambers*, "once a party [or attorney] sets out on a course of bad faith litigation, the court may vindicate itself by requiring the bad faith litigator to pay all of the opposing party's attorney fees and expenses." *Chambers*, 501 U.S. at 56-57.[145]

### 2. 28 U.S.C. §1927

Courts may also sanction attorneys for discovery abuse and other litigation misconduct under 28 U.S.C. §1927. The statute provides that "unreasonable or vexatiously" multiplies the proceedings causing excess costs, expenses and attorney fees

---

[144] Under F.R.Civ.P.56(h), a court may impose sanctions for an Affidavit or Declaration to support a motion for summary judgment the Court finds was filed "in bad faith" after notice and reasonable time to respond, including an order to the submitting party to pay the other party reasonable expenses, including attorney fees incurred as a result, and may also hold the offending party in contempt or impose other reasonable sanctions.

[145] *See also, Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 43 (D.C. Cir. 1986) (once a party embarks on a "pattern of fraud," and "regardless of the relevance of these [fraudulent] materials to the substantive legal issue in the case," this is enough to "completely taint [the party's] entire litigation strategy from the date on which the abuse actually began").

to be incurred by an opposing party.[146] The purpose of 28 U.S.C. §1927 is to allow the

Court "to assess attorney's fees against an attorney who frustrates the progress of judicial

proceedings." *United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992); *Steinert v.

Winn Group, Inc*., 440 F.3d 1214, 1222 (10th Cir. 2006), (holding that §1927 "targets the

vexatious and unreasonable multiplication of proceedings.")

The Tenth Circuit has recognized that §1927 is designed to compensate the

victims of abusive litigation practice, as opposed to Rule 11, which focuses on deterrence

and punishment. Accordingly, certain procedural protections required in Rule 11 do not

apply to sanctions under §1927, *Hamilton v. Boise Cascade Express*, 519 F.3d 1197,

1205 (10th Cir. 2008), and a finding of bad faith is not required:

> Although subjective good faith on the part of a non-attorney
> party appellant may in some instances excuse otherwise
> unreasonable conduct, we are entitled to demand that an
> attorney exhibit some judgment. To excuse objectively
> unreasonable conduct by an attorney would be to state that
> one who acts with 'an empty head and a pure heart' is not
> responsible for the consequences.

*Id*. at 1202, quoting *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 2005) Thus, "any

conduct that viewed objectively, manifests either intentional or reckless disregard of an

attorney's duties to the court, is sanctionable." *Id*.

---

[146] 28 U.S.C. §1927 provides that: Any attorney or other person admitted to conduct
cases in any court of the United States or any Territory thereof who so multiplies the
proceedings in any case unreasonably or vexatiously may be required by the court to
satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred
because of such conduct.

In *Philips Electronics North America Corp. v. BC Technical*, 773 F.Supp.2d 1149 (2011), this Court observed that "Cases across the country confirm that the duty to preserve means action must be taken to preserve evidence, meaning that it is not lost, destroyed, inadvertently or negligently overwritten, or intentionally wiped out, and that it is available to be produced to the other side." *Id.* at 1195. "When such steps are not taken to preserve evidence, "the integrity of the judicial process is harmed and the courts are required to fashion a remedy." *Id.*[147] (Internal citations and quotations omitted)

As this Court observed in *Philips*, the Court has the power to sanction litigants for spoliation of evidence arising from "its inherent power to control the judicial process and litigation; however, that power is limited to action that is necessary to redress conduct that abuses the judicial process.  A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent; (2) the adverse party was prejudiced by the destruction of the evidence; and (3) counsel acted in bad faith." *Id.* at 1196 (Internal citations and quotations omitted).

