Charles W. Dahlquist, II (#0789)
Robert R. Wallace (#3366)
Michael D. Johnston (#11273)
KIRTON McCONKIE
Attorneys for Defendants William Beerman and
    IHC Health Services, Inc. ("*Intermountain*")
60 East South Temple, Ste. 1800
Salt Lake City, UT  84111
Telephone:  (801) 328-3600
Facsimile:  (801) 321-4893

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ABBY TISCARENO and GUILLERMO TISCARENO,<br><br>Plaintiffs,<br><br>v.<br><br>LORI FRASIER, in her individual capacity; IHC HEALTH SERVICES INC., in its individual capacity; JOHN and JANE DOES 1-20, in their individual capacities,<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO MOTION FOR SANCTIONS AGAINST COUNSEL FOR DEFENDANTS IHC AND BEERMAN**<br><br>**AND**<br><br>**REQUEST FOR SANCTIONS AGAINST PLAINTIFFS' COUNSEL**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Case No. 2:07-cv-336<br><br>Judge Clark Waddoups |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... iv

REQUEST FOR ORAL ARGUMENT ............................................................ v

STATEMENT OF ADDITIONAL FACTS ..................................................... vi

ARGUMENT ................................................................................................... 1

  A.  The Foundation for Plaintiffs' Motion Does Not Exist Because Counsel Has Communicated with Beerman From the Inception of this Matter ....................................... 1

    1.  Defense Counsel Communicated With Beerman ................................ 1

  B.  Plaintiffs' Motion is Improperly Premised on Inapplicable Rules ...................... 4

    1.  Plaintiffs' Motion Raises Standard Discovery Disputes; Plaintiffs Never Raised Them During the Discovery Period or Complied with DUCivR 37-1 ........................ 4

    2.  Plaintiffs' Reliance Upon Rule 11 is Inappropriate ......................... 5

    3.  Defendants Did Not Violate Rule 56(h)............................................. 6

    4.  There Was No Violation of Rule 26(g)(3) ........................................ 8

  C.  Defendants' Disclosures and Discovery Responses Were Appropriate ............. 8

    1.  Defendants' Initial Disclosures Were Appropriate ......................... 8

    2.  Defendants' Discovery Responses Were Appropriate .................... 10

  D.  There Was No Spoliation of Evidence.............................................................. 13

    1.  Counsel Has No Obligation to Preserve Beerman's Testimony ..... 13

    2.  Defendants Did Not Spoil any Documents ..................................... 15

  E.  Plaintiffs' Are Limited to Addressing Counsel's Representation of Beerman Only; Other Unrelated Issues Are Irrelevant ....................................... 18

  F.  No Sanctions Against Defendants' Counsel Are Appropriate Here .................. 18

    1.  Defendants' Counsel has Done Nothing to Invoke 28 U.S.C. § 1927 ............. 18

2.  The *Ehrenhaus* Spoliation Factors Are Not Applicable or Met......................................19

    i.  Factor 1: The Degree of Actual Prejudice to the Non-Culpable Party......................21

    ii.  Factor 2: Interference with Judicial Process...............................................................23

    iii. Factor 3: The Culpability of the Litigant...................................................................24

    iv. Factor 4: Warning About Sanctions ..........................................................................25

    v.  Factor 5: The Efficacy of Lesser Sanctions...............................................................26

G.  Plaintiffs' "Fact" Section Violates DUCivR 7-1(a)(3)(B) and The Court's Order, in Addition to Being Improperly Argumentative and Conclusory ........................................26

H.  Sanctions Against Plaintiffs' Counsel Are Warranted and Necessary ...............................28

    1.  Plaintiffs' Motion Lacks Any Foundation.  As such, Sanctions Against Plaintiffs Are Appropriate....................................................................................................................28

    2.  Plaintiffs' Counsel Have Violated The Rules of Professionalism and Civility .............30

    3.  Plaintiffs' Counsel Abuses the Right to Seek Sanctions.................................................32

CONCLUSION....................................................................................................................................35

Pursuant to DUCivR 7-1(b) and Dkt. No. 413, Defendant IHC Health Services, Inc. ("IHC"), by and through undersigned counsel, hereby respectfully provides this Memorandum in Opposition to Plaintiffs' Motion for Sanctions Against Counsel for Defendants IHC and Beerman (the "Motion" (Dkt. Nos. 405 and 407).

## INTRODUCTION

The foundation of Plaintiffs Abby and Guillermo Tiscareno's ("Plaintiffs") Motion is that counsel for Beerman never communicated with or contacted Defendant William Beerman ("Beerman") regarding the instant matter and that as a result, Beerman did not even know of the claims against him. In no uncertain terms, this is patently false, lacks any merit or foundation, and Plaintiffs' attorney has actual knowledge that this is incorrect. Plaintiffs' attorney had Beerman served with a copy of the complaint, the return of service of which would have gone to Plaintiffs' counsel. Thereafter, Counsel for Beerman communicated with him throughout the litigation. After discussing the complaint and matter in full with Beerman shortly after the complaint was filed (and then again after Beerman was formally served), it was determined that Beerman had (1) no knowledge of the underlying investigation and prosecution of Ms. Tiscareno and (2) no knowledge of N.M., the associated medical records, or the production thereof to third parties. Based upon this information, which came from Beerman, and with specific authorization from Beerman, counsel for Beerman proceeded with his defense, keeping Beerman involved as necessary. Importantly, the Court agreed that Beerman had no knowledge of or participation in the underlying investigation, prosecution, production of records, and/or parties when it dismissed him from the litigation.

To be clear, at no point did counsel for Beerman and IHC fabricate, conceal, or otherwise improperly handle any evidence related to Beerman.

When the underlying predicate is taken away from Plaintiffs' Motion (*i.e.*, Beerman had knowledge of the claims, specifically authorized counsel to defend him, and counsel did, in fact, communicate with and involve Beerman in this matter), Plaintiffs' argument is seen for what it really is: merely an unfounded *ad hominem* and red herring attack on counsel meant to distract the Court from the merits of this matter.   Moreover, Plaintiffs' seeking of sanctions is a disingenuous and spurious attack, wholly lacking in factual or legal support, since Plaintiffs' counsel knew that they had served the complaint on Beerman at his home address and was, therefore, clearly notified of such service, and that Beerman had discussed this matter with his counsel.   To claim that Beerman never saw the complaint, and that his counsel did not involve him in this action, is a malicious attempt to mislead and perpetuate a fraud on this Court.

Unfortunately, a review of the cases filed in this district by Plaintiffs' lead counsel reveals that frequently seeking such sanctions appears to be an emblematic *modus operandi*.   The Court should not enable nor countenance Plaintiffs' approach to litigation.   As Plaintiffs have improperly sought sanctions here, sanctions against Plaintiffs and their counsel are necessary and appropriate.

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to DUCivR 7-1(f), Defendants hereby respectfully request that the Court schedule oral argument on Plaintiffs' Motion.   Good cause exists for this request given the serious allegations in Plaintiffs' Motion, made more serious by the known falsity of Plaintiffs' arguments, as discussed in full *infra*.   Moreover, the sanctions sought by Plaintiffs are some of

the most serious of sanctions available to the Court.  As such, Defendants suggest that all parties, and the Court, would be well served by oral argument.

## STATEMENT OF ADDITIONAL FACTS[1]

1.      The complaint in this matter was filed on May 22, 2007.  (Dkt. No. 2.)

2.      Beerman's employment at IHC ended in April 2005.  (*See* Dkt. No. 383 at 181.)

3.      On or around June 8, 2007, after IHC became aware that the complaint had been filed, counsel for Beerman attempted to contact him regarding the complaint.  (*See* Declaration of Charles W. Dahlquist, II, ¶ 4, attached hereto as Exhibit A1.)

4.      Counsel for Beerman first discussed this matter with him on or around June 11, 2007, at which point it was determined that Beerman had (1) no knowledge of the underlying investigation and prosecution of Ms. Tiscareno; (2) no knowledge of N.M., the associated medical records, or production of medical records to third parties; and (3) possessed no relevant records or documents.  (*See id.*, ¶ 5.)

5.      On August 22, 2007, over two months after Beerman first discussed this case with counsel, and three months after the complaint was filed, Beerman was served with the summons and complaint at his home address in Herriman, Utah.  (*See* Executed Summons to Defendant Beerman, attached hereto as Exhibit B; *see also* Ex. 1, ¶ 6 and Dkt. No. 383 at 115.)

---

[1] Where Plaintiff's Motion is not filed under Rule 56, Defendants are not required to respond to each of Plaintiffs' 72 "Facts Supporting Motion" (Motion, 10-48).  Out of an abundance of caution however, and so that Plaintiffs' cannot claim that Defendants somehow admitted to an alleged fact by not specifically disputing it, Defendants attach hereto a response to the 72 "Facts Supporting Motion" contained in Plaintiffs' Motion.  (*See* Defendants' Response to Plaintiffs' Facts Supporting Motion, attached hereto as Exhibit A.)

6.      On August 23, 2007, the day after being served, Beerman contacted Defendants' counsel of record to notify them that the complaint and summons had been served on him.  (Ex. A, at ¶ 6.)

7.      That same day, Beerman also mailed a copy of the summons and complaint to counsel of record.  It was received by counsel of record on August 27, 2007.  (Ex. A at ¶ 7; *see also* Dkt. No. 383 at 115.)  A copy of the envelope in which the summons and complaint was mailed to Defendants' counsel by Beerman is attached hereto as Exhibit C.

8.      On August 23, 2007, Beerman also contacted representatives of his former employer, IHC, via email to inform them that he had been served with the summons and complaint.  (*See*, August 23, 2007, email from William Beerman, attached hereto as Exhibit D.)  Mr. Beerman specifically stated <u>at that time</u> that he could not "recall any details of this case." (*Id*.)

9.      Shortly thereafter, on or around August 27, 2007, counsel for Beerman spoke again with him and discussed this matter in full.  It was again determined that Beerman had (1) no knowledge of the underlying investigation and prosecution of Ms. Tiscareno; (2) no knowledge of N.M., the associated medical records, or production of medical records to third parties; and (3) possessed no relevant records or documents.  (Ex. A, ¶ 8.)

10.     Beerman's counsel has attorney-client privileged and attorney work product protected documents that will substantiate its communications with Beerman.  Upon request from the Court, Beerman's counsel will provide these documents for an *in camera* review only. (*Id*. at ¶ 9.)

11.      On October 4, 2007, counsel of record filed notices of appearance for Defendants IHC and Beerman.  (*See* Dkt. No. 17 and 20.)  Beerman specifically granted counsel of record full authority to represent him in this matter.  (*See* Ex. A. at ¶ 10.)  At all times thereafter, counsel of record represented Beerman with his authority.  (*Id.*)

12.      After the Court granted Defendants' motion to dismiss on September 29, 2008 (Dkt. No. 61), Plaintiffs' filed their First Amended Complaint on December 3, 2008 (Dkt. No. 79).  Beerman and IHC filed their Answer to the First Amended Complaint on March 1, 2010 (Dkt. No. 121).  The representations on behalf Beerman in the initial answer (and all subsequent answers) were with his authority and based upon information provided by Beerman.  (Ex. A, ¶ 11.)

