IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ABBY TISCARENO and GUILLERMO TISCARENO,<br><br>Plaintiffs,<br><br>v.<br><br>LORI FRASIER, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:07-cv-00336<br><br>Judge Clark Waddoups |

This case comes before the court on Plaintiff Abby Tiscareno's and Guillermo Tiscareno's (collectively Plaintiffs') Motion for Order Finding Defendant IHC and its Counsel in Contempt for Failure to Comply with Sanctions Order and Scheduling Further Proceedings (Dkt. No. 470) and Plaintiffs' Motion for Entry of Default Judgment and Other Sanctions Against Defendant Dr. Lori D. Frasier and her Counsel for Fraud on the Court (Dkt. No. 485). Dr. Frasier and IHC (collectively Defendants) opposed both motions by asserting that the district court lacks jurisdiction to consider them. (Dkt. Nos. 493, 495). Dr. Frasier has also asked the court to enter judgment in her favor. (Dkt. No. 480). The court ordered supplemental briefing on the jurisdictional issue and held a hearing on the motions, taking the motions under submission.[1] For the reasons explained, the court: 1) DENIES Plaintiffs' motion finding Defendant IHC in contempt for failure to comply with the court's sanctions order (Dkt. No. 470); 2) DENIES Plaintiffs' motion for default judgment and other sanctions against Dr. Frasier (Dkt. No. 485); and 3) GRANTS Dr. Frasier's motion for entry of judgment in her favor (Dkt. No. 480).

---

[1] The court has not heard argument on Plaintiffs' Motion for Entry of Default Judgment and Other Sanctions Against Defendant Lori D. Frasier and her Counsel for Fraud on the Court (Dkt. No. 485). Nevertheless, the court finds a hearing is unnecessary to resolve the issues raised in that motion.

**BACKGROUND**

This is a tragic case for everyone involved, made all the more challenging by the parties' antagonistic and contentious behavior throughout the litigation. The case began in November 2003 when a one-year-old boy (N.M.) experienced a severe brain injury that left him permanently disabled. *Tiscareno v. Frasier*, 603 F. App'x 672, 674 (10th Cir. 2015). N.M. was taken to Primary Children's Medical Center—a children's hospital operated by Defendant IHC—where treating physicians began to suspect that N.M.'s injuries were the result of child abuse. *See id.* at 674–75 (Dkt. No. 343). IHC administrators contacted Dr. Frasier, a pediatrician whose job involved the assessment of medical information in cases of suspected child abuse. *Tiscareno*, 603 F. App'x at 675. Dr. Frasier suspected N.M.'s head injuries were the result of violent shaking, which she opined could only have occurred while he was in daycare. *Id.* As a result of Dr. Frasier's assessment, Ms. Tiscareno, N.M.'s daycare provider at the time, was blamed for N.M.'s injuries. *Id.* The State subsequently prosecuted Ms. Tiscareno for child abuse, but she was ultimately acquitted after two trials. *Id.* at 675–76.

Plaintiffs then filed a 42 U.S.C. § 1983 action against Defendants, asserting claims for malicious prosecution and failure to disclose exculpatory evidence in violation of *Brady v. Maryland* and its progeny.[2] Specifically, Plaintiffs claimed Dr. Frasier failed to consider, and IHC failed to disclose to prosecutors, a pathology report showing prior bleeding on N.M.'s brain—a finding inconsistent with the theory that Ms. Tiscareno had abused N.M while he was in her care. *Tiscareno*, 603 F. App'x at 677.

Dr. Frasier and IHC moved for summary judgment on Plaintiffs' claims. In relevant part, IHC asserted that it was not a state actor, a prerequisite to a viable § 1983 claim. *See Marcus v.*

---

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963) (holding that the prosecution bears an obligation to disclose material exculpatory evidence); *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 824 (10th Cir. 1995) (holding that the prosecution for *Brady* purposes include the prosecutors as well as law enforcement personnel and "other arms of the state").

*McCollum*, 394 F.3d 813, 818 (10th Cir. 2004) (explaining that § 1983 suits are viable only where there is state action) (Dkt. No 343). In turn, Dr. Frasier asserted that she was entitled to qualified immunity against Plaintiffs' claims because she did not violate any clearly established constitutional right. *See Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) ("When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." (internal quotation marks omitted)) (Dkt. No. 344).