Although stating that "dismissal is an extreme sanction which is only appropriate in cases involving willful misconduct", this Court concluded in *Philips* that entry of default is an appropriate sanction for spoliation of evidence based on consideration of five factors:

---

[147] "It is difficult to imagine conduct that is more worthy of sanction than spoliation of evidence in anticipation of litigation because that conduct frustrates, sometimes completely, the search for truth. And it creates extra expense in the judicial process in the effort to uncover that which has been destroyed." *Samsung Electronics Co., Ltd. V. Rambus, Inc.*, 439 F. Supp.2d 524, 535 (E.D. Va. 2006)

> (1) the degree of actual prejudice to the [non-culpable party];
> (2) the amount of interference with the judicial process; (3)
> the culpability of the litigant; (4) whether the court warned
> the party in advance that [default] of the action would be
> likely sanction for non-compliance; and (5) the efficacy of
> lesser sanctions.

*Philips*, at 1155,  quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).[148]

In *Webb v. Claimetrics Management, LLC*, 412 Fed. Appx. 107 (10th Cir. 2011), (unpublished), the Tenth Circuit also approved this Court's use of the *Ehrenhaus* factors in determining that the dismissal of an action with prejudice was an appropriate sanction for a plaintiff's misrepresentations concerning diversity jurisdiction which the Court analyzed as a "fraud on the Court." *Id*. at 108-109.

## C. CONSIDERATION OF THE EHRENHAUS FACTORS SUPPORTS THE IMPOSITION OF SEVERE SANCTIONS AGAINST COUNSEL FOR DEFENDANTS IHC AND BEERMAN

In reviewing whether sanctions are appropriate, the court should consider who acted in bad faith, the party or the attorney, and to what degree. "[I]f the fault lies with the attorney, that is where the impact of the sanction should be." *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987).  Here, there is no evidence that Defendant Beerman participated in the fraud on the court or the discovery abuse or rule violations perpetrated by Defendants' counsel. Although Defendant IHC is not directly implicated in Defendants' counsel's willful and bad faith misconduct in this case,

---

[148]  In *The Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738-739 (10th Cir. 2005), the Tenth Circuit held that a district court's failure to address the *Ehrenhaus* factors on the record "amounts to an abuse of discretion."

Defendant IHC has undoubtedly benefitted from their counsel's spoliation of Defendant Beerman's information and documents in this case, and the fabricated evidence Defendants' counsel have injected into every phase of this proceeding. Thus, the Court should fashion appropriate sanctions to deprive Defendant IHC of the benefit of their attorney's gross misconduct.  Otherwise, "[L]itigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence is excluded while their lawsuit continues." *Pope v. Federal Express Corp.*, 138 F.R.D. 675, 683 (W.D. Mo. 1990).

Here, a review of the *Ehrenhaus* factors, demonstrates that severe sanctions are appropriate remedy to redress the deliberate and willful misconduct of Defendants' counsel in this case.

### 1. THE DEGREE OF PREJUDICE TO THE NON-CULPABLE PARTY

As IHC's Director of Medical Records at IHC, Defendant Beerman had administrative responsibilities and duties for the collection, maintenance, storage, retrieval and production of medical records of alleged victims in child abuse cases investigated by IHC and its staff at PCMC pursuant to the State Contract. Thus, Defendant Beerman was in a unique position to obtain and possess first-hand knowledge, information and documents relevant to the proof of Plaintiffs' claims against Defendants IHC, Beerman and Frasier, which Plaintiffs cannot obtain from other Defendants or witnesses.

67

Based on Defendant Beerman's Answers and Initial Disclosures fabricated by Defendants' counsel, suggesting that Defendant Beerman had substantial personal knowledge, information and documents concerning the Plaintiffs' case, Plaintiffs reasonably anticipated that Defendant Beerman could testify in discovery and trial regarding:

a.      Defendant Beerman's duties, responsibilities and conduct in the case of NM.;

b.      The duties, responsibilities and conduct of Defendant Beerman's subordinates in the Medical Records Department in the production of the medical records of NM.;

c.      The duties, responsibilities and conduct of Defendants IHC, Beerman, Frasier and other individuals in the production of NM's medical records;

d.      The policies, procedures, rules, regulations and de facto customs of IHC, PCMC, CSHF, relating to the provision of NM's medical records to Prosecutor Brickey;

e.      The interplay between CHSF and PCMC's Medical Records Department in the production of medical records of child abuse cases investigated at PCMC;

f.      The handling of Prosecutor Brickey's requests for NM's medical records and the Defendants' failure to produce the exculpatory pathology evidence;

g.      The investigation, if any, regarding PCMC's highly publicized failure to turn over the exculpatory Pathology Reports to Prosecutor Brickey for his use in the prosecution of Plaintiff Abby Tiscareno;