13.      On September 30, 2011, Beerman and IHC served their Rule 26 initial disclosures.  (*See* Defendants' Initial Disclosures, attached hereto as Exhibit E.)  Because Beerman was named as a defendant in his individual capacity, he was listed in the initial disclosures as likely possessing discoverable information in support of his defenses.  (*Id.*)

14.      On December 1, 2011, IHC and Beerman served their responses to Plaintiffs' first set of discovery which were served *jointly* on IHC and Beerman.  (*See* Defendants' Responses to Plaintiffs' First Set of Discovery, attached hereto as Exhibit F.)  Of the 93 total requests in Plaintiffs' first set of discovery, only three (3) were directed specifically to Beerman (Interrogatory Nos. 1, 2, and 15).  (*Id.*)  Because Beerman had previously confirmed that he lacked any knowledge of the underlying claims or parties, and pursuant to Rules 33(b)(1) and 34(b)(2), the individuals within IHC *with actual knowledge* provided the information contained in the responses.  (Ex. A, ¶ 12.)  The interrogatory responses were signed in the presence of a

notary by Susan Adams, Director of Risk Management/Patient Relations at Primary Children's Medical Center.  (*See* Ex. F.)

      15.    On January 20, 2012, IHC and Beerman served their joint responses to Plaintiffs' second set of discovery, which again were served jointly on IHC and Beerman.  (*See* Defendants' Responses to Plaintiffs' Second Set of Discovery, attached hereto as Exhibit G.)  Of the 68 total requests in Plaintiffs' second set of discovery, none were directed specifically to Beerman.  (*Id.*)  Moreover, because Beerman had previously confirmed that he lacked any knowledge of the underlying claims or parties, and pursuant to Rules 33(b)(1) and 34(b)(2), the individuals within IHC *with actual knowledge* provided the information contained in the responses.  (Ex. A, ¶ 12.)  The interrogatory responses were again signed in the presence of a notary by Susan Adams.  (*See* Ex. G.)

      16.    On February 6, 2012, IHC and Beerman served their joint responses to Plaintiffs' third set of discovery which were served jointly on IHC and Beerman.  (*See* Defendants' Responses to Plaintiffs' Third Set of Discovery, attached hereto as Exhibit H.)  Of the 84 total requests in Plaintiffs' third set of discovery, only four (4) were even remotely related to Beerman (Interrogatory Nos. 14 and 19-20, and Request for Production No. 16).  (*Id.*)  Because Beerman had previously confirmed that he lacked any knowledge of the underlying claims or parties, and pursuant to Rules 33(b)(1) and 34(b)(2), the individuals within IHC with actual knowledge provided the information contained in the responses.  (Ex. A, ¶ 12.)  The interrogatory responses were again signed in the presence of a notary by Susan Adams.  (*See* Ex. H.)

      17.    On November 27, 2012, IHC and Beerman served their joint responses to Plaintiffs' fourth set of discovery which were served jointly on IHC and Beerman.  (*See*

Defendants' Responses to Plaintiffs' Fourth Set of Discovery, attached hereto as Exhibit I.)  Of the 33 total requests in Plaintiffs' fourth set of discovery, none were directed specifically to Beerman.  (*Id.*)  Moreover, because Beerman had previously confirmed that he lacked any knowledge of the underlying claims or parties, and pursuant to Rules 33(b)(1) and 34(b)(2), the individuals within IHC with actual knowledge provided the information contained in the responses. (Ex. A, ¶ 12.)  The interrogatory responses were signed in the presence of a notary by Susan Adams.  (*See* Ex. I.)

18.     In total, Plaintiffs served 278 discovery requests (counting subparts) *jointly* to IHC and Beerman.  (*See infra*, ¶¶ 14-17.)  Only seven (7) of those requests were directed to and even remotely related to Beerman, or roughly 2.5% of all of Plaintiffs' discovery requests.  (*Id.*)

19.     During the discovery phase, counsel for Beerman and IHC went to great lengths to accommodate the informal and formal discovery requests of Plaintiffs.  This included, *inter alia*, accompanying counsel for Plaintiffs to Primary Children's Medical Center to review records in person on multiple occasions.  (Ex. A, ¶ 13.)  Moreover, counsel for Beerman and IHC expended tremendous time and resources securing the information in response to the nearly 300 discovery requests (counting subparts) in Plaintiffs' four sets of discovery from those persons who did have some responsive information.  (*Id.* at ¶ 14.)

20.     Although counsel for IHC and Beerman went to great lengths to accommodate informal <u>and</u> formal requests for information, at no time during the almost six (6) years from the date the complaint was filed on May 22, 2007 until the deposition of Beerman was taken on January 21, 2013, did Plaintiffs' counsel notice the deposition of Beerman.  (*Id.* at ¶ 15.)

21.     On January 21, 2013, Plaintiffs took the deposition of Beerman.    Beerman specifically testified that he spoke with counsel of record "like two years ago once for an hour, and I heard back again about a month ago." (January, 21, 2013 deposition transcript of William Beerman, 21:15-17, relevant portions attached hereto as Exhibit J.)

22.     Contrary to Beerman's recollection at his deposition, there were many times that he discussed this matter with counsel of record, including shortly after the complaint was filed and then again after it was personally served on Beerman. (*See supra* ¶¶ 4, 6-7, and 9.)

23.     In his deposition Beerman stated that he did not know who the Plaintiffs are and did not know what their claims are. (Ex.  J, 18:2-6 and 34:4-5).  He also stated that he did not know who N.M. is or anything about his medical records. (*Id.* at 24:21-25.)  Beerman testified that "[t]o the vast majority of questions that you are asking, I didn't have any - - I really don't have any knowledge of the vast majority of." (*Id.* at 51:12-14.)  This is not because Beerman forgot or could not remember this information.  It was because he never had any knowledge or information in the first place. (Ex. D.)

24.     Beerman also testified that Becky McQuarry and Mary Johnson would have a better level of details regarding IHC's records' policies. (*See* Ex. J at 55:13-21.)  Plaintiffs' never deposed Ms. McQuarry or Ms. Johnson. (*See* Ex. A, ¶ 16.)

25.     On March 15, 2013, Defendants filed their motion for summary judgment. (Dkt. No. 343.)  As part of their motion for summary judgment, Defendants included the March 14, 2013, Affidavit of William Beerman. (Dkt. 343-8.)  This affidavit was based upon Beerman's own knowledge and belief, and was notarized by a notary public. (*Id.*)  Beerman specifically stated in his affidavit that he did "not have any recollection of any specific medical records of a

minor with the initials N.M., nor did I specifically deal with any such records, to my memory. (*Id.* at ¶ 23.)

26.    At the October 1, 2013, hearing on Defendants' motion for summary judgment, the Court stated: "Again, but there's no - - if there were evidence that Mr. Beerman knew about it, told somebody to ignore it, knew about it, chose to do nothing.  I mean there's just no evidence at all that I can see that he was in any way involved in this." (October 1, 2013 hearing transcript, 99:22 -- 100:1, relevant portions attached hereto as Exhibit K.)

27.    Given Beerman's lack of knowledge of or involvement in the underlying conduct at issue, the Court properly dismissed Beerman from the litigation.  (*See* Dkt. No. 392.)

28.    At the October 1, 2013 hearing, counsel for Plaintiffs stated: "*Nobody's ever talked* to [Beerman] about the complaint and got what he thinks for his answer, what he thinks for the responses to our interrogatories and requests for production of documents."  (*Id.* at 103:20-23 (emphasis added).)  Counsel for Plaintiffs continued and stated: "I don't think that Mr. Dahlquist can just go along and make up these answers without consulting his client."  (*Id.* at 103:23-25.)  Counsel for Plaintiff further stated, "[Beerman] says, you know, I can't remember now, it's just been so long, *nobody's ever talked to me about it*, I just don't know now."  (*Id.* at 104:23 – 105:1 (emphasis added).)

29.    Despite dismissing Beerman from the case, the Court at the conclusion of the October 1, 2013 hearing stated the following: "I will also allow you to brief the issue as to whether or not some sanctions are appropriate against the attorneys at Kirton & McConkie for the way that they responded to discovery in this case in terms of not contacting Mr. Beerman, not

<u>interviewing him,</u> and not providing interrogatory answers." (*Id.* at 124:14-19 (emphasis added).)

30.     The Court continued: "But in my experience, I believe that there are serious questions about the professional conduct of counsel in this case to have a defendant for ten years[2] after the filing of the complaint say I don't know what the claims against me are, I never saw the interrogatory answers, no evidence that there was any action on behalf of Beerman's counsel to investigate this case and learn what facts would be available." (*Id.* at 124:22 – 125:5.) The Court continued, "But it is serious conduct that has prejudiced the plaintiff in this case . . ." (*Id.* at 125:9-10.)

31.     The Court further stated: "I would note that the plaintiff failed to bring this to the attention of the magistrate or the court, and they could have moved to compel, and I will take that into account." (*Id.* at 124:19-22.)

32.     Immediately after the Court's statements cited above, Mr. Dahlquist, counsel for Defendants, stood to address the Court's statements that, *inter alia*, counsel never contacted Beerman. The Court, however, did not permit Mr. Dahlquist to address it at that time. (Ex. A, ¶ 18.)