The court denied in part IHC's motion for summary judgment, determining that material fact questions existed regarding whether IHC was engaged in state action through its relationship with Dr. Frasier. (Dkt. No. 369, p. 122). Central to this conclusion was the existence of a contract (the State Contract)—which was not fully produced to Plaintiffs until almost six years after the complaint was filed—that illustrated IHC employed and paid Dr. Frasier's salary for providing medical assessments in suspected child abuse cases, in fulfillment of IHC's obligation to assist state agencies in the investigation and prosecution of these cases. (*See id.*). In addition, the court denied Dr. Frasier's motion for summary judgment because, in the court's view, questions of fact existed regarding whether Dr. Frasier had violated Ms. Tiscareno's clearly established constitutional rights through her role in Ms. Tiscareno's prosecution. (*Id.*, p. 47–50, 71–75). Defendants filed interlocutory appeals of these decisions to the Tenth Circuit.

While the appeals were pending, Plaintiffs sought sanctions related to IHC's conduct in failing to fully disclose the State Contract in a timely fashion and in taking the position throughout the litigation that IHC was not a state actor. (Dkt. No. 405). Plaintiffs also moved the Tenth Circuit to remand the case to the district court so the district court could consider the sanctions issue. The Tenth Circuit granted the motion, recognizing that court retained jurisdiction over the sanctions issue and "any other matters collateral to the appeals." *Order*, 13-4156 (10th Cir. Nov. 21, 2013).

Accordingly, this court considered the motion for sanctions and granted it in part. Specifically, the court determined IHC's failure to disclose the full State Contract and obfuscation of its existence during discovery was prejudicial to Plaintiffs, "disingenuous—and perhaps dishonest." (Dkt. No. 466, pp. 4, 6). The court found further that, in light of the State Contract, IHC's litigation position that it was not a state actor was "ethically questionable." (*Id.*, p. 8). The court therefore indicated it would entertain briefing regarding the amount of monetary sanctions appropriate to remedy the prejudice caused by IHC's failure to timely disclose the complete State Contract. (*Id.*, p. 17). In addition, the court ordered Defendants to produce the full State Contract and any other agreements or documentation relating to Dr. Frasier's employment relationship with IHC, and stated that it would be open to an argument that IHC be prohibited from asserting at trial that it was not a state actor. (*Id.*, p. 17).

After the court awarded sanctions, IHC moved in the Tenth Circuit for a stay and vacatur of all district court orders issued after Defendants' notices of appeal of the summary judgment rulings. The Tenth Circuit granted the motion, in part. It stayed the effect of the court's sanctions order pending resolution of the merits of the appeal, but declined to rule on IHC's motion to vacate any post-appeal orders. *Order*, 13-4156 (10th Cir. Dec. 11, 2014). Ultimately, turning to the merits of the case, the Tenth Circuit concluded Defendants were entitled to qualified immunity because the facts failed to show that their conduct violated a clearly established constitutional right. *See Tiscareno*, 603 F. App'x at 681. Thus, the Tenth Circuit remanded the case with instructions that this court grant Defendants' motions for summary judgment based on qualified immunity. *Id.*

Finally, after resolving the merits of the appeal, the Tenth Circuit denied IHC's motion to vacate the court's sanctions order (Dkt. No. 466), noting that it lacked the jurisdiction to consider the propriety of the order in the absence of a notice of appeal from IHC, and because the order was not final. *Order*, 13-4156 (10th Cir. Dec. 29, 2014).

Plaintiffs have now asked this court to enforce its sanction order against IHC (Dkt. No. 466) by compelling IHC to produce documents relevant to the state action issue. (Dkt. No. 470). Plaintiffs have also asked the court to exercise its inherent authority to impose sanctions for fraud on the court by entering default judgment or other appropriate remedy against Dr. Frasier and her counsel. Plaintiffs allege Dr. Frasier and her counsel made misrepresentations during discovery regarding Dr. Frasier's employment and were complicit in IHC's misrepresentations to the court about Dr. Frasier's relationship with IHC. (Dkt. No. 485). For her part, Dr. Frasier asks this court to enter judgment in her favor pursuant to the Tenth Circuit's mandate. (Dkt. No. 480).[3] The court considers each motion in turn.

## ANALYSIS

**A. Plaintiffs' Motion to Enforce the Court's Sanctions Order Against IHC**

Plaintiffs first ask the court to hold IHC in contempt for its failure to comply with the court's sanctions order against IHC. (Dkt. No. 470). In response, IHC asserts that the court lacks the jurisdiction to do so. (Dkt. Nos. 475, 495). Thus, the court begins by considering its jurisdiction to enforce its sanctions order against IHC before turning to the merits of Plaintiffs' motion.