68

h.      The reasons the exculpatory Pathology Reports of NM were not turned over to Defendant Brickey by Defendants IHC, Beerman and Frasier;

i.      The actions of Defendants IHC, Beerman and Frasier in response to the discovery of the exculpatory Pathology Reports in NM's case; and regarding

j.      The training and supervision provided to Defendant Beerman and other IHC staff, including Beerman's subordinates, in fulfilling Defendant IHC's *Brady* duty to turn over exculpatory medical records generated in the investigation of child abuse cases at PCMC, and in responding to requests from the prosecutor for medical records of alleged child abuse victims; and

k.      Any documents pertinent to the foregoing issues. [149]

In addition, "the general rule is that bad faith destruction of evidence relevant to proof of an issue at trial gives rise to an inference that production of the evidence would have been unfavorable to the party responsible for its destruction." *Philips*, at 1202. [150]

Unlike a party's failure to preserve some discrete items of evidence that can be cured by obtaining the evidence from some other source, or by an adverse inference instruction, the loss of Defendant Beerman's information and documents regarding the events and the conduct of the Defendants giving rise to this action, cannot be duplicated

---

[149]  In *Philips*, this Court recognized that a case can "turn on just a few key documents." *Id*. at 1156.

[150]  *See also, Anderson v. Cryovac, Inc*., 862 F.2d 910, 925 (1st Cir. 1988), where the Court stated: "In the case of intentional misconduct, …where discovery material is deliberately suppressed, its absence can be presumed to have inhibited the unearthing of further admissible evidence adverse to the withholder, that is, to have substantially interfered with the aggrieved party's trial preparation."

from other sources or cured by an adverse inference instruction. *Hart v. Dillon*, 2013 WL

3442555, *2, (D. Colo. 2013) (Failure to preserve a recording by a key player after the

duty to preserve attaches is grossly negligent or willful behavior meriting sanctions.)

As this Court observed in *Philips*, "There is no way to know exactly what

evidence [Defendants' counsel] failed to [preserve]. Thus, there is no way to know how

to place Philips back into a position where they would not suffer significant prejudice…"

[151] and "ongoing discovery will not change that fact."[152] What can be said in this case, is

that Defendants' counsel's spoliation of Beerman's true information and documents, and

the Defendants' counsel's fabrication of evidence in Defendant Beerman's Answers,

disclosures and discovery responses, have put Plaintiffs in the position of prosecuting this

lawsuit with incomplete information.

Plaintiffs are also now in the position of facing trial in a lawsuit that is pervaded

with false evidence, and Plaintiffs will have to expend "enormous additional effort and

expense to ferret out [Defendants' counsel's] lies and to double check every piece of

information." Moreover, given their wholesale fabrication of evidence in this case,

Plaintiffs have "absolutely no confidence that [Defendants' counsel] would not attempt to

offer additional false evidence at trial." *Garcia v. Berkshire Life Ins. Co. of America*, 569

F.3d 1174, 1179 (10th Cir. 2009)

_____

[151] *See, Philips*, 773 F. Supp.2d 1149, at1212.
[152] *Id*., at 1215.

70

Defendants' counsel have spoiled Defendant Beerman's evidence forever and their massive fabrication of Defendant Beerman's evidence in this case also means that none of the pleadings, disclosures or discovery responses Defendants' counsel have produced on behalf of Defendant IHC during the past seven years of litigation can be relied upon by the Court or Plaintiffs as authentic. Here, as in *Garcia*, the risk that the jury might find in favor of Defendant IHC based on the evidence its counsel fabricated and failed to preserve may be simply too great to allow the case to proceed without entering the default of Defendant IHC, or without striking its defenses as a sanction for its counsel's massive discovery abuse and fraud on the Court. *See, Garcia v. Berkshire Life Ins. Co. of America*, 2007 WL 6757307 (D. Colo 2007), at *9.