33.     Counsel for Beerman appropriately communicated with Beerman throughout this matter. (*Id.* at ¶ 19.)

34.     At no point did counsel for Beerman and IHC fabricate, conceal, destroy, or otherwise improperly handle evidence related to Beerman. (*Id.*)

---

2 The case was filed in May 2007. (*See* Dkt. No. 2.)

## ARGUMENT

**A. The Foundation for Plaintiffs' Motion Does Not Exist Because Counsel Has Communicated with Beerman From the Inception of this Matter**

       1.  Defense Counsel Communicated With Beerman

The predicate for Plaintiffs' Motion is that Beerman did not know the claims against him, and that counsel for Beerman never communicated with him and, therefore, fabricated evidence on his behalf throughout the litigation. (*See* Dkt. No. 405 at 1-2[3]; *see also id.*, 19, ¶ 19 (claiming that Beerman had *never been contacted* and told that he was part of this lawsuit) (emphasis added); *id.*, 46, ¶ 70(A) ("*Failed to contact* Defendant Beerman during the course of the litigation . . .) (emphasis added); *id.*, 47, ¶ 70(D) ("Ambushing Plaintiffs' counsel in Defendant Beerman's deposition with Defendant Beerman's testimony that counsel had *never contacted* him during the course of the litigation . . .") (emphasis added); *see also id.*, 54 (claiming that Beerman's counsel was able to "destroy Defendant Beerman's potential evidence against Defendant IHC and Defendant Frasier by *never discussing the case* with Defendant Beerman and shuffling him off to the sideline . . ." (emphasis added); *see also id.*, 55 ("Because Defendants' counsel *never contacted* Defendant Beerman about the Complaint in this case . . .") (emphasis added).)  These statements by Plaintiffs' counsel are knowingly false.  Putting aside for a moment the discussions Beerman had with counsel of record before and immediately after the complaint was served (*see* Statement of Facts, ¶¶ 4 and 9; *see also* Dkt. No. 383 at 115 (confirming that Beerman provided counsel with a copy of the complaint on August 27, 2007)), the deposition testimony of Beerman specifically confirmed that he talked to counsel at least

---

[3] The page citations to Plaintiffs' Motion are to the Court's electronic numbering at the top of the page.

twice. (*See id.* at ¶ 21.) Plaintiffs' counsel clearly knew this as they took Beerman's deposition. Moreover, the fact that counsel spoke with Beerman was brought to Plaintiffs' counsel's attention during the summary judgment briefing.[4] (*See* Dkt. No. 383 at 115.) Yet, Plaintiffs' still falsely argue to the Court that Beerman's counsel never contacted him. It is, therefore, a knowing misrepresentation to the Court for Plaintiffs' to say that Beerman's counsel never spoke with him. The Court should not allow such knowingly false statements to be perpetrated on the Court. Indeed, sanctions against Plaintiffs' counsel for knowingly perpetrating a fraud on the Court are appropriate (discussed in full below).

As discussed above, Beerman was aware of the claims against him contained in the complaint (which Plaintiffs' counsel knew was served on him), and counsel for Beerman discussed this matter with him shortly after the complaint was filed, when it was first apparent that Beerman would be a defendant,[5] and then again after it was served. (*See* Statement of Facts, ¶¶ 4 and 9.) It was confirmed that Beerman did not know anything about the underlying conduct giving rise to this litigation or the parties. (*Id.*) Clearly, the content of the discussions between Beerman and counsel is the epitome of privileged attorney-client communications. *See Upjohn*

---

[4] Plaintiffs' also falsely claim that Defendants' counsel admits to having no one at IHC having ever contacted Beerman. (*See* Motion, 55.) This also is false. *See* Dkt. No. 383 at 115 ("Mr. Beerman presumably read the complaint and then contacted PCMC with regard to the pending lawsuit."); *see also*, Statement of Facts, ¶ 8.

[5] Even though this case began pursuant to the Utah Health Care Malpractice Act, U.C.A. § 78B-3-401 *et seq*, Beerman was never mentioned in that proceeding. (Ex. A, ¶19.) It was only at the time the complaint was filed on May 22, 2007, that counsel and Beerman's former employer, IHC, became aware that Beerman would be a defendant. Counsel, immediately after the filing of the action, and three (3) months prior to Beerman ever being served with a summons and complaint, contacted Beerman and discussed the allegations with him, determining that he had (1) no knowledge of the underlying investigation and prosecution of Ms. Tiscareno; (2) no knowledge of N.M. or the associated medical records; and (3) possessed no relevant records or documents. (*See* Statement of Facts, ¶¶ 4 and 9.)

*Co. v. U.S.*, 449 U.S. 383, 389, 101 S.Ct. 677 (1981) (the attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law. . . Its purpose is to encourage full and frank communications between attorneys and their clients . . .")  However, in order to allay any doubts the Court may have regarding the occurrence of these discussions, counsel will agree to provide for an *in camera* review only and at the Court's request certain documents that will confirm the representations made here about communications with Beerman. (*See* Ex. A, ¶ 9.)  These documents alone are sufficient for the Court to deny Plaintiffs' Motion *in toto*.

Plaintiffs further claim that Beerman lost his "memory regarding the events of this case" because of "careful cultivation" by his counsel.  (Dkt. No. 405 at 47, ¶ 70(E).)  This also is not true (*see e.g.*, Statement of Facts, ¶¶ 4 and 9; *see also* Ex. D), and is one more example of Plaintiffs' calculated calumny.  Simply put, Beerman cannot lose a memory he never had. Shortly after the complaint was filed and before it was even served on Beerman, it was confirmed that he knew nothing of N.M., the Tiscareno's, or the underlying action giving rise to this matter.  (*See* Statement of Facts, ¶ 4 and 9; *see also* Ex. D.)  There can be no sanction for failing to preserve a memory that never existed in the first place.

When Plaintiffs are stripped of their foundational argument (i.e., that Beerman did not know of the complaint against him and that counsel for Beerman never talked to him), the remainder of Plaintiffs' arguments are gutted.  More specifically, any responsive pleading filed on Beerman's behalf was based upon his knowledge (or lack thereof) and with his authority. (*See* Statement of Facts, ¶ 11.)   Similarly, any disclosure or discovery response filed on Beerman's behalf was based upon his knowledge (or lack thereof) and with his full authority.

3

(*Id.*)   And, Beerman specifically participated in Defendants' motion for summary judgment, including providing a notarized affidavit.   (Id. at ¶ 25.)   Where counsel communicated with Beerman at the beginning of this matter and continued to do so throughout the matter as necessary, there can be no sanctions for failing to communicate with Beerman.

### B.   Plaintiffs' Motion is Improperly Premised on Inapplicable Rules

1.   Plaintiffs' Motion Raises Standard Discovery Disputes; Plaintiffs Never Raised Them During the Discovery Period or Complied with DUCivR 37-1

In addition to the issues raised in Plaintiffs' Motion being false, they are also not appropriate to be raised for the first time in a motion for sanctions at this stage of the litigation. The issues raised in Plaintiffs' Motion are, at best, discovery issues that should have been addressed through the standard motion to compel process and during the fact discovery period. This would have required Plaintiffs to comply with Rule 37 and DUCivR 37-1 prior to bringing these issues to the Court.   Had Plaintiffs done so, the parties would have participated in a meet-and-confer to discuss Plaintiffs' discovery concerns.   *See* DUCivR 37-1(a).   Instead, Plaintiffs raise this issue now, with false allegations, long after fact discovery has closed and dispositive motions have been filed and argued.   Incredibly, despite failing to comply with Rule 37 (as enhanced by DUCivR 37-1), Plaintiffs nonetheless rely upon Rule 37 as authority for their present motion. (*See* Motion at 6 and 67.)

At the October 1, 2013 hearing, the Court acknowledged Plaintiffs' failure to comply with Rule 37 and DUCivR 37-1.   The Court stated, "I would note that the plaintiff failed to bring this to the attention of the magistrate or the court, and they could have moved to compel, and I will take that into account."   (Ex. K at 124:19-22.)   Where Plaintiffs failed to file a motion to compel, they cannot now move for sanctions under Rule 37.   *See Holder v. Gienapp*, Civil No.

06-cv-221-JD, 2007 WL 1560342 at *2 (D.N.H. May 23, 2007) (unpublished). Plaintiffs should not be permitted to circumvent the applicable rules governing discovery disputes.

### 2.   Plaintiffs' Reliance Upon Rule 11 is Inappropriate

As further authority for their Motion, Plaintiffs cite to Rule 11(c). (*See* Motion at 6 and 67.) Plaintiffs' reliance on Rule 11 is inappropriate. As an initial matter, Plaintiffs have failed to comply with Rule 11(c)(2), which requires that a Rule 11 motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service . . ." Fed. R. Civ. P. 11(c)(2). This "safe harbor" period was never instituted by Plaintiffs. Had Plaintiffs complied with the 21-day safe harbor period, as required by Rule 11, Defendants would have had the chance to get correct evidence on the record concerning Plaintiffs' false allegations as to Beerman's involvement in this matter, thereby potentially avoiding unnecessary judicial intervention. Instead, Plaintiffs filed their Motion (which Defendants saw for the first time when it was filed) and circumvented Rule 11.

Similarly, Rule 11(c)(2) specifically requires that a "motion for sanctions must be made separately from any other motion . . ." Fed. R. Civ. P. 11(c)(2) (emphasis added). As discussed above, Plaintiffs' complaints here are related to discovery disputes (at best) and should have been addressed in a motion to compel pursuant to Rule 37. To combine the Rule 37 arguments with the arguments for sanctions under Rule 11 is improper. The Court should not allow

Plaintiffs to seek sanctions under Rule 11 when Plaintiffs have openly disregarded its requirements.[6]

### 3. Defendants Did Not Violate Rule 56(h)

Plaintiffs improperly claim that sanctions are available under Rule 56(h) because counsel fabricated evidence on behalf of Beerman. (*See* Motion, 1, 50, and 63.) Rule 56(h) permits sanctions if the moving party can show that an affidavit or declaration is submitted in bad faith or solely for delay. Fed. R. Civ. P. 56(h). Rule 56(h) is the successor to Rule 56(g). *Paniagua v. Max 18, Inc.*, No. 11 C 03320, 2013 WL 5907893 (N.D. Ill. Nov. 4, 2013) (unpublished). "There was little case law explaining the application of Rule 56(g), and there is even less on Rule 56(h), but the upshot is that the Court has wide discretion in deciding what constitutes bad faith." (*Id.* (internal citations omitted).) Although the term "bad faith" is not defined in the Federal Rules of Civil Procedure, as used in Rule 56 the phrase indicates actions taken without any colorable legal or factual basis. *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985). An affidavit is submitted in bad faith only when it "knowingly contains perjurious or intentionally false assertions or knowingly seeks to mislead by omitting facts central to a pending issue." *Bowers v. Rector & Visitors of Univ. of Va.*, 3:06CV00041, 2007 WL 2963818 at *3 (W.D.Va. Oct. 9, 2007) (unpublished). By contrast, "no bad faith [is] found where affidavits were neither egregious nor entirely unwarranted, and did not contain any perjurious falsehoods." *King v. E. Shore Water, LLC*, Civil No. SKG-11-1482, 2012 WL 3155647 at *7 (D.Md. July 31, 2012) (unpublished). "Awarding sanctions under Rule 56[h] is

---

[6] The Court may issue Rule 11 sanctions *sua sponte* but only after notifying the attorney and/or party and providing an opportunity to respond. *White v. GM Corp.*, 908 F.2d 675, 686 (10th Cir. 1990). Even then, any sanction must be limited to those meant to deter repetition of the alleged conduct and not as punishment. Fed. R. Civ. P. 11(c)(4).

rare and the conduct involved generally must be egregious." *Abdelkhaleq v. Precision Door of Akron*, 653 F.Supp.2d 773, 787 (N.D.Ohio 2009) (addressing sanctions under Rule 56(g), predecessor to Rule 56(h); *see also Horton v. Dobbs*, Civil Action No. 1:09CV114, 2011 WL 1899760 at *2 (N.D.W.Va. May 19, 2011) (unpublished) ("Significantly, the advisory note applicable to the 2010 amendment to subdivision (h) provides: Subdivision (h) carries forward former subdivision (g) with three changes. *Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions . . .*" (emphasis in original).)   Importantly, the moving party cannot seek sanctions under this rule until "after notice and a reasonable time to respond" is provided to the non-moving party. Fed. R. Civ. P. 56(h).