1. Jurisdiction

IHC contends this court lacks jurisdiction to enforce its sanctions order, arguing that the sanctions order is inextricably tied up with the merits of the case and is therefore not a collateral matter over which the district court retained jurisdiction after the notices of appeals were filed. (Dkt. No. 495). It claims further that the Tenth Circuit's mandate only allows this court to enter judgment in favor of Defendants. (*Id.*). IHC's jurisdictional arguments fail for several reasons.

---

[3] While the briefing on Plaintiffs' sanctions motions was pending, Dr. Frasier moved the Tenth Circuit to enforce its mandate and order that the mandate prohibits the district court from entertaining the motion for sanctions against Dr. Frasier and her counsel. The Tenth Circuit denied the motion. *Order*, 13-4161 (10th Cir. Nov. 3, 2015).

To begin, the district court had the jurisdiction to enter its sanctions order against IHC while Defendants' appeals were pending because the sanctions issue is a collateral matter. *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998) (recognizing that a district court retains the jurisdiction to award attorney fees as a sanction because such an award is collateral to the merits of the underlying action); *see also Hutchinson v. Beckworth*, 474 F. App'x 736, 739 (10th Cir. 2012) (recognizing that when a case is appealed, the district court retains jurisdiction to address "the issue of fees and costs as a sanction for continued vexatious conduct" because the "notice of appeal divests the district court of jurisdiction over matters involved in the appeal, but it retains jurisdiction to consider collateral matters such as sanctions" (emphasis omitted)).[4] Indeed, the relevant inquiry for the purposes of the sanctions motion, i.e., whether IHC had acted in bad faith by failing to disclose relevant evidence and making misleading representations to the court, addresses a question wholly independent of the merits of the appeal, i.e., whether Defendants are entitled to summary judgment on Plaintiffs' claims as a matter of law.[5] The Tenth Circuit's decision remanding the case to the district court for the express purpose of resolving the sanctions issue and any other collateral matters further confirms the collateral nature of the sanctions order.

To be sure, IHC is correct that the existence of the State Contract had relevance to the case because it was highly probative of the veracity of IHC's arguments regarding its status as a state actor. *Cf. Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 206 (1999) (holding that a Rule 37 sanction order was not an immediately appealable collateral order because such orders are often inextricably tied to the merits of a case). It is for precisely this reason that IHC's failure to acknowledge or fully produce it was so troubling. But the State Contract's relevance to the case

---

[4] Though not binding, the court finds the Tenth Circuit's unpublished opinions persuasive. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

[5] The court finds the parties' supplemental authority (Dkt. Nos. 514, 516), in which they seek to reargue the merits of whether IHC engaged in sanctionable conduct, unpersuasive. The court has already determined that IHC engaged in sanctionable conduct by failing to disclose the full State Contract. IHC has not sought reconsideration of that decision, and the court will not entertain continued arguments related to IHC's conduct in this respect.

6

does not transform this court's determination that IHC had engaged in sanctionable conduct into a merits-based decision on Defendants' motions for summary judgment. *See, e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."); *Lancaster*, 149 F.3d at 1237 (holding that the court retained jurisdiction, after a notice of appeal was filed, to determine a Rule 37 sanctions request); *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 645 (6th Cir. 2006) (holding that a court's order imposing sanctions under either 28 U.S.C. § 1927 or its inherent authority is collateral to the merits because, like Rule 11 sanctions, "neither bears on the merits of a case, and both empower the court to command obedience to the judiciary and to deter and punish those who abuse the judicial process").[6]

Likewise, the court retains the power to enforce its collateral sanctions order after the Tenth Circuit's resolution of the merits of the appeal. As explained, the Tenth Circuit declined IHC's invitation to vacate the sanctions order, and has now lifted its decision staying the order's effect. Moreover, both the Supreme Court and Tenth Circuit have made clear that district courts retain the jurisdiction to award sanctions or enforce a sanctions order even after a case has been resolved on the merits. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56 (1991) (affirming post-judgment sanction imposed pursuant to the court's inherent authority to sanction bad faith litigation conduct); *Cooter & Gell*, 496 U.S. at 396 (holding that a court could impose Rule 11 sanctions after a case is no longer pending); *Lancaster*, 149 F.3d at 1237 (considering a Rule 37 motion filed after summary