## 2.  INTERFERENCE WITH JUDICIAL PROCESS

As the Court is aware, this case has experienced protracted delays in the commencement of discovery due to the Defendants' successive motions to dismiss and for summary judgment, the qualified immunity appeal of Defendant Anderson, and Defendants' repeated motions to stay and limit discovery.[153]  Added to the inherent prejudice in not being able to conduct discovery during the pendency of these motions, the additional prejudice to Plaintiffs caused by Defendants' counsel's intentional failure preserve Defendant Beerman's evidence, and their egregious misconduct in fabricating evidence in Beerman's disclosures and discovery responses, has substantially interfered

---

[153]

with the integrity of these proceedings and threatens the just and fair resolution of Plaintiffs' claims against the Defendants in the trial of this action.

The conduct of Defendants' counsel in fabricating Defendant Beerman's Answers to Plaintiffs' First and Second Amended Complaints, Defendant Beerman's initial and subsequent disclosures and four discovery responses, while certifying that these responses were complete and correct and consistent with the rules, is egregious and inexcusable. So, too, Defendants' counsel's use of the evidence they fabricated and failed to preserve as support for *Defendant William Beerman's and Defendant's IHC's Motion for Summary Judgment* in this case. "When false evidence or testimony is provided under oath, knowingly or with intent to deceive, a party [attorney] commits a fraud on the court. See, *Phillips*, at 1208-1209, quoting *Garcia v. Berkshire Life Ins. Co. of Am*., 569 F.3d 1174, 1181 (10th Cir. 2009). And, as when a party fabricates evidence, the fabrication of evidence by an attorney "imposes substantial burdens not only on the opposing party, but also on the judicial system itself, as the extent and relevance of the fabrication are investigated." *Id*.

Here, Plaintiffs' counsel had to spend an inordinate amount of time disputing the fabricated evidence Defendants' counsel employed to support *Defendants Beerman's and IHC's Motion for Summary Judgment*,[154] and the Court no doubt had to spend an enormous amount of time examining the fabricated evidence and Plaintiffs' objections.

---

[154] *See, Plaintiffs' Memorandum In Opposition To Defendants William Beerman's and IHC's Motion For Summary Judgment* (Doc. 364), requiring an extraordinarily large number of pages to dispute the facts asserted in support of the motion.

Now, again, the Court will have to spend undue time and precious judicial resources to consider the motion for sanctions to redress the misconduct of Defendants' counsel.

Additionally, Plaintiffs have spent the better part of two years fighting to conduct and conducting discovery to obtain the Defendants' evidence in this case, only to be blindsided with the realization shortly before trial, that the Answers, disclosures and discovery responses of Defendant Beerman, they finally obtained in discovery, are fabricated and worthless, and the Plaintiffs' resources have been spent for naught.

Worse yet, the sorry attempts of Defendants' counsel to rationalize  their gross misconduct in this case, creates considerable doubt about whether Defendants' counsel should be allowed to continue representing any parties in this case, or in any case in this Court. Needless to state, Plaintiffs' new found awareness of Defendants' counsel's egregious attorney misconduct, unfairly distracts Plaintiffs' counsel from trial preparation, and has reasonably poisoned Plaintiffs' counsel's ability to trust anything Defendants' counsel does or says in the litigation of this case going forward. This circumstance severely impairs the normal good faith working relationship of counsel working together to prepare voir dire, jury instructions, and witness and exhibits to assist the Court in efficiently conducting the trial in this action.

### 3. THE CULPABILITY OF DEFENDANTS' COUNSEL

In *Philips*, this Court noted that when deciding whether to impose sanctions for spoliation, "the culpability of a party is a significant factor, but not determinative. Culpability may not mean evil intent, but may simply signify responsibility and control."