Plaintiffs claim that a misleading affidavit was submitted on behalf of Beerman as support for the motion for summary judgment.   (*See* Plaintiffs' Motion, 63.)   Specifically, Plaintiffs claim that Beerman's affidavit "failed to state any adequate facts to show that the facts stated in the Affidavit, other than those quoted from his deposition testimony, were based on Defendant Beerman's personal knowledge, or that he was competent to testify to the matters stated.   Thus, the Court should find that this affidavit was made in bad faith." (*Id*. at 63-64.) Tellingly, Plaintiffs fail to identify *any* particular fact that they claim was made in bad faith; instead, Plaintiffs rely upon conclusory and wholesale allegations of bad faith, absent any specificity.   It is not this Court's or Defendants' obligation to identify (or guess) what facts in Beerman's affidavit Plaintiffs believe are false.

Moreover, Plaintiffs' claim of bad faith related to Beerman's affidavit is predicated upon Plaintiffs' claim that Beerman did not state adequate facts to "show that the facts stated in the

7

Affidavit, other than those quoted from his deposition testimony, were based on Defendant Beerman's personal knowledge." *Id.* This statement is false. Beerman's notarized affidavit unambiguously states that it is based upon Beerman's "best knowledge, recollection, and belief" and his "own personal knowledge." (*See* Dkt. No. 343-8, initial paragraph and ¶ 3.) Plaintiffs' reliance on Rule 56(h) is without support.

### 4.   There Was No Violation of Rule 26(g)(3)

Plaintiffs claim that Defendants violated Rule 26(g)(3) by fabricating Beerman's initial and supplemental disclosures and his discovery responses because they "were not Defendant Beerman's personal responses . . ." (*See* Motion, 62; *see also id*, 67.) As an initial matter, Beerman provided all the knowledge or information of the Tiscareno's, N.M., or the conduct giving rise to this action that he had, which was nothing. (*See* Statement of Facts, ¶ 4 and 9.) Defendants relied upon Beerman's information (or lack thereof) when they provided their discovery responses. (*Id.*) This is consistent with Rule 26.[7]

### C.  Defendants' Disclosures and Discovery Responses Were Appropriate

#### 1.   Defendants' Initial Disclosures Were Appropriate

Regarding Defendants' initial and supplemental disclosures, Beerman was listed in the initial disclosures as likely possessing "discoverable information in support of [his] claims and

---

[7] See Fed. R. Civ. P. 26 Advisory Committee Note (1983) ("[T]he signature certifies that the lawyer has made a reasonable effort to assure that *the client* has provided all the information and documents available to him that are responsive to the discovery demand." (emphasis added) (cited in Motion, n.131). Defendants' discovery responses were made *after* Beerman "provided all the information and documents available to him" that were relevant to this matter. (*See* Statement of Facts, ¶¶ 4 and 9.)

defenses."[8]   (*See* Ex. E.)   However, the discoverable information that Beerman possessed "in support of his defenses" was that he, in reality, had taken no action alleged in the complaint and had no information of the claims brought against him.  (*See* Statement of Facts, ¶¶ 4, 9, and 13.) That was a very appropriate defense, as acknowledged by the Court in dismissing Beerman from the suit based thereon.

Plaintiffs claim that they are prejudiced because they tailored their discovery based upon information provided in Beerman's disclosures and that they "would forego looking for other defendants and other sources of information Defendant Beerman was represented to possess." (Motion, 59; *see also* Motion, 65 ("[B]y the time Defendants' counsel filed Defendant Beerman's and IHC's motions for summary judgment, it was too late for Plaintiffs' counsel to obtain Defendant Beerman's spoiled evidence from other sources.").)  This argument is spurious, disingenuous, and misleading.   In addition to listing Beerman, Defendants' initial and supplemental disclosures listed thirteen (13) other individuals (not including the Tiscarenos) and two (2) entities as possessing knowledge or information in support of claims or defenses in this matter.  (*See* Ex. E; *see also* Defendants' Second Supplemental Initial Disclosures, attached hereto as Exhibit L; *see also* Dkt. No. 405-10, 2.)  The initial disclosures were provided to Plaintiffs on September 30, 2011 and the second supplemental disclosures on March 20, 2012. (*See* Exs. E and L.)  Of the individuals and entities listed, Plaintiffs only deposed three (3) of them: Beerman, Defendant Frazier, and David R. Brickey (Summit County prosecutor).  (*See* Ex.

---

[8] Plaintiffs claim that Defendants suggested in their answers and initial disclosures that "Defendant Beerman had *substantial* personal knowledge, information, and documents concerning the Plaintiffs' case . . ." (Motion, 73.)  Tellingly, Plaintiffs do not provide any support for this claim.  That is because none exists.  Beerman was listed in the initial disclosures because he was a named defendant.  No representations were made as to the amount (whether great or small) of his actual knowledge.  (*See* Ex.E.)

A, ¶ 17.)  Critically, Plaintiffs chose <u>not</u> to depose the three other IHC employees listed: Becky McCrory, Julie Bradshaw, and Nancy Baxter.  (*Id.*)  It is not, as Plaintiffs would have this Court believe, that only Beerman was listed in the disclosures and all others were hidden from Plaintiffs' view.  In fact, the opposite is true.  Many individuals were listed in Defendants' initial disclosures but, for whatever reason, were not acknowledged or deposed by Plaintiffs.  It is disingenuous and unpersuasive for Plaintiffs' to now argue that they could not obtain discovery from other sources when it was their own choice not to depose the other individuals listed in the disclosures.

Importantly, Beerman eventually did use his discoverable information (*i.e.*, the fact that he had no involvement with or knowledge relevant to the alleged wrongdoing) to "support [his] . . . defenses" by securing his dismissal from this matter.  (*See* Dkt. No. 392.)  Plaintiffs' argument that Defendants' initial disclosures were inappropriate is without merit.

## 2. <u>Defendants' Discovery Responses Were Appropriate</u>

Plaintiffs rely upon Rules 33 and 34 (which rules require that the discovery responses come from the party to whom they are sent) as support that counsel violated their obligations by not including Beerman in the discovery process.  (*See* Motion, 59-61.)   As stated above, Beerman's knowledge (or lack thereof) was used in Defendants' discovery responses.   (*See* Statement of Facts, ¶¶ 14-17.)  Further fatal, however, to Plaintiffs' argument here is that all four sets of discovery were directed *jointly* to both IHC and Beerman.  (*See id*; *see also* Exs. F-I.)  As such, it was and remains unclear to which party Plaintiffs' joint discovery requests were actually intended.

10

This ambiguity is further compounded when Plaintiffs' discovery requests are evaluated. For example, the various definitions of "You or Your" improperly include "William Beerman or anyone acting on behalf of or employed by Intermountain Health Care, Inc. and/or IHC Health Services, Inc. or Primary Children's Medical Center." (*See* Ex. F (emphasis added).)  This overly-inclusive, multi-dimensional definition of Beerman (who was sued individually[9]) and IHC as one person is in violation of Rules 33 and 34 which require service of separate sets of discovery on individual parties. (*See e.g.*, Rule 33(b)(1)(A) (using "party" in the singular: "The interrogatories must be answered by the party to whom they are directed" (emphasis added); *see also*, Rule 34(b)(2)(A) (using "party" in the singular: "The party two whom the request is directed must respond in writing within 30 days after being served" (emphasis added).)  When a party's discovery requests are unclear, any attempt to enforce them is without merit. *See Berk v. Mohr*, Civil Action No. 2:10-CV-1082, 2012 WL 3780313 at *11 (S.D. Ohio July 23, 2012) (unpublished) (denying motion to compel because "it is unclear to whom plaintiffs' discovery requests are directed.").[10]

---

[9]Without any support, Plaintiffs argue that Defendants' counsel chose "not to provide Defendant Beerman with a separate defense in this action, but merely to treat him as an employee of Defendant IHC." (Motion, 56.)  Perhaps the best argument, among many, that this statement is untrue is that Beerman was dismissed from this matter yet IHC remains a party. (*See* Dkt. No. 92.)  If Beerman truly was not given his own representation, he would likely still be a party. Moreover, counsel's representation of Beerman was with Beerman's express authority. (*See* Ex. A. at ¶ 12.)

[10]Of note, Plaintiffs' recognized the individual nature of Defendant Frasier by serving her with separate discovery requests. (*See e.g.*, Plaintiffs' First Request for Admissions to Defendant Lori Fraiser, attached hereto as Exhibit M.)  Conversely, Plaintiffs treated IHC and Beerman as one party (by virtue of Beerman's employment with IHC) by serving them with joint discovery requests. (*See* Exs. F-I.)

Moreover, it is not a responding party's obligations to rewrite the propounding party's discovery requests. *See Finkelstein v. Guardian Life Ins. Co. of America*, No. C07-1130 CRB, 2008 WL 2095786 at *2 (N.D.Cal. May 14, 2008) (unpublished) ("[The court] will not rewrite plaintiff's overbroad discovery requests. Rule 26 does not require the Court to rewrite discovery requests for the parties."); *see also Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608 (RJH) (JCF), 2010 WL 1327921 at *11 (S.D.N.Y. April 5, 2010) (unpublished) ("As they stand, the plaintiff's requests are grossly overbroad, and I decline to rewrite them. Thus . . ., the plaintiffs must serve . . . new discovery requests [that are] narrowly tailored."). It is the propounding party's counsel's job to serve discovery requests that are appropriately written to obtain the information sought. *See Bartolome v. City and County of Honolulu*, Civil No. 06-00176 SOM/LEK, 2008 WL 2736016 at *14 (D.Hawaii July 14, 2008) (unpublished) ("This court sees no basis for finding clear error if a Magistrate Judge reasonably declines to rewrite a party's discovery requests to obtain the optimum result for that party. That is counsel's job.").