---

[6] Relatedly, this court rejects the notion that IHC could be immunized from engaging in sanctionable conduct during the litigation simply because it was later determined to be entitled to qualified immunity. Defendants are correct that qualified immunity is an immunity from suit that protects the official from liability as well as from the ordinary burdens of litigation, which includes "far-ranging discovery." *See Workman v. Jordan*, 958 F.2d 332, 335 (10th Cir. 1992). But Defendants provide the court with no authority to suggest that an official who is later determined to be entitled to qualified immunity can also be immunized from the sanctionable conduct in which it engaged during litigation. Accordingly, the court declines to adopt Defendants' proposed rule.

judgment was entered); *see also Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1553 (10th Cir. 1996) (holding that a sanction imposed pursuant to Rules 16(f) and 37(b) is enforceable even if the court is later determined to lack subject-matter jurisdiction over the case, because the purpose is to punish bad faith conduct); *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1220–21, 1223–24 (10th Cir. 2006) (affirming in part a 28 U.S.C. § 1927 sanctions award that was ordered well after the underlying case was dismissed with prejudice at the plaintiff's request).

Finally, contrary to IHC's position, the Tenth Circuit's mandate that Defendants be granted summary judgment cannot be interpreted to limit the court's jurisdiction to enforce the sanctions order against IHC. To assess the court's authority on remand, the court must carefully consider the language of the mandate to look for any specific limitations on the scope of remand. *See United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011); *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003). In the absence of any specific limitations, the court may exercise its discretion in determining what may be heard. *See West*, 646 F.3d at 749; *accord Procter & Gamble*, 317 F.3d at 1126 ("Although a district court is bound to follow the mandate, and the mandate controls all matters within its scope, . . . a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." (internal quotation marks omitted)).

Engaging in this inquiry here, the court finds the Tenth Circuit's mandate does not limit the court's jurisdiction to enforce its collateral sanctions order. Rather, the mandate is plainly limited to the question of whether Defendants were entitled to summary judgment on qualified immunity grounds. Nowhere did the Tenth Circuit's opinion purport to consider the issue critical to the sanctions holding: whether IHC engaged in bad faith by failing to disclose evidence relevant to the state action question. Indeed, the Tenth Circuit specifically declined to decide whether IHC was a state actor because it determined that even if IHC were, it was nevertheless entitled to qualified

immunity. *See Tiscareno v. Frasier*, 603 F. App'x 672, 680 n.7 (10th Cir. 2015).[7] And rather than address the court's sanctions order, the Tenth Circuit simply instructed the court to grant Defendants' motions for summary judgment based on qualified immunity. Thus, the mandate cannot reasonably be interpreted to preclude the court from enforcing the sanctions order. *Compare West*, 646 F.3d at 749 (concluding that where the Tenth Circuit remanded for resentencing for the purpose of making factual findings regarding sentencing enhancements, the court was also free to consider whether restitution was proper), *with Colo. Interstate Gas Co. v. Nat. Gas Pipeline Co. of Am.*, 962 F.2d 1528, 1534 (10th Cir. 1992) (holding that the district court, on remand to enter judgment on a tort award of $8 million that had been affirmed, could not alter the substantive content of that judgment by awarding $23 million). For all these reasons, the court is satisfied that it retains the jurisdiction to enforce its collateral sanctions order against IHC.

    2. The Merits of Plaintiffs' Motion to Hold IHC in Contempt

Now exercising its jurisdiction to enforce its sanctions order, the court turns to the merits of Plaintiffs' motion. Plaintiffs' motion seeks an order "requiring IHC and its counsel to immediately produce 'the contract or other agreement(s) or documentation relating to the arrangements . . . concerning Dr. Frasier's employment,'" "imposing appropriate sanctions on IHC and their counsel . . . for their failure and refusal to comply with the [c]ourt's order to produce the subject documents," and "continuing the additional briefing required under the Sanctions Order . . . until a reasonable time after IHC and its counsel . . . comply with the [c]ourt's orders to produce the subject documents." (Dkt. No. 470 at p. 6). The court finds Plaintiffs' requests unreasonable.

---

[7] The court notes that the Tenth Circuit's determination that it was not clearly established that IHC would have had *Brady* obligations answers a question different from the question of whether IHC had engaged in state action in the first place. *See Tiscareno v. Frasier*, 603 F. App'x 672, 680 & n.7 (10th Cir. 2015) (recognizing that *Brady* obligations can extend to certain "arms of the state" involved in an investigation and concluding that at the time of Ms. Tiscareno's trial, neither the Supreme Court nor Tenth Circuit had treated private hospitals as an "arm of the state," but declining to consider whether IHC was a state actor).