73

*Id.* at 1192-93. Here, counsel for IHC and Beerman not only had the responsibility but the duty as an officer of the Court, to preserve Defendant Beerman's testimony and evidence, but exercised exclusive control over Defendant Beerman.

Defendants' counsel failed to assert a litigation hold on Defendant Beerman's information and documents in this case, failed to meet with Defendant Beerman to obtain and preserve his evidence, failed to obtain Defendant Beerman's true information, knowledge and documents to respond to Plaintiffs' Complaints, to provide his initial and subsequent disclosures, and to respond to Plaintiffs' four sets of discovery requests. This course of conduct over several years of litigation, suggests that Defendants' counsel deliberately sought to avoid any contact with Defendant Beerman. Because there is no reasonable explanation for such misconduct, it may be inferred that Defendants' counsel adopted a strategy not to engage in any contacts with Defendant Beerman, that might generate information that would conflict with their defense of Defendant IHC. So does the fact that Defendants' counsel fabricated all of Defendant Beerman's responses to Plaintiffs' complaints and discovery requests, to mirror those of Defendant IHC and certified such responses as complete, without even consulting Defendant Beerman.

Defendant Beerman's' counsel also had a duty not to fabricate answers to support the Defendants' defenses, e.g. that the exculpatory Pathology Reports were simply inadvertently not produced. [155] Such conduct, independently, is a violation of discovery Rule 26(a) and(3) which requires "party" to make initial and subsequent disclosures, and

---

[155] *See*, IHC & Beerman's Response to Pltfs. First Discovery, ¶22(f), at 21 (Doc. 364-4).

Rule 33(b)(1)(A), which requires that interrogatories are to be answered "by the party to whom they are directed." Again, Defendants' counsel's conduct in this regard, can only be viewed as deliberate and in bad faith.

Finally, the conduct of Defendants' counsel in supporting Defendants Beerman's and IHC's Motion for Summary Judgment, with evidence Defendants' counsel fabricated and failed to preserve, and with other inadmissible evidence, was calculated and in bad faith.

In *Wilson v. IHC Hospitals Inc*., 2012 UT 43, the Utah Supreme Court recently reversed a jury verdict for IHC, finding that the personal injury plaintiffs were prejudiced because, IHC's counsel, Mr. Dahlquist, "made persistent and studied attempts to bring objectionable matter before the jury" after being ordered not to do so by the trial court. *Id.* at ¶¶ 27, 31, 36-58. Here, Defendant IHC's counsel's misconduct in this case has likewise interfered with the judicial process and severely prejudiced the Plaintiffs. Thus, appropriate sanctions should be imposed to punish and deter Defendants' counsel from further egregious conduct in the litigation of this case, and to deprive Defendants' counsel and Defendant IHC of the fruits of Defendants' counsel's egregious attorney misconduct.

### 4. WARNING ABOUT SANCTIONS

It is hornbook law that counsel who engage in a fraud on the Court, discovery abuses or other willful violations of the Rules of Civil Procedure, may be subject to sanctions at the instance of opposing counsel or sua sponte by the Court.

75

### 5. EFFICACY OF LESSER SANCTIONS

In this case, Plaintiffs cannot fill in the evidentiary gaps created by the misconduct of Defendant IHC, Beerman and their counsel, in failing to preserve Defendant Beerman's testimony and documents in this case. Moreover, even if Plaintiffs were given the time and had the financial wherewithal to conduct additional discovery to ascertain the actual answers to the discovery requests they addressed to Defendant Beerman, such discovery would obviously be futile because Defendant Beerman has little memory left to be probed.