Plaintiffs' discovery responses were inappropriately overbroad and over-inclusive. Given the unclear character of Plaintiffs' joint discovery requests, Defendants could have easily objected to <u>all</u> the discovery requests without providing any response. (*See* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(C).) Rather than engage Plaintiffs in an unnecessary discovery dispute, however, and knowing that Beerman had no responsive information, Defendants instead went to great lengths to determine who would have the information responsive to Plaintiffs' requests. (*See* Statement of Facts, ¶ 19.) Then, as permitted by Rule 33(b)(1)(A)(b), Defendants provided their responses. (*See* Fed. R. Civ. P. 33(b)(1)(A)(b) ("[I]f that party is a public or private corporation . . . [the interrogatories must be answered] by any officer or agent, who must furnish

12

the information available to the party").)  The discovery requests were then signed and notarized by Susan Adams, Director of Risk Management/Patient Relations at Primary Children's Medical Center.  (*See* Statement of Facts, ¶¶ 14-17.)[11] [12]  If Plaintiffs had questions or concerns with Defendants' discovery responses, they should have contacted Defendants or utilized DUCivR 37-1.  For example, if Plaintiffs had concerns that the discovery requests were signed by Susan Adams and not Beerman, Plaintiffs could have addressed this informally with Defendants or formally through Rule 37.   Plaintiffs did not do this, and the Court should not allow Plaintiffs to belatedly address discovery concerns now that should have been raised previously.

### D.  There Was No Spoliation of Evidence

   1.  Counsel Has No Obligation to Preserve Beerman's Testimony

Plaintiffs argue that Defendants' counsel "failed to preserve Defendant Beerman's information and documents in this case. . ." (Motion, 50; *see also id*, 54 ("Defendant IHC's and Beerman's counsel not only made no effort to preserve Defendant Beerman's evidence regarding this matter, but intentionally sought to lessen Beerman's knowledge and memories.").)  Plaintiffs

---

[11] Plaintiffs also claim that Mr. Dahlquist, counsel for Defendants, admitted to having not consulted Beerman on the discovery response and instead getting responses from other sources. (*See* Motion, 53-54.)  This statement is not true as counsel discussed this matter in full with Beerman shortly after the complaint was filed and against after it was served on Beerman.  (*See* Ex. A at ¶¶ 4 and 9.)  Plaintiffs' complaints appear to really be that Beerman did not testify as they hoped he would (*see* Plaintiffs' Motion, Statement of Facts, ¶¶ 46-47, 50, and 51), despite the fact that Beerman never had any of the requested information in the first place.

[12] Plaintiffs' state, "For all the Court and Plaintiffs know, Defendant Beerman's  purported answers to Plaintiffs' discovery requests are nothing more than the unsworn testimony of Defendants." (Motion, 60.)  Not only is this statement false and irresponsible, it disregards the specific notarized signature of Susan Adams, Director of Risk Management/Patient Relations at Primary Children's Medical Center, who certified the information on behalf of Defendants.  (*See* Exs. F-I.)

also argue that Beerman's knowledge and memory were not preserved, and that somehow this is counsel's fault.  (*Id.*)  Preserving a witness' memory is not a recognized burden that can be placed on Defendants' counsel.  Indeed, the opposite is true: there is no duty to preserve memory and knowledge.

> The passage of time can have an impact on any case – memories fade, documents become worn or lost . . . Witnesses may forget whether they did certain things . . . Clearly there is a duty on a party to preserve evidence when it is anticipating litigation, yet such a duty cannot . . . prevent the fading of human memories.

*Brigham Young University v. Pfizer*, 282 F.R.D. 566, 572-73 (D. Utah 2012); *see also Nt'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987) (the duty to preserve extends only to "documents or materials . . . that may be relevant to ongoing and potential future litigation").[13]

Beerman's employment at IHC ended in April 2005, more than two years before this matter was commenced.  (*See* Statement of Facts, ¶ 2.)  However, Plaintiffs waited until January 2013 to take Beerman's deposition.  (*See* Ex. J.)  Plaintiffs could have taken Beerman's deposition much earlier, but, for whatever reason, they chose to wait.  The fault, if any, for this cannot now be laid at Defendants' counsel's feet.[14]  Moreover, Defendants' counsel is certainly

---

[13] Importantly, Plaintiffs are clearly aware of the principles in *Brigham Young University* regarding the absence of a duty to preserve memory as it was cited in the summary judgment briefing (*see e.g.*, Dkt. 383 at 182).  Nonetheless, Plaintiffs argue to the Court that Defendants have a duty to preserve Beerman's memories.  (*See* Motion, 50 and 54.)  This is a fraud on the Court for Plaintiffs to pursue an argument that Plaintiffs know has legal authority *from this district* directly opposite.  Plaintiffs' Motion does not even cite to *Brigham Young University*, let alone address how the clearly stated principles on point contained therein do not apply here.

[14] Plaintiffs claim that Beerman could have provided additional information "at an earlier time." (Motion, 57.)  As an initial matter, any additional information Beerman could have provided at an earlier time would not be related to N.M., the Tiscarenos, or the underlying conduct as

not obligated to *create* memories for Beerman. Had Defendants' counsel done that (which they never would have), Plaintiffs would likely be asking the Court for sanctions for Defendants' counsel providing Beerman with information he did not otherwise have. This darned-if-you-do-and-darned-if-you-don't approach to litigation should not be permitted.

The passage of time notwithstanding, Beerman made it clear shortly after the complaint was filed and served that he had no knowledge of N.M., the Tiscarenos, or the underlying conduct in this matter. (*See* Statement of Facts, ¶¶ 4 and 9; *see also* Ex. D.) As such, Plaintiffs' argument here is nothing more than a distraction from the merits of this matter.

Beerman never had a memory relevant to the parties or conduct in this action. Therefore, no such memory was ever destroyed.

### 2. Defendants Did Not Spoil any Documents

Without any specificity, Plaintiffs argue that Defendants' counsel "destroyed relevant documents." (Motion, 50.) This is false. (*See* Statement of Facts, ¶ 34.) Moreover, Plaintiffs have failed to identify any documents or categories of documents that Defendants' *counsel* supposedly destroyed. Hollow conclusions are not sufficient for Plaintiffs to meet the burden of establishing document spoliation by Defendants' counsel.

Plaintiffs' also claim that Defendants IHC and Beerman admitted to destroying documents, and that Plaintiffs were thereby prejudiced. (*See* Motion, 60-61.) While Defendants specifically dispute this claim, it is not relevant to the Motion, which motion is specifically limited to the conduct of Defendants' *counsel* and not the parties. (*See* Ex. K, 124-125; *see also*

---

Beerman never had any of this information. (*See* Statement of Facts, ¶¶ 4 and 9; *see also* Ex. D.) Moreover, it was Plaintiffs' obligation, not Defendants', to preserve this information by taking Beerman's deposition earlier. *See Brigham Young University*, 282 F.R.D. at 572-72.

Dkt. No. 393.)  If Plaintiffs believe that Defendants IHC and/or Beerman destroyed documents, this is a discovery issue that should have been raised under Rule 37 during the fact discovery period.[15]  As such, the Court should not entertain further discussion on IHC's and Beerman's discovery efforts.

Nonetheless, and in an effort to put Plaintiffs' arguments to rest, Plaintiffs could nonetheless not prevail on a claim of spoliation of documents.  The burden of establishing control over documents sought is on the party seeking production.  *See Bryant v. Armstrong*, 285 F.R.D. 596, 607 (S.D.Cal. 2012).  Plaintiffs have failed to meet their burden of showing that Beerman had control of *any* relevant and discoverable documents.  "[F]ormer employees . . . do not have possession, custody, or control over former employer's documents . . ."  *Lowe v. District of Columbia*, 250 F.R.D. 36, 38 (D.D.C. 2008).  Indeed, "records in the possession of a former employer are further removed from the control of that former employee."  *Id.*

As it relates to Beerman *in his individual capacity* (or any capacity, for that matter), he never personally had any documents related to N.M., the Tiscareno's, or the underlying medical records at any point, let alone at the time this case was filed in 2007 (two years after Beerman left IHC) or at any time since.[16]  (*See* Statement of Facts, ¶¶ 4 and 9.)  Importantly, Rule 34 only

---

[15] Plaintiffs allege that they became aware of the alleged destruction of documents after receiving Defendants' joint responses to the first set of discovery, which were served in December 2011. (*See* Motion, 26 ¶36.)  Yet, Plaintiffs did not raise this concern in a motion to compel at that time or any time until the Motion.  The substantial delay in raising this issue undercuts the urgency Plaintiffs are now trying to create.

[16] Plaintiffs argue that "Defendants had an obligation to issue a litigation hold on destruction of IHC's documents in this case, including the documents of Defendants Beerman and Frasier, but apparently did not do so."  (Motion, 52.)  As stated before, this Motion is solely focused on Defendants' representation of Beerman and not IHC.  As such, Plaintiffs' references to IHC here are irrelevant.  Moreover, Defendants' counsel certainly does not represent Frasier and cannot be

requires that a party produce documents in their possession, custody or control. Fed. R. Civ. P. 34(a)(1). Any medical records related to N.M. have always been in the possession, custody, and control of IHC and not Beerman.

Additionally, a party is only deemed to have control of a document if he or she has a legal right to obtain them. *See Bryant*, 285 F.R.D. at 607. Clearly, Beerman, in his individual (or any) capacity, has no legal right to N.M.'s medical files.

In order to prevail on claims of spoliation, Plaintiffs must also provide evidence that it "was prejudiced by the destruction of the evidence." *Phillips Elec. N. Am. Corp. v. BC Technical*, 773 F.Supp.2d 1149, 1197 (D. Utah 2011). As Plaintiffs failed to identify any documents that were destroyed by Defendants' counsel, and as Defendants' counsel did not destroy any documents (*see* Statement of Facts, ¶ 34), Plaintiffs cannot establish any prejudice. Plaintiffs' cannot simply rely upon unsupported and conclusory allegations. This is not sufficient.

Plaintiffs' spoliation of memory argument is a legal myth and should be treated as such by the Court. Moreover, Plaintiffs have failed to identify any document destroyed by Defendants' counsel or any related prejudice. As such, Plaintiffs' spoliation arguments should be disregarded.

---

held responsible for whatever document Frasier, in her individual capacity, may have. As it relates to preserving any documents in Beerman's possession, Defendants' counsel took every precaution necessary. Specifically, before Beerman was even served with the complaint, counsel confirmed that he had no documents at all related to N.M., the Tiscarenos, or the underlying conduct giving rise to this case. (*See* Statement of Facts, ¶ 4.)

**E.  Plaintiffs' Are Limited to Addressing Counsel's Representation of Beerman Only; Other Unrelated Issues Are Irrelevant**

Plaintiffs raise several issues that are irrelevant and unrelated to counsel's representation of Beerman, including Plaintiffs' references to the format of Defendants' motion for summary judgment (Motion, 45 and 64), the state contract (*id*, 66), and Defendant Fraiser (*id*. 65-67).  The Court specifically limited Plaintiffs' right to seek sanctions as to counsel's representation of Beerman only.  (*See* Ex. K, 124-125; *see also* Dkt. No. 393.)  As such, these issues, or any other issue not related to counsel's representation of Beerman, are not properly before the Court here and should be disregarded.