9

Although Plaintiffs ask the court to require IHC to produce various documents, they offer the court no compelling reason to require IHC to engage in further production of documents, particularly where the Tenth Circuit has decided that IHC is entitled to qualified immunity. As explained in this court's order awarding sanctions, Plaintiffs may have a claim for damages as a result of IHC's sanctionable conduct in failing to produce documents relevant to Dr. Frasier's employment with IHC. (*See* Dkt. No. 466). But the court is convinced Plaintiffs can fully assess their damages for the additional time spent litigating the state action issue without the need to obtain further materials from IHC. For this reason, the court must deny Plaintiffs' motion to hold IHC in contempt. The court remains receptive to limited briefing from the parties for the narrow purpose of assessing the amount of Plaintiffs' damages for IHC's failure to timely produce the full State Contract.

### B.  Plaintiffs' Motion to Sanction Dr. Frasier and her Counsel for Fraud on the Court

The court now considers Plaintiffs' motion for sanctions against Dr. Frasier and her counsel (Dkt. No. 485). In addition to seeking enforcement of the court's sanctions order against IHC, Plaintiffs have asked that this court exercise its inherent authority to issue sanctions against Dr. Frasier and her counsel for committing fraud on the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991) (discussing various inherent powers, including the power to correct fraud on the court). Specifically, Plaintiffs seek default judgment or other appropriate sanctions to punish Dr. Frasier and her counsel for making inconsistent and incomplete statements during discovery, and for their failure to correct IHC's misrepresentations to the court regarding Dr. Frasier's employment. (Dkt. No. 485). In response, Dr. Frasier argues this court lacks jurisdiction to issue sanctions against her or her counsel in light of the Tenth Circuit's mandate. (Dkt. No. 493). Alternatively, she asserts that Plaintiffs have waived their right to bring this motion because they could have brought it earlier. (*Id.*). The court begins by rejecting Dr. Frasier's jurisdictional

challenge for the same reasons it rejected IHC's identical jurisdictional argument.[8] Nevertheless, the court declines to exercise its inherent authority to sanction Dr. Frasier or her counsel because Plaintiffs have failed to establish fraud on the court and, in any event, their motion is untimely.

Turning first to Plaintiffs' fraud on the court claim, the court finds this claim to be without merit. The Tenth Circuit has explained that "[a] fraud on the court is fraud which is directed to the judicial machinery itself and *is not fraud between the parties or fraudulent documents, false statements or perjury*." *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996) (alterations omitted). Thus, mere "allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court." *Id.* Rather, a party establishes fraud on the court where "the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function—thus where the impartial functions of the court have been directly corrupted." *Id.* (alterations omitted); *see, e.g.*, *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118–19 (1st Cir. 1989) (finding fraud on the court when plaintiff and attorney fabricated a false purchase agreement and attached it to complaint). Examined under this lens, Plaintiffs' allegations against Dr. Frasier and her counsel fall far short of the standard required to establish fraud on the court in the Tenth Circuit.

For instance, Plaintiffs' claims of fraud relate mostly to incomplete statements Dr. Frasier made in her discovery responses that were subsequently contradicted by her deposition testimony. (Dkt. No. 485, p. 6–28). This conduct, even if true, does not rise to the level of fraud on the court. *See Weese*, 98 F.3d at 552–53; *cf. Chavez v. City of Albuquerque*, 402 F.3d 1039, 1043 (10th Cir. 2005) (affirming dismissal as a sanction for fraud on the court where plaintiff perjured himself throughout the litigation). The court is similarly unpersuaded by Plaintiffs' claims that Dr. Frasier and her counsel were complicit in IHC's allegedly fraudulent conduct because they failed to correct

---

[8] The court notes that the Tenth Circuit was also apparently unpersuaded by Dr. Frasier's argument that the mandate prohibits the court from considering Plaintiffs' motion for sanctions against Dr. Frasier and her counsel. *See Order*, 13-4156 (10th Cir. Nov. 3, 2015).

IHC's misrepresentations regarding Dr. Frasier's relationship with IHC. Even assuming IHC's misrepresentations could constitute fraud on the court,[9] the claims against Dr. Frasier and her counsel are too attenuated to make a similar finding of misconduct against them. For these reasons, the court rejects Plaintiffs' invitation to exercise its inherent authority to correct fraud on the court.