Given the magnitude of Defendants' counsel's failure to preserve Defendant Beerman's evidence, the fraud and discovery abuse Defendants' counsel have perpetrated in this case, and the fabricated evidence Defendants' counsel have injected into this case at every stage of the proceedings, and the destruction of relevant evidence, there is no way the Court can return Plaintiffs to the position they would have been in, in conducting discovery in this case and in preparing for trial. Nor is there any reason to think that Defendants' counsel will cease their misconduct in the trial of this action, particularly since they have successfully employed this strategy to obtain the dismissal of Defendant Beerman. Accordingly, this intentional and strategic misconduct warrants the imposition of severe sanctions against Defendants' counsel and/or Defendant IHC.

## **CONCLUSION**

Based on the foregoing facts and law, Plaintiffs respectfully submit that severe sanctions should be imposed on Defendants' counsel. As this Court aptly stated in

76

*Philips*, "civil litigation and discovery demand a level of integrity from the parties in order to properly function." *Id.* at 1195.  As here, "[W]here parties disregard that responsibility and/or ignore the court's mandates, there must be strong consequences." *Id.* Thus, the Court should impose the some or all of the following sanctions requested by Plaintiffs as the Court deems appropriate on Defendants' counsel and/or Defendant IHC, including:

1.      Requiring Defendants' counsel to personally pay all of the attorney fees and costs incurred by Plaintiffs in the discovery conducted against Defendants IHC and Beerman in this action;

2.      Requiring Defendants' counsel to personally pay all attorney fees and costs incurred by Plaintiffs in opposing the dispositive motions filed by Defendants IHC and Beerman;

3.      Requiring Defendants' counsel to personally pay all attorney fees and costs incurred by Plaintiffs in deposing Defendant Beerman;

4.      Requiring Defendants' counsel to personally pay all attorney fees and costs incurred by Plaintiffs in preparing sanctions motions against Defendants' counsel;

5.      Giving an instruction to the jury in the trial of this action that Defendants' counsel fabricated evidence in this case and identifying the evidence they fabricated;

6.      Giving an instruction to the jury that the evidence Defendants or their counsel destroyed in this case would have been favorable to the Plaintiffs;

7.      Precluding Defendants' counsel from using any of the evidence they fabricated on behalf of Beerman or Defendant IHC in the trial of this action;

8.      Requiring Defendants' counsel to make Defendant Beerman available to be examined as a witness in the trial of this action;

9.      Barring Defendants' counsel and the law firm of Kirton & McConkie from receiving directly or indirectly, payment for their representation of Defendants IHC and Beerman in this action;

10.     Referring this matter to the district court's admissions and grievances committee to determine whether Defendants' counsel should be barred from practicing in this Court; and

11.     Providing any further sanctions against Defendant's counsel or relief for Plaintiffs as the Court deems just and appropriate to redress the prejudice to Plaintiffs resulting from the misconduct of Defendants' counsel.

DATED and respectfully submitted this 29th day of October, 2013.


_____
KATHRYN COLLARD


_____
ROBERT D. STRIEPER

78

MACON COWLES
Attorneys for Plaintiffs

## INDEX TO EXHIBITS

1.    Email communications beginning February 2, 2013 resulting in
      production of complete State Contract (Doc. 348-2)

2.    Redacted Billing Records for NM for November 14, 2003 through
      December 8, 2003

3.    Initial Disclosure of Defendant William Beerman and Defendant IHC,
      dated September 30, 2011

4.    Plaintiffs' First Set of Discovery to Defendants IHC and Beerman,
      dated November 1, 2011

5.    Plaintiffs' Second Set of Discovery to Defendants IHC and Beerman,
      dated December 8, 2011

6.    Plaintiffs' Third Set of Discovery to Defendants IHC and Beerman,
      dated January 10, 2012

7.    Plaintiffs' Fourth Set of Discovery to Defendants IHC and Beerman,
      dated July 7, 2012

8.    Transcript, Hearing On Motions for Summary Judgment on
      October 1, 2013

9.    Defendant IHC and Defendant Beerman's First Supplemental Disclosure,
      dated March 10, 2012

10.   Defendant IHC's and Beerman's Second Supplemental Disclosure,
      dated March 20, 2012

11.   Defendant IHC's and Beerman's Third Supplemental Disclosure, dated
      March 28, 2012