**F.  No Sanctions Against Defendants' Counsel Are Appropriate Here**

1.  Defendants' Counsel has Done Nothing to Invoke 28 U.S.C. § 1927

Plaintiffs argue that Defendants' counsel should be sanctioned under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying these proceedings.  (Motion, 68.)  Then, without *any* analysis or application related to § 1927, Plaintiffs simply move on to another topic.  (*Id*. at 68-69.)  Because of Plaintiffs' failure to articulate how § 1927 applies to the alleged conduct of Defendants' counsel, the Court should decline to issue any § 1927 sanctions.

Moreover, any claims that Defendants' counsel unnecessarily multiplied these proceedings is without merit, for the reasons discussed herein.  Indeed, the converse is true. Plaintiffs, through this Motion, an exceedingly large number of discovery requests, and other unsupportable actions in this matter, have dramatically increased the cost and breadth of this litigation far beyond what it ever should have been.  To be sure, Beerman should have never been a party to this matter.  (*See* Dkt. No. 392.)

As demonstrated herein, Plaintiffs' Motion is predicated on a fiction that is known to Plaintiffs to be false (*i.e.*, claiming that Beerman did not know of the complaint and claims against him, and that counsel never spoke with Beerman). Yet, Plaintiffs knowingly represent otherwise to the Court, thereby wasting the time and resources of Defendants and the Court. As such, § 1927 sanctions against Plaintiffs are necessary to punish Plaintiffs for forcing Defendants, their counsel, and the Court to waste tremendous time and resources addressing the Motion.[17]

### 2. The *Ehrenhaus* Spoliation Factors Are Not Applicable or Met

*Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), relied upon by Plaintiffs as support for severe sanctions, is inapplicable here. (*See* Motion, 66.) *Ehrenhaus* specifically evaluated sanctions under Rule 37(b)(2)(C), which permits the court to "issue *an order* dismissing the action if a party fails to obey *an order* to provide or permit discovery." *Ehrenhaus*, 965 F.2d at 920 (internal citations omitted) (emphasis added); *see also id.* at 918 ("In this appeal, we consider the scope of a district court's discretion to dismiss a complaint pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure as a sanction for the intentional violation of a discovery order."). Plaintiffs failed to invoke Rule 37 or DUCivR 37-1 at any time during this matter. As such, there can be and is no order issued by the Court "related to the particular claim which was at issue in the order to provide discovery." *Ehrenhaus*, 965 F.2d at

---

[17] As an additional matter, many of Plaintiffs' "Facts Supporting Motions" are almost verbatim copies of factual statements from Plaintiffs' Opposition to Motion for Summary Judgment (Dkt. No. 364). *See e.g.*, ¶ 53 of Dkt. No. 405 (compare with ¶ 269 of Dkt. No. 364); ¶ 54 of Dkt. No. 405 (compare with ¶ 270 of Dkt. No. 364); ¶ 56 of Dkt. No. 405 (compare with ¶ 272 of Dkt. No. 364); and, ¶ 57 of Dkt. No. 405 (compare with ¶ 273 of Dkt. No. 364). Forcing Defendants to again respond to identical factual allegations increased the cost of responding to Plaintiffs' Motion.

920 (*citing Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099 (1982)). As such, *Ehrenhaus* is not applicable to the matter before the Court. Simply put, Plaintiffs cannot be allowed to receive the benefit of Rule 37 without first having invoked Rule 37 <u>and</u> then having obtained a discovery order.

Moreover, the *Ehrenhaus* factors are to guide a court's decision on <u>dismissal</u> as a sanction. *Ehrenhaus*, 456 U.S. at 921. Dismissal, however, "defeats altogether a litigant's right to access the courts [and] should be used as a weapon of last, rather than first, resort." *Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir. 1988) (internal citations omitted). Indeed, dismissal represents "an extreme sanction appropriate only in cases of willful misconduct." *Ehrenhaus*, 456 U.S. at 921. Importantly, dismissal in *Ehrenhaus* was ordered because of misconduct of the party, not his attorneys. *Id.* at 918-20 (*see also Philips Elec. N. Am. Corp. v. BC Technical*, 773 F.Supp.2d 1149 (D. Utah 2011) (granting dismissal because of a *party's* conduct and failure to comply with discovery orders)).

Plaintiffs cannot demonstrate any misconduct by Defendants or their counsel, let alone willful misconduct justifying dismissal. As such, Ehrenhaus is not applicable. Moreover, the Court only permitted Plaintiffs' to seek sanctions against "the attorneys at Kirton & McConkie" and not the Defendants. (*See* Ex. K, 124-125; *see also* Dkt. No. 393.) Where the impact of any sanction should be lodged with either counsel or the client, depending on which was at fault (*see Cf. In re Sanction of Baker*, 744 F.2d 1438, 1442 (10th Cir. 1984) (*en banc*)), the extreme sanction of dismissal would be entirely inappropriate here as the Court only permitted sanctions to be requested against Defendants' counsel. As Plaintiffs state, "there is no evidence that Defendant Beerman participated in the fraud on the court [sic] or the discovery abuse or rule

violations . . ." (Motion, 71.) Defendants agree, and any request for sanctions should be limited to those the Court permitted Plaintiffs to seek.

In an attempt to improperly boot-strap to the Court's order permitting Plaintiffs' to seek sanctions against Defendants' counsel, Plaintiffs improperly seek sanctions that impact IHC. (*See* Motion, 72 ("Defendant IHC has undoubtedly benefitted from their counsel's spoliation of Defendant Beerman's information and documents in this case. . . Thus, the Court should fashion appropriate sanctions to deprive Defendant IHC of the benefit of their attorney's gross misconduct."); *see also id.*, 76 ("the risk that the jury might find in favor of IHC . . . may simply be too great to allow the case to proceed without entering the default of IHC, or without striking its defenses . . .") Plaintiffs' attempt to obtain sanctions against IHC lacks legal support. Indeed, the impact of the sanction should lie with the party ultimately found at fault. *Baker*, 744 F.2d at 1438. Where the Court's order specifically limited Plaintiffs to only being permitted to see sanctions against Defendants' counsel, any attempt to obtain a sanction against IHC here is improper and should not be permitted.

While *Ehrenhaus* is not applicable here (as discussed above), an analysis of its factors nonetheless demonstrates that *Ehrenhaus* does not support sanctions here.

### i. *Factor 1: The Degree of Actual Prejudice to the Non-Culpable Party*

The case in *Ehrenhaus* was dismissed because, *inter alia*, plaintiff Ehrenhaus continually caused delay and his actions increased the amount of attorneys' fees. *Ehrenhaus*, 965 F.2d at 921. Ehrenhaus' improper actions included, *inter alia*, open disregard for the court's order that he attend the deposition scheduled to take place in the courtroom and to be monitored by the judge. *Id.* at 918-19. There is nothing similar in this matter. There is no discovery order that

Beerman and/or his attorneys are accused of violating. Moreover, Beerman never had any knowledge of the N.M., the Tiscareno's, or the conduct giving rise to this matter. (*See* Ex. A at ¶¶ 4 and 9.) As such, there can be no prejudice to Plaintiffs for Beerman never having had this information. At best, any prejudice to Plaintiffs (if any) is of their own making by (1) delaying taking the deposition of Beerman until January 2013 and (2) failing to depose other individuals listed in Defendants' initial disclosures.

To support its claim of prejudice under this factor, Plaintiffs itemize eleven (11) areas in which they had hoped to receive testimony from Beerman. (*See* Motion, 73-74.) Seven of these areas related specifically to N.M. (*Id.* at (a)-(d), (f), and (h)-(i).) However, Beerman never knew of N.M. and would, therefore, never have been able to provide testimony regarding N.M. or his medical records, regardless of when he was asked. (*See* Ex. A, ¶¶ 4 and 9; *see also* Ex. D.)

One of the areas related to the prosecution of Abby Tiscareno. (*Id.* at (g).) Beerman had never heard of Ms. Tiscareno or her prosecution and, therefore, would not have been able to provide any testimony in this regard. (*See* Ex. A, ¶¶ 4 and 9; *see also* Ex. D.)

Two of the issues relate to Primary Children's medical records department and how child abuse cases are handled generally. (*Id.* at (e) and (j).) Plaintiffs cannot, however, claim any prejudice on this issue because they waited until January 2013 to depose Beerman, whose memory of the job he had over eight years previously had naturally faded. *Brigham Young University*, 282 F.R.D. at 572-73. Moreover, Plaintiffs cannot claim prejudice because they specifically chose not to depose the other three Primary Children's employees listed in

Defendants' initial disclosures that may have had information on these two areas.[18]  (*See* Ex. E; *see also* Ex. A, ¶ 24.)

The final area dealt with any documents pertinent to the aforementioned areas.  (Motion, 69 at (k).)  As stated above, Beerman did not have any documents, nor did he have rights in or possession, custody, or control of documents related to this matter after he left IHC.  (Ex. A, ¶¶ 4 and 9.)  Plaintiffs cannot seek sanctions simply because they did not get the testimony from Beerman they "reasonably anticipated" they would.  (Motion, 73.)  Plaintiffs were entitled to the testimony from Beerman that they received, which was that he knew nothing of this matter.

Plaintiffs disingenuously claim that Beerman was a "key player" in the instant matter. (*See* Motion, 70.)  This is belied by, *inter aliai*, a review of Plaintiffs' discovery efforts related to Beerman.  Only 2.5% (or 7 of 278) of Plaintiffs' discovery requests were aimed at Beerman. (*See* Statement of Facts, ¶¶ 14-17.)  Moreover, Beerman was so "key" to Plaintiffs' case that they waited until January 2013 to depose him.  (*See* Ex. J.)  Beerman was not key to Plaintiffs' case, best demonstrated by his dismissal.  (*See* Dkt. No. 392.)  Plaintiffs cannot satisfy the first *Ehrenhaus* factor.

### ii.  Factor 2: Interference with Judicial Process

The court in *Ehrenhaus* found that Ehrenhaus interfered with judicial process because he "flouted the court's authority" by not showing up for his deposition as required by court order.

---

[18] Plaintiffs claim that "the knowledge, information, and documents possessed by Defendant Beerman, as Director of Medical Records at PCMC, regarding these matters, were critical to Plaintiffs' understanding of how the events in this case unfolded."  (Motion, 53.)  Fatal to Plaintiffs' argument here is that they chose not to depose any of the three (3) PCMC employees listed in Defendants' initial disclosures that may have been able to testify on this issue.

*Ehrenhaus*, 965 F.2d at 921. Again, there is no court order here that Defendants and/or their counsel are accused of violating. As such, Plaintiffs' cannot satisfy the second *Ehrenhaus* factor.

Plaintiffs rely upon the various motions to dismiss, motions for summary judgment, and appeals that have been filed in this matter as support for their claim of judicial interference. (*See* Motion, 76-77.) This is unpersuasive as Defendants are surely permitted to seek dismissal of this matter through means specifically provided for in the Federal Rules of Civil Procedure. Indeed, Defendants' early motion to dismiss was granted (Dkt. No. 61) and Beerman was successfully dismissed from this matter (Dkt. No. 392.)