Alternatively, even if the court were persuaded Dr. Frasier and her counsel had engaged in some sanctionable conduct (rising to the level of fraud on the court or otherwise), the court agrees with Dr. Frasier that Plaintiffs' motion comes too late to entitle them to any relief. *See MGA Entm't, Inc. v. Nat'l Products Ltd.*, No. CV 10-07083 JAK, 2012 WL 4052023, at *4 (C.D. Cal. Sept. 14, 2012) ("It is generally agreed that a motion for sanctions, regardless of the source of authority for the imposition of sanctions, must be timely filed. . . . Courts have . . . found that unreasonable delay in filing a motion for sanctions under the court's inherent powers may render the request untimely." (internal quotation marks and citations omitted)). Indeed, Plaintiffs' motion for sanctions against Dr. Frasier and her counsel relies in large part on conduct that occurred during the discovery process, prior to Plaintiffs' briefing on the motion for sanctions against IHC. (Dkt. No. 485, p. 6–28). And importantly, when seeking remand to the district court for the purpose of determining the sanctions issue, Plaintiffs represented to the Tenth Circuit that they "do not assert and do not suggest that Dr. Frasier and her counsel committed any fraud on the Court *based on the evidence currently available* to Plaintiffs." *Motion to Remand Case to District Court for Further Proceedings on Plaintiffs' Motion for Sanctions and for Additional Relief*, 13-4161 (10th Cir. Nov. 6, 2013) (emphasis added). Yet Plaintiffs' current motion is based almost exclusively on conduct occurring prior to that representation.[10] (*See* Dkt. No. 485, p. 6–28). In such a circumstance, the court finds it

---

[9] The court does not suggest or imply that IHC committed fraud on the court.

[10] As evidence of subsequent fraudulent conduct, Plaintiffs point to Dr. Frasier's representation to the Tenth Circuit that she was not under an obligation to disclose potentially exculpatory information under *Brady*. They also claim Dr. Frasier misled this court in her response to Plaintiffs' motion for sanctions (Dkt. No. 462) because she conceded that she was a state actor employed by the University of Utah, but argued if she were employed by IHC, she

12

would be improper to exercise its authority to entertain Plaintiffs' motion. *See Chambers*, 501 U.S. at 44 (recognizing that the courts' inherent powers must be exercised with "restraint and discretion"); *see, e.g.*, S*tevens v. Lawyers Mut. Liab. Ins. Co. of N. C.*, 789 F.2d 1056, 1061 (4th Cir. 1986) (holding that the court did not abuse its discretion in refusing to grant plaintiffs' untimely motion for Rule 11 sanctions); *cf. Lancaster*, 149 F.3d at 1237 (finding that a motion for Rule 37 sanctions was timely where the defendants filed their motion two weeks after summary judgment was entered and within four months after the notice by the court that it would entertain such a motion). Accordingly, the court denies Plaintiffs' motion for entry of default and other sanctions against Dr. Frasier and her counsel.

### C.  Dr. Frasier's Motion to Enforce the Mandate

Finally, Dr. Frasier asks this court to enter judgment in her favor pursuant to the Tenth Circuit's mandate. The court grants this request. Pursuant to the Tenth Circuit's mandate, the court grants summary judgment in favor of Defendants on qualified immunity grounds.

## CONCLUSION

For the foregoing reasons, the court 1) **DENIES** Plaintiffs' motion that the court find Defendant IHC in contempt for failure to comply with the court's sanctions order (Dkt. No. 470), 2) **DENIES** Plaintiffs' motion for default judgment and other sanctions against Dr. Frasier and her counsel (Dkt. No. 485), 3) **GRANTS** Dr. Frasier's motion for entry of judgment in her favor (Dkt. No. 480), and 4) **GRANTS** summary judgment in favor of Defendants on qualified immunity grounds. The court further orders that should Plaintiffs wish to pursue monetary damages against IHC consistent with the court's sanctions order (Dkt. No. 466), Plaintiffs may file, within **fourteen days** from the issuance of this opinion, limited supplemental briefing for the narrow purpose of

---

would not have engaged in state action. (Dkt. Nos. 485, p. 6–28; 520, p. 6). The court is unpersuaded these statements are sanctionable. Again, the question of an individual's obligations under *Brady* as an "arm of the state" is different from the threshold state action question. And the few statements in Dr. Frasier's briefing to this court are insufficient to warrant sanctions.

establishing the amount of damages to Plaintiff as a result of IHC's failure to timely produce the full State Contract.

SO ORDERED this 1st day of December, 2015.

BY THE COURT:

Clark Waddoups
United States District Court Judge