Plaintiffs also again claim that Defendants' counsel fabricated evidence and failed to preserve evidence. (Motion, 77.) For the many reasons discussed above, this is not true, and it does not support a claim of interference with judicial process. Plaintiffs cannot satisfy the second *Ehrenhaus* factor.

### iii. Factor 3: The Culpability of the <u>Litigant</u>

In *Ehrenhaus*, the court "made a finding of fact that Ehrenhaus simply and intentionally refused to appear, which the Court finds to be in bad faith and wilful and intentional disobedience to two court orders. It is *plaintiff's* acts, not those of his counsel, which are at issue here." *Ehrenhaus*, 965 F.2d at 921 (emphasis added). Plaintiffs attempt to mislead the Court here into believing that this factor actually deals with the culpability of Defendants' "counsel." (*See* Motion, 78.) In fact, Plaintiffs devote their entire analysis of the third factor to the action of Defendants' *counsel*. (*Id.*, 78-80.) Plaintiffs' analysis is of no worth, however, as the third *Ehrenhaus* factor clearly focuses on the culpability of the *litigant* not the litigant's counsel. *Ehrenhaus*, 965 F.2d at 921.

Importantly, Plaintiffs do not ascribe any bad conduct to Beerman.  Indeed, Plaintiffs maintain that "there is no evidence that Defendant Beerman participated in the fraud on the court [sic] or the discovery abuse or rule violations . . ." (Motion, 71.)  Defendants agree, and no further analysis of the third *Ehrenhaus* factor is necessary.

### iv.   Factor 4: Warning About Sanctions

In *Ehrenhaus*, the court held that the fourth factor (*i.e.*, whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance) was satisfied because Ehrenhaus was put on notice "that failure to comply with the court's order would subject Ehrenhaus' claims to dismissal." *Ehrenhaus*, 965 F.2d at 921.  As there has been no predicate discovery order here, there has similarly been no advance warning by the Court. Indeed, the only time the Court has addressed the possibility of sanctions was at the October 1, 2013, summary judgment hearing, and then only in regard to Defendants' *counsel* and not the named Defendants.  (*See* Dkt. No. 393; *see also* Ex. K, 124-125.)

Plaintiffs essentially dismiss this factor and provide a non-responsive analysis.  (*See* Motion, 80.)  Nonetheless, where dismissal would tremendously impact IHC, and where the complained of conduct relates to IHC's counsel's actions, dismissal is not an available sanction here.[19]  *Baker*, 744 F.2d 1438; *see also M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987) ("[i]f the fault lies with the attorney, that is where the impact of the sanctions should be.").  The fourth *Ehrenhaus* factor cannot be satisfied.

---

[19] Similarly, the lesser (yet still severe) sanction of default ordered in *Philips* is not appropriate here as the punishment would still be improperly levied against IHC (not to mention that no improper conduct occurred).  *Philips*, 773 F.Supp.2d at 1159.

*v.   Factor 5: The Efficacy of Lesser Sanctions*

In *Ehrenhaus*, the court felt that dismissal "might in fact be too *lenient* a sanction and that jailing Ehrenhaus for contempt might have been more appropriate." *Ehrenhaus*, 965 F.2d at 922; *see also Philips*, 773 F.Supp.2d at 1159 (referring conduct of individuals committing perjury to "Acting United States Attorney for the District of Utah for such action as she deems is appropriate."). Moreover, the judge in his order "made specific findings of fact to justify the sanction of dismissal . . ." *Id.* As demonstrated above, no evidence related to Beerman was fabricated or destroyed. (*See* Statement of Facts, ¶ 34.) As such, no sanctions are appropriate, including any and all lesser sanctions requested by Plaintiffs. Moreover, there is no predicate discovery order in this case even making sanctions under Rule 37(b)(2)(c) available. Based upon the foregoing, the Plaintiffs cannot demonstrate that *Ehrenhaus* is applicable here.

Where Plaintiffs' predicate argument for sanctions does not exist, none of the requested sanctions against Defendants' counsel are appropriate. (*See* Motion, 81-83.)

## G. Plaintiffs' "Fact" Section Violates DUCivR 7-1(a)(3)(B) and The Court's Order, in Addition to Being Improperly Argumentative and Conclusory

DUCivR 7-1(a)(3)(B) states that motions may not exceed "ten (10) pages, exclusive of any of the following items: face sheet, table of contents, statement of precise relief sought and grounds for relief, concise introduction and/or background section, <u>statements of issues and facts</u>, and exhibits." DUCivR 7-1(a)(3)(B) (emphasis added). Plaintiffs sought and received leave from the Court to file 45 pages of argument with their Motion. (*See* Dkt. No. 404.) While Plaintiffs' Motion only contains 34 pages under their designated "Argument" section (pp. 49-83), Plaintiffs have improperly included substantial argument in their "Facts Supporting Argument" section of the Motion (pp. 10-48). For example, ¶¶ 7, 9, 13, 15, 19-21, 23, 25, 27, 31-32, 35, 38-

39, 41-42, 44, 46, 61, 67, and 70 of Plaintiffs' "Facts Supporting Argument" are improperly argumentative and conclusory.  (*See* Ex. A.)   When these additional arguments are combined with Plaintiffs' actual Argument section, Plaintiffs' arguments would exceed the 45-page limit.  As such, Plaintiffs are in violation of DUCivR 7-1(a)(3)(B) and Dkt. No. 404.[20]

Plaintiffs' "Facts Supporting Argument" section is further improperly argumentative and conclusory.  This is improper for a "Facts" section.  *See Wells-Fenton v. Mineta*, No. IP02-146-CMS, 2003 WL 23220054 at *1 (S.D. Ind. Dec. 30, 2003) (unpublished) (Plaintiff "improperly includes arguments in her fact section . . . [Fact sections] should not be argumentative.  Accordingly, the Court will ignore the above-listed statements and any other similar argumentative language in Wells' fact section."); *see also Huff v. Colorado Dept. of Corrections*, Civil Action No. 11-cv-00149-CMA-MJW, 2012 WL 3135715 at *1 (D.Colo. July 31, 2012) (unpublished) ("Unfortunately, Plaintiff's response to Defendants' facts section is replete with assertions that are argumentative, non-responsive, and/or unsupported by her citations to record evidence . . . Such sham disputes hinder the Court's ability to discern what [the facts are].");  *see also Low v. Chu*, No. 09-CV-398-CVE-PJC, 2009 WL 3104040 at *1 (N.D.Okla. Sept. 21, 2009) (unpublished) ("Plaintiff's "facts" section also contains many statements which are argumentative or conclusory."); *see also Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009) (striking all portions of "fact" section that are "incendiary and inappropriately argumentative.").   Where Plaintiffs' "Facts Supporting Argument" section is improperly

---

[20] Plaintiffs are similarly in violation of DUCivR 7-2(b), which requires: "Citations to unpublished opinions <u>must</u> include an appropriate parenthetical notations stating that it is an unpublished decision."  DUCivR 7-2(b) (emphasis added).  Plaintiffs cite to four opinions that are unpublished (*see* Motion, 4-5: *Garcia*, *Hart*, *Myers*, and *Webb* cases) without complying with DUCivR 7-2(b).

argumentative and conclusory, it made it very difficult for Defendants to fashion appropriate responses to Plaintiffs' "factual" contentions.  *See Goodman v. Albany Trans. Inc.*, 103 F.Supp.2d 112, 116 (N.D.N.Y. 2000) ("Each [citation in the "facts" section] is a mixture of statements that are at least colorably assertions of fact, and statements that are argumentative and conclusory. . . [Such citations] are so broad . . . as to be useless for a non-movant trying to fashion his required opposition statements of material fact.").

At the conclusion of the October 1, 2013 oral argument, the Court granted sanctions against Defendants' counsel for "their failure to comply with the formatting requirements of local rule DUCiV4 56-1(b).  (*See* Dkt. No. 393.)  Plaintiffs subsequently filed their request for sanctions (*see* Dkt. No. 394), which motion has now been fully briefed.  (*See* Dkt. Nos. 395 and 398.)  To the extent the Court grants sanctions against Defendants' counsel for their failure to comply with DUCivR 56-1(b) (as Plaintiffs requested in Dkt. No. 394), Defendants suggest that for these reasons, as well as those additional reasons set forth in Section H below, the Court should issue sanctions against Plaintiffs' counsel.

### H.  Sanctions Against Plaintiffs' Counsel Are Warranted and Necessary

    1.  <u>Plaintiffs' Motion Lacks Any Foundation.   As such, Sanctions Against Plaintiffs Are Appropriate</u>

Parties that pursue frivolous arguments in support of a motion for sanctions are themselves subject to sanctions.  *Foy v. First Nat'l Bank of Elkhart*, 868 F.2d 251, 258 (7th Cir. 1989) ("Last we rebuke – we more than rebuke, we punish – [Plaintiff] for his frivolous argument that [Defendant] should be sanctioned . . . A frivolous request for sanctions is itself sanctionable and we therefore direct [Plaintiff] to pay the attorneys' fees reasonably incurred by [Defendant] in defending against the request"); *see also Atlantic Thermoplastics Co. v. Faytex*

*Corp., 970 F.2d 834, 835 n. 1,* (Fed.Cir.1992) ("[u]nfounded requests for sanctions are themselves frivolous and sanctionable."). "Any frivolous motion, pleading, or request is subject to sanctions, including a motion or request for sanctions." *Meeks v. Jewel Co., Inc.*, 845 F.2d 1421 (7th Cir. 1988). A request for sanction cannot be "flippant" or made "with impunity." *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 946 (7th Cir. 1988). "A baseless sanctions motion unfairly forces an opponent into satellite litigation while diverting attention away from the real issues in a case." *Schendel v. Curtis*, 83 F.3d 1399, at 1406 (Fed. Cir. 1996). Baseless motions for sanctions also "unjustly challenges the integrity of the accused party and the professionalism of its counsel, and it wastes judicial resources." *Id.* Requests for sanctions that contain "excessive impertinent statements or personal attacks" are themselves sanctionable. *Bergeson v. Dilworth*, Civ. A. No. 87–1579–T, 1990 WL 260525 at *3 (D.Kan. Dec. 12, 1990) (unpublished).

In this matter, sanctions against Plaintiffs and their attorneys of record are appropriate and necessary. The foundation of Plaintiffs' argument here is that Beerman was not aware of the complaint and claims against him, and that counsel did not involve Beerman in the litigation or communicate with him. As demonstrated above, this is patently false, and Plaintiffs knew this was false when they filed their Motion. (*See* Statement of Facts, ¶¶ 4-5, 9, and 21-22.) Nonetheless, Plaintiffs persisted in repeatedly attempting to mislead the Court that Beerman did not know of the complaint served on him by Plaintiffs' counsel, and was never even spoken to by his counsel. *See* Dkt. No. 405 at 1-2; *see also id.* at 19, ¶ 19 (claiming that Beerman had *never been contacted* and told that he was part of this lawsuit) (emphasis added); *id.* at 46, ¶ 70(A) ("*Failed to contact* Defendant Beerman during the course of the litigation . . .) (emphasis added);

*id.* at 47, ¶ 70(D) ("Ambushing Plaintiffs' counsel in Defendant Beerman's deposition with Defendant Beerman's testimony that counsel had *never contacted* him during the course of the litigation . . ." (emphasis added); *see also id.* at 54 (claiming that Beerman's counsel was able to "destroy Defendant Beerman's potential evidence against Defendant IHC and Defendant Frasier by *never discussing the case* with Defendant Beerman and shuffling him off to the sideline . . ." (emphasis added); *see also id.* at 55 ("Because Defendants' counsel *never contacted* Defendant Beerman about the Complaint in this case . . .") (emphasis added); *see also id.* at 79 ("This course of conduct over several years of litigation, suggests that Defendants' counsel deliberately sought to avoid any contact with Beerman").)  Similarly, Plaintiffs' counsel's arguments at the October 1, 2013 hearing were false and misleading regarding Defendants' counsel's discussions with Beerman.  (*See* Statement of Facts, ¶ 28.)

Given the known complete falsity of Plaintiffs' representations to the Court, and the unreasonable length of the instant Motion, Defendants were forced to spend considerable time and resources crafting this response.  This also included opposing Plaintiffs' motion to the Tenth Circuit that it remand Defendants' qualified immunity appeal pending resolution of the Motion.  As such, Defendants should be able to, at a minimum, recoup all of the time and cost spent on this opposition and the opposition to the motion for remand before the Tenth Circuit, which time was spent specifically refuting representations that Plaintiffs made despite knowing they were false.

### 2.  Plaintiffs' Counsel Have Violated The Rules of Professionalism and Civility

DUCivR 83-1.1(g) states that this district "endorses the Utah Standards of Professionalism and Civility to guide attorney conduct in cases and proceedings in this court."

DUCivR 83-1.1(g).  The Utah Standards of Professionalism and Civility ("Standards") require that "lawyers shall treat all other counsel . . . in a courteous and dignified manner."  Utah Standards of Professionalism and Civility, 1.  The Standards further require that lawyers "shall not, without an adequate factual basis, attribute to other counsel . . . improper motives, purpose, or conduct.  Lawyers should avoid hostile, demeaning, or humiliating words in written or oral communications."  *Id.*, 3.  "[P]resentations should not disparage the integrity, intelligence, morals, ethics, or personal behavior of an adversary unless such matters are directly relevant under controlling substantive law."  *Id.*  Moreover, "[l]awyers should not lightly seek sanctions and will never seek sanctions against or disqualification of another lawyer for any improper purpose."  *Id.*, 5.

Plaintiffs' Motion is full of improper, defamatory, and unfounded *ad hominem* attacks on Defendants' counsel, as was Plaintiffs' motion for summary judgment.  These include attacks on counsels' integrity, motives, actions, and ability to practice before the Court.  (*See e.g.*, Motion, 58 ("For all the Court or Plaintiffs know, Defendants' counsel simply fabricated Defendant Beerman's responses to the allegations of [the complaints] based upon their own view of what responses would most assist their defense of Defendant IHC."); *see also id.*, 75 ("Plaintiffs will have to expend enormous additional effort and expense to ferret out Defendants' counsel's lies and to double check every piece of information . . . Plaintiffs have absolutely no confidence that Defendants' counsel would not attempt to offer additional false evidence at trial."); *see also id.*, 78 ("Worse yet, the sorry attempts of Defendants' counsel to rationalize their gross misconduct in this case, creates considerable doubt about whether Defendants' counsel should be allowed to continue representing any parties in this case, or in any case in this Court."); *see also id*

("Defendants' counsel's egregious attorney misconduct . . . has reasonably poisoned Plaintiffs' counsel's ability to trust anything Defendants' counsel does or says in the litigation going forward"); *see also id.*, 81 ("Nor is there any reason to think that Defendants' counsel will cease their misconduct in the trial of this action, particularly since they have successfully employed this strategy to obtain the dismissal of Defendant Beerman).)

Plaintiffs' claim that Mr. Dahlquist, lead counsel for Defendants, admitted that "they had fabricated all of Defendant Beerman's responses to pleadings, his disclosures, and his responses to Plaintiffs' prior discovery requests." (Motion, 47.) This is not true. Incredibly, the reference cited for this claim is *Plaintiffs' counsel's own statements* at the October 1, 2013 oral argument on the summary judgment motions. (*See id*, n. 100 (citing October 1, 2013 oral argument, 103:14 – 104:7, attached hereto with Ex. K.) Plaintiffs cannot be permitted to attack Defendants' counsel in this manner. These attacks are spurious, personal, and the epitome of unprofessional conduct by an attorney. Moreover, these attacks have sent this litigation spinning off into a world where the merits have become subservient to Plaintiffs' personal attacks. In no uncertain terms, if such conduct is permitted without consequence, it will entirely extinguish all civility and professionalism. The Court should not permit this.

3. <u>Plaintiffs' Counsel Abuses the Right to Seek Sanctions</u>

Unfortunately, a review of the cases filed in this district by plaintiffs' counsel indicates that sanctions are regularly sought. For example, Plaintiffs' counsel sought sanctions in the following matters filed in this district:[21] *See, Affiliated Ute Citizens of the State of Utah v. Ute*

---

[21] This list is not meant to be exhaustive of all matters wherein Plaintiffs' counsel has sought sanctions. Moreover, no review of cases filed by Plaintiffs' counsel in the Utah state courts or

*Indian Tribe et al.*, Case No. 2:85-CV-00569-BSJ (Dkt. Nos. 76 and 77) (relevant portions of case docket attached hereto as Exhibit N); *see also Scott v. Surgitek*, Case No. 1:98-CV-00007-BSJ (Dkt. Nos. 5 and 6) (relevant portions of case docket attached hereto as Exhibit O); *see also Cobb v. Surgitek*, Case No. 1:98-CV-00008-DB (Dkt. Nos. 5 and 6) (relevant portions of case docket attached hereto as Exhibit P); *see also Jimenez v. Brummer*, Case No. 2:00-CV-00954-TS (Dkt. Nos. 72 and 73) (relevant portions of case docket attached hereto as Exhibit Q); *see also Butler v. Delta Airlines, et al.*, Case No. 2:02-CV-00196-TC (Dkt. Nos. 49 and 50) (relevant portions of case docket attached hereto as Exhibit R); *see also Sorenson v. University of Utah Hospital*, Case No. 2:95-CV-00479-DAK (Dkt. Nos. 44 and 45) (relevant portions of case docket attached hereto as Exhibit S); *see also Baker v. Sugitek et al.*, Case No. 2:98-CV-00067-BS (Dkt. Nos. 6 and 7) (relevant portions of case docket attached hereto as Exhibit T); *see also Curry v. Surgitek, et al.*, Case No. 2:98-CV-00071-DAK (Dkt. Nos. 6 and 7) (relevant portions of case docket attached hereto as Exhibit U); *see also Thomas v. Surgitek et al.*, Case No. 2:98-CV-00066-DB (Dkt. Nos. 5 and 6) (relevant portions of case docket attached hereto as Exhibit V); *see also Evans v. Dean Foods et al.*, Case No. 2:97-CV-00958-BSJ (Dkt. Nos. 86 and 87) (relevant portions of case docket attached hereto as Exhibit W); *see also Jones v. Surgitek et al.*, Case No. 2:98-CV-00068-DAK (Dkt. Nos. 5 and 6) (relevant portions of case docket attached hereto as Exhibit X); *see also Clark v. Surgitek et al.*, Case No. 2:98-CV-00069-DS (Dkt. Nos. 5 and 6) (relevant portions of case docket attached hereto as Exhibit Y); *see also Roskelley v. Surgitek et al.*, Case No. 2:98-CV00070-DB (Dkt. Nos. 6 and 7) (relevant portions of case docket attached hereto as Exhibit Z); *see also Murdock v. Ute Indian Tribe of the Unitah and Ouray*

---

federal courts outside of this district was undertaken.  This list only includes a review of some of the cases filed by Plaintiffs' counsel in this district.

*Reservation*, Case No. 2:89-CV-00982-JTG (Dkt. Nos. 40 and 41) (relevant portions of case docket attached hereto as Exhibit AA); and *see also Vera v. UTHUM et al.*, Case No. 1:97-CV-00073-BSJ (Dkt. Nos. 32 and 33) (relevant portions of case docket attached hereto as Exhibit BB). Defendants make no representation as to the content and/or purpose of each of the aforementioned requests for sanctions.[22] Instead, this extensive list provides insightful context as to Defendants' belief that Plaintiffs' counsel is using the pursuit of sanction as an improper litigation tool in this matter.[23] *See Utah Standards of Professionalism and Civility*, 5 ("Lawyers should not lightly seek sanctions and will never seek sanctions against or disqualification of another lawyer for any improper purpose.").

Not only is Plaintiffs' request for sanctions unfounded, the regularity at which Plaintiffs' counsel apparently seeks sanctions is alarming. As such, the Court should curb Plaintiffs' counsel's abuse of the right to seek sanctions. This should not just be a denial of Plaintiffs' Motion, but also a sanction against Plaintiffs' counsel for their abuse of the right to seek sanctions absent justifiable grounds. The Court has inherent powers to sanction bad litigation conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S.Ct. 2133 (1991). Without firm and specific sanctions from the Court, it is likely that Plaintiffs' counsel's abuse will continue, thereby creating "satellite litigation while diverting attention away from the real issues in a case." *Schendel* 83 F.3d at 1406.

---

[22] In fact, many could not even be downloaded on PACER.

[23] This could include, for example, Plaintiffs aggressively pushing satellite and tangential issues in order to increase the overall amount of fees incurred in hopes of a larger fee award under 42 U.S.C. § 1988.

Defendants respectfully submit that sanctions against Plaintiffs' counsel are necessary to rebuke Plaintiffs for bring a motion devoid of any merit, for unfairly and personally attacking Defendants' counsel, and for wasting the significant resources of Defendants and the Court.

## CONCLUSION

Plaintiffs' Motion should be denied.

DATED this 25th day of November, 2013.

KIRTON McCONKIE

/s/Charles W. Dahlquist, II
Charles W. Dahlquist, II
Robert R. Wallace
Michael D. Johnston
Attorneys for Defendants William Beerman and
IHC Health Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November, 2013 a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system, which sent electronic notification of such filing to all counsel registered thereon.

/s/Charles W. Dahlquist, II
Charles W. Dahlquist, II
Robert R. Wallace
Michael D. Johnston
Attorneys for Defendants William Beerman and
IHC Health Services, Inc.